UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x

NML CAPITAL, LTD.,

                Plaintiff,

                                14 Civ. 8601 (TPG)

v.

REPUBLIC OF ARGENTINA,

                Defendant.

--------------------------------------------------------x

## MEMORANDUM OF LAW IN SUPPORT OF THE MOTION
## BY NML CAPITAL, LTD. FOR PARTIAL SUMMARY JUDGMENT

**DECHERT LLP**
Robert A. Cohen
Dennis H. Hranitzky
1095 Avenue of the Americas
New York, NY 10036
(212) 698-3500

*Attorneys for Plaintiff NML Capital, Ltd.*

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................................................1

BACKGROUND ...................................................................................................................3

    A.    Argentina Issues Bonds Containing The Pari Passu Clause ...................................3

    B.    Argentina Defaults On Its Sovereign Debt In 2001 ................................................4

    C.    Argentina Subordinates The Rank Of Its Payment Obligations Under
    Plaintiff's Bonds Below That Of Its Debt To Creditors Who Agree To
    Accept Less Than What They Were Owed.................................................................5

    D.    Argentina Again Lowers The Rank of Its Payment Obligations Under
    Plaintiff's Bonds In 2010 ........................................................................................7

    E.    The Court Orders Argentina To Remedy Its Violations Of The Pari Passu
    Clause And Enjoins Any Further Violations ............................................................9

    F.    Argentina Continues, Brazenly And Repeatedly, To Violate The Pari
    Passu Clause And The Court's Orders....................................................................11

ARGUMENT .....................................................................................................................16

I.    Plaintiff Is Entitled To Partial Summary Judgment On Its Claim that Argentina
    has Breached The Pari Passu Clause ................................................................................16

    A.    Argentina Is Collaterally Estopped From Denying Its Violations Of The
    Pari Passu Clause ..................................................................................................17

    B.    Plaintiff Is Entitled To Partial Summary Judgment Based On Argentina's
    Violations Of The Pari Passu Clause Even If Collateral Estoppel Were Not
    Applicable ..............................................................................................................20

        1.    Argentina Indisputably Has Paid Other External Creditors While
        Withholding Payment From Plaintiff In Violation Of The Equal
        Treatment Provision.................................................................................21

        2.    Argentina Indisputably Has Enacted Laws And Formal Decrees
        Lowering the Rank of Argentina's Payment Obligations Under
        Plaintiff's Bonds In Violation Of The Pari Passu Clause .........................22

        3.    Argentina Indisputably Has Lowered The Rank Of Its Payment
        Obligations Under Plaintiff's Bonds Through A Series Of Official
        Pronouncements Confirming That It Subordinated Those
        Obligations To A Non-Paying Class........................................................25

II.   Argentina Cannot Evade Its Obligation To Abide by The Pari Passu Clause By
      Invoking The Doctrine Of *Res Judicata* or Merger ............................................................27

      A.    *Res Judicata* Does Not Bar Plaintiff's Pari Passu Claim.......................................28

      B.    The Doctrine Of Merger By Judgment Does Not Bar Plaintiff's Pari Passu
            Claim...................................................................................................................32

CONCLUSION.....................................................................................................................36

# TABLE OF AUTHORITIES

CASES

*Ali v. Mukasey,*
    529 F.3d 478 (2d Cir. 2008)................................................................................20

*Aramony v. United Way of Am.,*
    254 F.3d 403 (2d Cir. 2001)................................................................................20

*Bank of N.Y. v. First Millennium, Inc.,*
    607 F.3d 905 (2d Cir. 2010)............................................................................28, 31

*Capital Ventures Int'l v. Republic of Argentina,*
    443 F.3d 214 (2d Cir. 2006)..................................................................................5

*Curacao Trading Co. v. Federal Ins. Co.,*
    3 F.R.D. 203 (S.D.N.Y. 1942) .............................................................................19

*Elliott Assocs. L.P.,*
    General Docket No. 2000/QR/92, at ¶ 6 (Court of Appeals of Brussels, 8th Section,
    Sept. 26, 2000) ....................................................................................................22

*EM Ltd. v. Republic of Argentina,*
    473 F.3d 463 (2d Cir. 2007)..................................................................................3

*Export-Import Bank of the Republic of China v. Grenada,*
    Case No. 13 Civ. 1450 (HB), 2013 WL 4414875 (S.D.N.Y. Aug. 19, 2013) ................ passim

*In re Teltronics Services, Inc.,*
    762 F.2d 185 (2d Cir. 1985)................................................................................28

*Interoceanica Corp. v. Sound Pilots, Inc.,*
    107 F.3d 86 (2d Cir. 1997)...............................................................................21, 29

*Jackson v. Good Shepherd Servs.,*
    683 F. Supp.2d 290, 292 (S.D.N.Y.2009)...............................................................20

*Jay's Stores, Inc. v. Ann Lewis Shops, Inc.,*
    256 N.Y.S.2d 600 (1965).................................................................................33, 34

*La Societe Anonyme des Parfums le Galion v. Jean Patou, Inc.,*
    495 F.2d 1265 (2d Cir. 1974).............................................................................34

*Lummus Co. v. Commonwealth Oil Ref. Co.,*
    297 F.2d 80 (2d Cir. 1961).................................................................................19

*Manbeck v. Micka,*
    640 F. Supp.2d 351 (S.D.N.Y. 2009)...................................................................19

iii

*Marvel Characters, Inc. v. Simon*,
310 F.3d 280 (2d Cir. 2002)............................................................................17

*Migra v. Warren City Sch. Dist. Bd. of Educ.*,
465 U.S. 75 (1984)...........................................................................................33

*Montana v. United States*,
440 U.S. 147 (1979).........................................................................................16

*NML Capital, Ltd. v. Banco Central de la República Argentina*,
652 F.3d 172 (2d Cir. 2011).......................................................................17, 33

*NML Capital, Ltd. v. Republic of Argentina*,
699 F.3d 246 (2d Cir. 2012), *cert. denied*, 134 S. Ct. 201 (2013) ("*NML I*") ................ passim

*NML Capital, Ltd. v. Republic of Argentina*,
727 F.3d 230 (2d Cir. 2013), *cert. denied*, 134 S. Ct. 2819 (2014) ("*NML II*")...............11, 24

*NML Capital, Ltd v. The Republic of Argentina*,
No. 03 Civ. 8845 (S.D.N.Y. Apr. 2, 2004) ....................................................31

*NML Capital, Ltd v. The Republic of Argentina*,
No. 05 Civ. 2434 (S.D.N.Y. Mar. 31, 2008)...................................................31

*NML Capital, Ltd v. The Republic of Argentina*,
No. 08 Civ. 6978 (S.D.N.Y. Aug. 6, 2014) ....................................................13

*NML Capital, Ltd v. The Republic of Argentina*,
No. 12-105(L) (2d Cir. June 18, 2014) ...........................................................11

*Ovadia v. Top Ten Jewelry Corp.*,
No. 04 Civ. 2690, 2005 WL 1949970 (S.D.N.Y. Aug. 12, 2005) ...........................20

*Red Mountain Fin., Inc. v. Democratic Republic of Congo*,
No. CV 00-0164 (C.D. Cal. May 29, 2001) ....................................................22

*Republic of Argentina v. NML Capital, Ltd., et al.*,
No. 13-990 (S. Ct. June 16, 2014).............................................................11, 13, 16, 19

*SEC v. First Jersey Securities, Inc.*,
101 F.3d 1450 (2d Cir. 1996)..........................................................................32

*Sure-Snap Corp. v. State Street Bank & Trust Co.*,
948 F.2d 869 (2d Cir. 1991)............................................................................28

*Taylor v. Sturgell*,
553 U.S. 880 (2008).........................................................................................33

*TechnoMarine SA v. Giftports, Inc.*,
    758 F.3d 493 (2d Cir. 2014)..............................................................................31, 32

*W & D Imports, Inc. v. Lia*,
    563 F. App'x 19 (2d Cir. 2014) ..............................................................................17

*Zdanok v. Glidden Co., Durkee Famous Foods Div.*,
    327 F.2d 944 (2d Cir. 1964)....................................................................................19

## OTHER AUTHORITIES

17 DAVID D. SIEGEL, NEW YORK PRACTICE § 450 ...............................................33, 34

Fed. R. Civ. P. 54(b) ...................................................................................................31

Fed. R. Civ. P. 56(a) ..............................................................................................1, 16

Pursuant to Federal Rule of Civil Procedure 56(a), NML Capital, Ltd. ("NML" or "Plaintiff") respectfully moves for partial summary judgment on its claim that Argentina violated its contract with Plaintiff when it subordinated the rank of Plaintiff's bonds to bonds issued to those who participated in the 2005 and 2010 Exchange Offers (the "Exchange Bondholders") and when it made payments to the Exchange Bondholders while refusing to make any payments to Plaintiff.  Plaintiff proposes that the appropriate remedy for Argentina's violations be determined in subsequent proceedings.

## INTRODUCTION

For more than a decade, Plaintiff and other similarly situated bondholders have litigated before the Court to enforce their judgments on billions of dollars of defaulted Argentine bonds.  Argentina has steadfastly refused to honor those judgments. Instead of respecting the authority of the Court, Argentina has taken extraordinary measures to evade repayment—including, but not limited to, enacting laws that proclaim that it will ***never*** satisfy the judgments entered by the Court.  Bondholders that acquiesced in Argentina's coercive "exchange offers," and thereby took pennies on the dollar in return for releasing multi-billion dollar holdings, have been paid.  On the other hand, Plaintiff and others who elected to hold Argentina to the terms of its contract and thus rejected Argentina's take-it-or-leave-it demands have received nothing, despite the judgments entered by the Court.

15389502.40.LITIGATION

Separately and independently, Argentina's subordination of its obligations under Plaintiff's bonds and its refusal to pay Plaintiff while paying or attempting to pay other creditors violates a provision of the bond documents that states:

> The Securities will constitute . . . direct, unconditional, unsecured and unsubordinated obligations of the Republic and shall at all times rank *pari passu* and without any preference among themselves.  The payment obligations of the Republic under the Securities shall at all times rank at least equally with all its other present and future unsecured and unsubordinated External Indebtedness . . . .

Declaration of Robert A. Cohen in Support of the Motion By NML Capital, Ltd. for Partial Summary Judgment, dated February 3, 2015 ("Cohen Decl.), Ex. 1, at ¶ 1(c) (FAA) (hereinafter, the "Pari Passu Clause").

The Court has held that Argentina has repeatedly violated—and continues to violate—the Pari Passu Clause.  Specifically, in thirteen cases concerning bonds on which Argentina defaulted and on which judgments had not yet been entered (the "Pre-Judgment Cases"),[1] the Court found that Argentina breached the Pari Passu Clause both when "it made payments currently due under the [2005 and 2010] Exchange Bonds, while persisting in its refusal to satisfy its payment obligations currently due under [Plaintiff's] Bonds" (Cohen Decl. Ex. 2, at 4 ¶ 5 (12/7/2011

---

[1] *NML Capital, Ltd v. The Republic of Argentina*, Nos. 08 Civ. 6978 (TPG), 09 Civ. 1707 (TPG), 09 Civ. 1708 (TPG) (S.D.N.Y.); *Aurelius Capital Master, Ltd. and ACP Master, Ltd. v. The Republic of Argentina*, Nos. 09 Civ. 8757 (TPG), 09 Civ. 10620 (TPG); *Aurelius Opportunities Fund II, LLC and Aurelius Capital Master, Ltd. v. The Republic of Argentina*, Nos. 10 Civ. 1602 (TPG), 10 Civ. 3507 (TPG); *Aurelius Capital Master, Ltd. and Aurelius Opportunities Fund II, LLC v. The Republic of Argentina*, Nos. 10 Civ. 3970 (TPG), 10 Civ. 8339 (TPG); *Blue Angel Capital I LLC v. The Republic of Argentina*, Nos. 10 Civ. 4101 (TPG), 10 Civ. 4782 (TPG); *Olifant Fund, Ltd. v. The Republic of Argentina*, No. 10 Civ. 9587 (TPG); *Pablo Alberto Varela, et al. v. The Republic of Argentina*, No. 10 Civ. 5338 (TPG).

Order)), and when it enacted laws that codified its intentions never to pay Plaintiff (*id.* at 5 ¶ 6).

The Second Circuit affirmed these findings. *NML Capital, Ltd. v. Republic of Argentina*, 699 F.3d 246, 265 (2d Cir. 2012), *cert. denied*, 134 S. Ct. 201 (2013) ("*NML I*"). The bonds at issue in this case are subject to the same Pari Passu obligations that Argentina was found to have violated in the Pre-Judgment Cases. Therefore, as in the Pre-Judgment Cases, the Court should grant Plaintiff's motion for partial summary judgment as to Argentina's violations of the Pari Passu Clause.

## **BACKGROUND**

### **A.    Argentina Issues Bonds Containing The Pari Passu Clause**

The bonds held by Plaintiff were issued by Argentina pursuant to the 1994 Fiscal Agency Agreement ("FAA"). SOF ¶ 1. The FAA was entered into at a time when investors' memories of the history of Argentina's past defaults were fresh. *See EM Ltd. v. Republic of Argentina*, 473 F.3d 463, 466 n.2 (2d Cir. 2007) (cataloging Argentina's numerous defaults since the early nineteenth century).

The Pari Passu Clause was included to provide reassurance to investors that Argentina would rank its obligations to bondholders equally with other holders of its unsubordinated debt and to serve as an enhanced enforcement tool in the event of another Argentina default. Because the second sentence of the Pari Passu Clause requires that the "payment obligations" under the bonds will "rank at least equally"

3

with other External Indebtedness[2] (the "Equal Treatment Provision"), the provision guarantees that the right to payment of a holder of a bond issued pursuant to the FAA may not be subordinated to that of a holder of External Indebtedness and no holder of External Indebtedness can be given priority in terms of when or how it will be paid.

### B.  Argentina Defaults On Its Sovereign Debt In 2001

In late 2001, Argentina announced a moratorium on the payment of outstanding public debt, including payment on bonds issued pursuant to the FAA. SOF ¶ 8, 9.  A week later, Argentina enacted Law 25,561, which declared a state of economic and social emergency and granted expansive powers to the Executive to restructure Argentina's outstanding public debt.  SOF ¶ 8; Cohen Decl. Ex. 3 (Law 25,561).  Each year since then, Argentina has included in its annual budget a moratorium on payments to holders of unrestructured debt that was issued prior to December 11, 2001.  SOF ¶ 9; Cohen Decl. Ex. 4, *Claren Corp. c/ E.N.*, C. 462, XLVII (Mar. 6, 2014); Law 25,565; Law 25,725; Law 26,728; Law 26,784, Law 26,895; Law 27,008; Decree No. 2053/2010; Decree No. 2054/2010.  It has refused to pay principal or interest to any creditors whose debt is subject to the moratorium (except as described below).

Since 2003, bondholders have filed a multitude of actions against Argentina seeking money judgments on the defaulted bonds.  *E.g.*, Declaration of Elliot

---

[2]      As relevant here, the FAA defines the term "External Indebtedness" to mean "obligations (other than the Securities [governed by the FAA]) for borrowed money or evidenced by securities, debentures, notes or other similar instruments denominated or payable . . . in a currency other than the lawful currency of the Republic . . . ."  Cohen Decl. Ex. 1 ¶ 11.

Greenberg in Support of the Motion By NML Capital, Ltd. for Partial Summary Judgment, dated February 2, 2015 ("Greenberg Decl."), at ¶ 3.  The Court has entered summary judgment or final judgment in favor of the bondholders in a large number of them, including actions brought by Plaintiff.  *E.g.*, Greenberg Decl. ¶ 4.

### C.  Argentina Subordinates The Rank Of Its Payment Obligations Under Plaintiff's Bonds Below That Of Its Debt To Creditors Who Agree To Accept Less Than What They Were Owed

In 2005, Argentina issued an exchange offer (the "2005 Exchange Offer") that offered creditors the opportunity to exchange their defaulted bonds for newly issued bonds of substantially lower value, but that would be paid.  *See Capital Ventures Int'l v. Republic of Argentina*, 443 F.3d 214, 217 (2d Cir. 2006).  The 2005 Exchange Offer required that participants accept a discount of approximately 71-75%.  SOF ¶ 10.  Recognizing that these terms were not attractive, Argentina put a thumb on the scale by making clear that it intended never to pay those bondholders who did not participate in the 2005 Exchange Offer.

Argentina implemented its new selective repayment policy in part by inserting a clause into the terms of the securities issued in the 2005 Exchange Offer called a "RUFO clause," which purported to give those who participated in the 2005 Exchange Offer special rights in the event that Argentina made a second exchange offer at a later date.  SOF ¶ 11.  But even those special rights were insufficient to induce many creditors to accept the exchange offer.  As Argentina explained, "[a]fter the 2005 exchange offer was launched, certain creditors expressed strong concern that the RUFO clause did not provide sufficient protection to tendering bondholders that

Argentina might, at a later date, strike a more favorable deal with holdout creditors."
Cohen Decl. Ex. 5, at xiv (2010 exchange prospectus).

According to Argentina, at the insistence of those creditors who demanded
"legal reassurance that holdout creditors would not be able to receive more
advantageous terms in the future," Argentina passed Law 26,017, the so-called "Lock
Law."  Cohen Decl. Ex. 5 at xiv; Ex. 6 (Lock Law); SOF ¶ 12.  The Lock Law
prohibited the Executive Branch from reopening the 2005 Exchange Offer without
Congressional approval and also prohibited any type of settlement involving
untendered securities that had been eligible to participate in the 2005 Exchange Offer.
SOF ¶ 13; Cohen Decl. Ex. 6.  Argentina thus *enacted legislation to prohibit itself*
from paying (or otherwise negotiating with) bondholders who did not participate in
the 2005 Exchange Offer.  Specifically, Article 3 of the Lock Law prohibited
Argentina "from conducting any type of in-court, out-of-court or private settlement
with respect to the [non-tendered] bonds," while Article 4 ordered the removal of the
bonds "from listing on all domestic and foreign securities markets and exchanges."
SOF ¶¶ 15-16; Cohen Decl. Ex. 6.  The prospectus for the 2005 Exchange Offer
stated that "[t]he Government has announced that it has no intention of resuming
payment" on the FAA Bonds.  Cohen Decl. Ex. 7, at 18 (2005 exchange prospectus
supplement).  Argentine law, enacted subsequent to the 1994 FAA, with its Pari Passu
Clause, could not be clearer in indicating that it was Argentina's intention never to
pay bondholders who elected not to participate in the 2005 Exchange Offer.

Together, the Lock Law and the 2005 Exchange Offer worked to create two classes of bondholders: a higher rank of bondholders that participated in the 2005 Exchange Offer and would thereafter receive the interest and principal payments due them, and a lower rank of bondholders that was legislatively consigned to receive nothing. As Argentine legislators explained, the Lock Law relegated the FAA Bonds to the "peripheral garbage circuit" "at the end of the line" of Argentina's obligations. Cohen Decl. Ex. 8 (Meeting Tr. 2/9/2005), at 28; Ex. 9, at 9 (Meeting Tr. 2/3/2005). Argentina's highest court has recognized that Argentina's debt legislation—in combination with Argentina's annually renewed repayment moratoriums—bars recognition in Argentine courts of U.S. money judgments based on defaulted FAA bonds. *E.g.* Cohen Decl. Ex. 4, *Claren Corp. c/ E.N.*, C. 462, XLVII (Mar. 6, 2014).

In the end, holders of approximately 76% of the bonds on which Argentina had defaulted accepted the 2005 Exchange Offer. SOF ¶ 17; Cohen Decl. Ex. 5, at xiv. The bonds held by the remaining 24%, that were not tendered, including those held by Plaintiff, were lowered in rank to non-paying status.

### D. Argentina Again Lowers The Rank of Its Payment Obligations Under Plaintiff's Bonds In 2010

In 2009, Argentina decided to conduct another exchange offer in an effort to induce the remaining holders of defaulted debt to accept the steeply discounted exchange. As with the 2005 Exchange Offer, as part of this new exchange offer Argentina told bondholders that they could swap their defaulted bonds for newly issued bonds of significantly lower value but on which Argentina would make full

and timely payments.  SOF ¶¶ 20-21; Cohen Decl. Ex. 7.  To overcome the prohibition on any such offer imposed by the Lock Law, Argentina enacted Law 26,547, which temporarily suspended the Lock Law.  *Id.* ¶ 19; Cohen Decl. Ex.10 (Law 26,547).  Argentina then announced that it would conduct the new exchange offer in 2010 with terms worse for the bondholders than those offered in 2005 (the "2010 Exchange Offer").  SOF ¶ 20; Cohen Decl. Ex.10, at art. 3 (Law 26,547).

Law 26,547 preserved the Lock Law's prohibition on repaying non-tendering bondholders through any avenue other than the 2010 Exchange Offer by forbidding the Executive from "offer[ing] to the holders of public debt that have brought judicial, administrative, or arbitration proceedings or any other type of proceeding treatment more favorable than the treatment afforded to holders who did not bring such proceedings."  Cohen Decl. Ex. 10 art. 5 (Law 26,547); SOF ¶ 20.  Thus, Law 26,547 not only created a second set of preferred bondholders, but it also again legislatively prohibited compliance with the Court's money judgments for Argentina's defaults— many of which had been entered by the time the law went into effect.

Those who accepted the 2010 Exchange Offer began receiving timely semi-annual interest payments after the exchange was completed in September 2010.  SOF ¶¶ 22-23; Cohen Decl. Ex. 11 (9/27/2010 Notice).  But, consistent with its offering memorandum and Law 26,547, holders of bonds who did not participate in either the 2005 or 2010 Exchange Offers continued to receive nothing.

8

**E.     The Court Orders Argentina To Remedy Its Violations Of The Pari Passu Clause And Enjoins Any Further Violations**

In October 2010, Plaintiff and others sought enforcement of the Pari Passu Clause in the Pre-Judgment Cases.  On December 7, 2011, the Court held that Argentina violated the Pari Passu Clause when, among other things, it (i) lowered the rank of bonds issued under the FAA by enacting the Lock Law and Law 26,547, (ii) lowered the rank of bonds issued under the FAA by relegating those bonds to a non-paying class, and (iii) made payments due under the 2005 and 2010 Exchange Bonds, while refusing to satisfy its payment obligations to Plaintiff and others.  Cohen Decl. Ex. 2, at 4-5 ¶¶ 5-7.  The Court further and expressly held that Argentina's Pari Passu payment obligations on the bonds extend to those with pending actions for recovery on their bonds and to those with judgments:

> It is DECLARED, ADJUDGED, and DECREED that the Republic's payment obligations on the bonds include its payment obligations to bondholders who have brought actions to recover on their defaulted bonds, and on judgments entered pursuant to judicial action brought by bondholders.

SOF ¶ 28; Cohen Decl. Ex. 2, at 4 ¶ 3.

On February 23, 2012, the Court further ruled that equitable relief to remedy Argentina's ongoing violations of the Pari Passu Clause was appropriate, stating that "[Plaintiff] is irreparably harmed by and has no adequate remedy at law for the Republic's ongoing violations of [the Pari Passu Clause], and that the equities and public interest strongly support issuance of equitable relief to prevent the Republic from further violating [the Pari Passu Clause]."  SOF ¶ 29; Cohen Decl. Ex. 12, at 2 ¶

1 (the "February 23 Order").  On October 26, 2012, the Second Circuit affirmed,[3] but remanded the case to the Court to clarify who would be bound by the injunction and how the ratable payment formula would be applied.  SOF ¶ 30; *NML I,* 699 F.3d at 250-51.  Argentina's petition for certiorari to the Supreme Court was denied on October 7, 2013.  SOF ¶ 31; Cohen Decl. Ex. 13, *Republic of Argentina v. NML Capital, Ltd., et al.*, No. 12-1494 (S. Ct. Oct. 7, 2013).

On November 21, 2012, in accordance with the remand order, the Court amended the February 23 Orders to require Argentina to specifically perform its Pari Passu obligations and to enjoin Argentina from seeking to evade its obligations under the Orders (the "Amended February 23 Orders").  SOF ¶ 32.  The Amended February 23 Orders require Argentina to make a "Ratable Payment" to the plaintiffs in the Pre-Judgment Cases whenever it pays any amount due under the Exchange Bonds, and enjoin Argentina from making any payment on the Exchange Bonds without making a Ratable Payment to those plaintiffs.  SOF ¶ 33; Cohen Decl. Ex. 14, at 4 ¶ 2 (Amended February 23 Orders).  The Amended February 23 Orders also expressly

---

[3]    The Court recognized in its opinion that Argentina's entire course of conduct, collectively, constituted a violation of the Pari Passu Clause:

> In short, the combination of Argentina's executive declarations and legislative enactments have ensured that plaintiffs' beneficial interests do *not* remain direct, unconditional, unsecured and unsubordinated obligations of the Republic and that any claims that may arise from the Republic's restructured debt *do* have priority in Argentinean courts over claims arising out of the Republic's unstructured debt. Thus we have little difficulty concluding that Argentina breached the *Pari Passu* Clause of the FAA.

*NML I,* 699 F.3d at 260.

prohibit Argentina from taking steps to evade them.  SOF ¶ 34; s*ee* Cohen Decl. Ex. 14, at 7 ¶ 4.

On August 23, 2013, the Second Circuit affirmed the Amended February 23 Orders, but stayed enforcement of the injunction pending Argentina's petition for a writ of certiorari to the Supreme Court.  SOF ¶ 35; *NML Capital, Ltd. v. Republic of Argentina*, 727 F.3d 230, 248 (2d Cir. 2013), *cert. denied*, 134 S. Ct. 2819 (2014) ("*NML II*").  On June 16, 2014, the Supreme Court denied Argentina's petition.  SOF ¶ 36; Cohen Decl. Ex. 15, *Republic of Argentina v. NML Capital, Ltd., et al.*, No. 13-990 (S. Ct. June 16, 2014).  The Second Circuit lifted the stay two days later.  SOF ¶ 37; Cohen Decl. Ex. 16, *NML Capital, Ltd v. The Republic of Argentina*, No. 12-105(L) (2d Cir. June 18, 2014) (ECF No. 1055).

### F.   Argentina Continues, Brazenly And Repeatedly, To Violate The Pari Passu Clause And The Court's Orders

Although the Court's Orders could not be clearer in their requirements and prohibitions, Argentina has repeatedly defied them.  Just months after the Court first entered injunctive relief in December 2011, Argentina made clear that it would do everything it could to violate and evade the Court's orders.  Indeed, at oral argument before the Second Circuit on July 23, 2012, "counsel for Argentina told the panel that it 'would not voluntarily obey' the district court's injunctions, even if those injunctions were upheld . . . ."  SOF ¶ 39; *NML II*, 727 F.3d at 238.

Sure enough, just days after the Second Circuit affirmed the Amended February 23 Orders, *NML II*, 727 F.3d at 243-44, Argentina launched its campaign to

violate and evade the Court's Orders.  On August 26, 2013, Argentine President

Cristina Fernández de Kirchner gave a televised address criticizing the rulings of the

Court and the Second Circuit, and announcing an evasion plan, pursuant to which

Exchange Bondholders would be permitted to exchange their bonds for bonds payable

in Argentina, in an attempt to place payments on those bonds outside of the Court's

jurisdiction.  SOF ¶ 40; Cohen Decl. Ex. 17 (Tr. of 8/26/13 Address).  On September

11, 2013, Argentina enacted Law 26,886 purportedly to reopen the bond exchange on

the same terms that Plaintiff and others had repeatedly rejected.  SOF ¶ 42; Cohen

Decl. Ex. 18 (Law 26,886).  Law 26,886 forbids the Argentine government from

"offer[ing] to holders of government-issued debt who have filed court [actions] . . .

treatment more favorable than that given to those who have not done so"—meaning

that, under this law, Argentina again prohibited itself from honoring its obligations to

Plaintiff.  SOF ¶ 43; Cohen Decl. Ex. 18, at art. 4.[4]  The Court responded firmly and

unambiguously:  in an Order dated October 3, 2013, the Court again ordered

Argentina not to take any steps to evade the Court's orders and held that the evasion

scheme announced by President Kirchner was illegal.  SOF ¶ 46; Cohen Decl. Ex. 19

(10/3/13 Order).

In a hollow attempt to procure Supreme Court review, Argentina seemingly

changed its tune and falsely represented that it would comply with the Amended

---

[4]     Law 26,886 also suspends Articles 2, 3 and 4 of the Lock Law, but this suspension has no practical effect.
In addition to the restrictions put in place by Article 4 of Law 26,886, Argentina continues to extend the
moratorium on any payments on debt instruments issued prior to December 31, 2001 that are not governed
by Argentine law and continues to make only coercive offers to restructure such debt.

February 23 Orders if they were not overturned.  SOF ¶ 45; Cohen Decl. Ex. 20, at 13

(5/27/14 Reply Br.); Ex. 21, at 5:5-10 (5/30/14 Tr.).  Yet, as soon as the Supreme

Court denied certiorari on June 16, 2014, Cohen Decl. Ex. 15, *Republic of Argentina*

*v. NML Capital, Ltd., et al.*, No. 13-990 (S. Ct. June 16, 2014), Argentina

immediately set out once again to evade the Court's Orders.  President Kirchner

declared in a televised address that the Republic would not "be subjected to such

extortion."  SOF ¶ 46; Cohen Decl. Ex. 22 at 5 (6/16/14 Statement).  The very next

day, Argentine Economy Minister Axel Kicillof announced a plan—nearly identical

to the plan announced in August 2013—to evade the Amended February 23 Orders by

swapping the Exchange Bonds for new bonds purportedly outside the Court's reach.

SOF ¶ 47; Cohen Decl. Ex. 23 (6/17/14 Statement).

     The Court held a hearing the next day, on June 18, 2014, and ruled in no

uncertain terms that Argentina was acting illegally.  As the Court recognized, a

"mechanism of the kind proposed by the finance minister would be a violation of the

existing procedures and orders established by the Court."  SOF ¶ 48; Cohen Decl. Ex.

24, at 29:17-20 (6/18/14 Tr.).  Two days later, the Court issued an Order ruling that

Minister Kicillof's proposed bond swap was in violation of the Court's Orders.

Cohen Decl. Ex. 25 (6/20/14 Order).  Argentina initially noticed an appeal from that

Order, but voluntarily abandoned its appeal, leaving the Court's ruling undisturbed.

Cohen Decl. Ex. 26, *NML Capital, Ltd v. The Republic of Argentina*, No. 08 Civ.

6978 (S.D.N.Y. Aug. 6, 2014) (ECF No. 636).

13

Six days later, in direct violation of the Amended February 23 Orders, Argentina attempted to make the June 30, 2014 payment due on the Exchange Bonds without making a Ratable Payment as required by the Amended February 23 Orders. SOF ¶¶ 50, 51.  On June 26, 2014, the Republic transferred $832 million to banks that process Exchange Bond payments, including $539 million to Bank of New York ("BNY"), the trustee for some of the Exchange Bonds.  SOF ¶ 50; *See* Cohen Decl. Ex. 27 (6/26/14 Bloomberg )).  Argentina did not make a Ratable Payment as required by the Amended February 23 Orders.  Greenberg Decl. ¶ 6.  Again, the Court condemned Argentina's illegal behavior, and in an Order dated August 6, 2014, the Court held that "the payment by Argentina to BNY . . . was illegal and a violation of the Amended February 23 Orders."  SOF ¶ 52; Cohen Decl. Ex. 28 ¶ 1 (8/6/2014 Order).  The Court also ordered BNY to hold the funds, and expressly prohibited Argentina from taking any "steps to interfere with BNY's retention" of the funds. *Id.* ¶¶ 2-3.

Despite the Court's unambiguous rulings, Argentina continues to engage in open defiance of its obligations.  Argentina continues to make public assertions that it will pay interest to the Exchange Bondholders in violation of the Amended February 23 Orders and that it expects the banks that process those payments to participate in Argentina's violation.  *See, e.g.*, Cohen Decl. Ex. 29 ((7/3/14 Ltr. to BNY); Ex. 30 (8/6/14 Ltr. to BNY); Ex. 31 (8/6/14 Ltr. to Citibank).  BNY has not acceded to Argentina's illegal demands and, in retribution, Argentina has purported to strip BNY of its authorization to operate in Argentina, *see* SOF ¶ 54-55; Cohen Decl. Ex. 32

14

(8/26/14 Bloomberg), and taken steps purportedly to replace BNY with Buenos Aires-based Nación Fideicomisos, SA, a unit of Argentina's wholly owned bank, Banco de la Nación Argentina, and an entity that will do its bidding.  SOF ¶ 56; s*ee* Cohen Decl. Ex. 33 (8/20/14 WSJ); Ex. 34 (8/20/14 Bloomberg); Ex. 35 (Law 26,984); Ex. 36 (9/11/14 Bloomberg); Ex. 37 (9/4/14 Bloomberg); Ex. 38 (9/5/14 Ámbito Financiero); Ex. 39 (9/5/14 Clarín).  In aid of this illegal scheme, Argentina enacted Law 26,984 on September 11, 2014.  That law purports to appoint Nación Fideicomisos in place of BNY and to change to Buenos Aires the location for payment on Exchange Bonds, explicitly to evade the "illegitimate and illegal obstruction" created by "judicial orders issued by the Southern District Court of the City of New York."  SOF ¶ 56; Cohen Decl. Ex. 35.

In response to Argentina's course of illegal actions, on September 29, 2014 the Court held Argentina in contempt of court.  SOF ¶ 57; Cohen Decl. Ex. 40 (9/29/2014 Order (Amended 10/3/2014)).  In defiance of the Court's contempt citation, *the very next day*, Argentina purported to make an illegal payment on the Exchange Bonds through Nación Fideicomisos.  SOF ¶ 58; Cohen Decl. Ex. 41 (10/2/2014 Bloomberg).  This illegal course of conduct is ongoing; indeed, Argentina reportedly remitted another illegal Exchange Bond interest payment to Nación Fideicomisos on January 2, 2015.  SOF ¶ 59; Cohen Decl. Ex. 42 (12/31/2014 El Cronista).

# ARGUMENT

## I.

## PLAINTIFF IS ENTITLED TO PARTIAL SUMMARY JUDGMENT ON ITS CLAIM THAT ARGENTINA HAS BREACHED THE PARI PASSU CLAUSE

The Court should grant the motion for partial summary judgment as to Argentina's violation of the Pari Passu Clause for two reasons.[5]  First, because the Court has fully and finally determined that Argentina violated the Pari Passu Clause, Argentina is barred by the doctrine of collateral estoppel from relitigating the same issue in this case.  *See, e.g.*, *Montana v. United States*, 440 U.S. 147, 153 (1979) ("Under collateral estoppel, once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation.").

Second, even if the Court were to allow Argentina yet another chance to challenge the finding that it has violated the Pari Passu Clause, there is no genuine dispute that Argentina has repeatedly done so.  *See, e.g.*, Fed. R. Civ. P. 56(a) (summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

---

[5]     The construction of the Pari Passu Clause is not in dispute.  The Second Circuit found that "in pairing the two sentences of its *Pari Passu* Clause, the FAA manifested an intention to protect bondholders from more than just formal subordination. . . . Thus, the two sentences of the *Pari Passu* Clause protect against different forms of discrimination:  the issuance of other superior debt (first sentence) and the giving of priority to other payment obligations (second sentence)."  *NML I*, 699 F.3d at 258-9.  The Supreme Court denied Argentina's petition for a writ of certiorari to consider the construction of the Pari Passu Clause.  Cohen Decl. Ex. 15, *Republic of Argentina v. NML Capital, Ltd., et al.*, No. 13-990 (S. Ct. June 16, 2014); Ex. 13, *Republic of Argentina v. NML Capital, Ltd., et al.*, No. 12-1494 (S. Ct. Oct. 7, 2013).

law").  The indisputable facts demonstrate that Argentina has continuously violated the Pari Passu Clause through the creation of classes of bonds with preferred payment obligations whose bondholders have received payments while Plaintiff has not.

For both of these reasons, Plaintiff is entitled to partial summary judgment with respect to its claim that Argentina has violated the Pari Passu Clause.

### A.     Argentina Is Collaterally Estopped From Denying Its Violations Of The Pari Passu Clause

Collateral estoppel "operate[s] to prevent parties from contesting matters that they have had a full and fair opportunity to litigate, thereby conserving judicial resources and protecting parties from the expense and vexation of multiple lawsuits."  *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002).  The settled doctrine applies where "(1) the issues in both proceedings are identical, (2) the issue in the prior proceeding was actually litigated and actually decided, (3) there was a full and fair opportunity for litigation in the prior proceeding, and (4) the issues previously litigated were necessary to support a valid and final judgment on the merits."  *W & D Imports, Inc. v. Lia*, 563 F. App'x 19, 22 n.4 (2d Cir. 2014) (quoting *NML Capital, Ltd. v. Banco Central de la República Argentina*, 652 F.3d 172, 185 (2d Cir. 2011)).  Argentina undoubtedly has had "a full and fair opportunity" to litigate the issue of whether it violated the Pari Passu Clause by its issuance of higher-ranking bonds and its failure to make payments to Plaintiff while continuing to pay other external creditors.  It has argued this issue twice to the Court, the Second Circuit and the Supreme Court.  The doctrine of

17

collateral estoppel should be applied as a matter of law to bar Argentina from denying that it has violated the Pari Passu Clause.

Each of the settled requirements for application of collateral estoppel with respect to Argentina's violation of the Pari Passu Clause is satisfied here.  The issue to be decided—whether Argentina violated the Pari Passu Clause of the FAA—is identical to the issue that was decided in the Pre-Judgment Cases after Argentina had a full and fair opportunity to present its case.  *NML I*, 699 F. 3d at 253.   Indeed, after thorough briefing and oral argument from both sides, the Court held that Argentina had indisputably violated the Pari Passu Clause and granted Plaintiff's motion for partial summary judgment on that issue.  *See* Cohen Decl. Ex. 2.  After more briefing and argument the Second Circuit squarely affirmed the Court's ruling:

> [T]he two sentences of the *Pari Passu* Clause protect against different forms of discrimination:  the issuance of other superior debt (first sentence) and the giving of priority to other payment obligations (second sentence).
>
> . . .
>
> [T]he combination of Argentina's executive declarations and legislative enactments have ensured that plaintiffs' beneficial interests do *not* remain direct, unconditional, unsecured and unsubordinated obligations of the Republic and that any claims that may arise from the Republic's restructured debt *do* have priority in Argentinian courts over claims arising out of the Republic's unstructured debt. Thus we have little difficulty concluding that Argentina breached the *Pari Passu* Clause of the FAA.

*NML I*, 699 F.3d at 259-60 (emphasis in original).  The Supreme Court has twice denied Argentina's petitions for a writ of certiorari to review this decision.  Cohen

Decl. Ex. 15, *Republic of Argentina v. NML Capital, Ltd., et al.*, No. 13-990 (S. Ct. June 16, 2014);  Ex. 13, *Republic of Argentina v. NML Capital, Ltd., et al.*, No. 12-1494 (S. Ct. Oct. 7, 2013).

Lastly, the determination of whether Argentina had violated the Pari Passu Clause was of course necessary to support a valid and final judgment on the merits in the Pre-Judgment Cases.  *See Manbeck v. Micka*, 640 F. Supp.2d 351, 364 (S.D.N.Y. 2009) ("Claims adjudicated through summary judgment are regarded as final judgments on the merits.") (citation omitted); *see also Curacao Trading Co. v. Federal Ins. Co.*, 3 F.R.D. 203, 204 (S.D.N.Y. 1942) (finding that the grant of summary judgment would have *res judicata* effect on a subsequent proceeding against the same defendant).  The Court's Summary Judgment Orders finding that Argentina breached the Pari Passu Clause both when "it made payments currently due under the [2005 and 2010] Exchange Bonds, while persisting in its refusal to satisfy its payment obligations currently due under [Plaintiff's] Bonds" (Cohen Decl. Ex. 2, at 4 ¶ 5) and when it enacted laws that codified its intentions never to pay Plaintiff (*id*. at 5 ¶ 6) in the Pre-Judgment Cases supported valid final injunctions.  Moreover, these Orders were appealable, affirmed by the Second Circuit, and declined review by the Supreme Court, all of which support that the Orders were "meant . . . to be final" because "the litigation . . . has reached such a stage that a court sees no really good reason for permitting it to be litigated again."  *Zdanok v. Glidden Co., Durkee Famous Foods Div.*, 327 F.2d 944, 955 (2d Cir. 1964) (Friendly, J.); *see Lummus Co. v. Commonwealth Oil Ref. Co.*, 297 F.2d 80, 89 (2d Cir. 1961) (Friendly, J.) ("'Finality'

19

in the [*res judicata*] context here relevant may mean little more than that the litigation

of a particular issue has reached such a stage that a court sees no really good reason

for permitting it to be litigated again.").

Accordingly, Argentina is collaterally estopped from challenging the Court's

prior determination that Argentina has violated the Pari Passu Clause.  Partial

summary judgment in the present case, which is premised on Argentina's violation of

the Pari Passu Clause, is therefore warranted.[6]

### B.    Plaintiff Is Entitled To Partial Summary Judgment Based On Argentina's Violations Of The Pari Passu Clause Even If Collateral Estoppel Were Not Applicable

Even if the Court does not apply collateral estoppel here, Plaintiff is still

entitled to partial summary judgment for Argentina's indisputable breach of the Pari

Passu Clause.  The Second Circuit has recognized that Argentina's entire course of

conduct is relevant to establishing its violation of the Pari Passu Clause.  *NML I*, 699

---

[6]    Plaintiff's motion for partial summary judgment on the issue of whether Argentina violated the Pari Passu Clause should also be granted under the law of the case doctrine, which "counsels a court against revisiting its prior rulings in subsequent stages of the same case absent cogent and compelling reasons such as an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Ali v. Mukasey*, 529 F.3d 478, 490 (2d Cir. 2008) (internal citation and quotation marks omitted); *see also Aramony v. United Way of Am.*, 254 F.3d 403, 410 (2d Cir. 2001) ("[I]f a court decides a rule of law, that decision should continue to govern in subsequent stages of the same case.") (internal citation and quotation marks omitted).  "Courts apply the law of the case doctrine when their prior decisions . . . either expressly resolved an issue or necessarily resolved it by implication." *Id.* "The doctrine is broad enough to encompass[] a lower court's adherence to . . . the rulings of another judge or court in . . . *a closely related* case." *Ovadia v. Top Ten Jewelry Corp.*, No. 04 Civ. 2690, 2005 WL 1949970, at *1 (S.D.N.Y. Aug. 12, 2005) (alterations in original) (internal quotations marks and citation alteration omitted).  Here, application of the law of the case doctrine so as not to permit Argentina to re-litigate the issue of its violation of the Pari Passu Clause is appropriate because that issue was decided by the Court in "a closely related case."   The prior rulings in the Pre-Judgment Cases also serve as controlling precedent on the issues raised by this motion, and should be followed.  *E.g., Jackson v. Good Shepherd Servs.*, 683 F. Supp.2d 290, 292 (S.D.N.Y.2009) ("[D]istrict courts are bound . . . to follow controlling precedents of the courts of appeals for their circuits.").

F.3d at 264 n. 16.  Although the Court is quite familiar with that course of conduct, it

is reprised here.

> ### 1.    Argentina Indisputably Has Paid Other External Creditors While Withholding Payment From Plaintiff In Violation Of The Equal Treatment Provision

The plain language of the Pari Passu Clause requires that Argentina treat its

"payment obligations" on Plaintiff's bonds equally with Argentina's payment

obligations on External Indebtedness.  As the late noted NYU law professor Andreas

Lowenfeld explained in a similar context, "[a] borrower from Tom, Dick, and Harry

can't say 'I will pay Tom and Dick in full, and if there is anything left over I'll pay

Harry.'  If there is not enough money to go around, the borrower . . . must pay all

three of them on the same basis . . . ."  Cohen Decl. Ex. 43, at 11-12 (8/31/2000

Lowenfeld Decl.).  As long as Argentina's obligations under Plaintiff's bonds remain

outstanding, each discriminatory payment constitutes a separate, actionable breach of

the Clause.  *Cf. Interoceanica Corp. v. Sound Pilots, Inc.*, 107 F.3d 86, 91 (2d Cir.

1997) (holding in the context of a rental agreement that "a party who breaches a

contract twice in the same way has committed two separate breaches").

Courts have embraced this interpretation of a *pari passu* clause.  In *NML I*, the

Second Circuit held that "[t]he second sentence [of the Pari Passu Clause] . . .

prohibits Argentina, as bond *payor*, from paying on other bonds without paying on the

FAA Bonds."  *See NML I*, 699 F.3d at 259 (emphasis in original).   This conclusion is

consistent with that of other courts.  *Red Mountain Fin., Inc. v. Democratic Republic*

*of Congo*, No. CV 00-0164 R (BQRx) (C.D. Cal. May 29, 2001); Cohen Decl. Ex. 44,

*Republic of Nicaragua v. LNC Invs. LLC*, Folio 2000 No. 1061, R.K. 240/03

(Commercial Ct. of Brussels Sept. 11, 2003), *rev'd in part on other grounds*, Gen.

Doc. No. 2003/KR/334 (Court of Appeals of Brussels, 9th Chamber, Mar. 19, 2004);

Cohen Decl. Ex. 45, *Elliott Assocs. L.P.*, General Docket No. 2000/QR/92, at ¶ 6

(Court of Appeals of Brussels, 8th Section, Sept. 26, 2000).

Argentina has violated the Equal Treatment Provision repeatedly since 2005,

and as recently as January 2, 2015, by making, or attempting to make, timely interest

payments to Exchange Bondholders while withholding payments from Plaintiff.

Cohen Decl. Ex. 42; Ex. 2 at 4; Greenberg Decl. ¶ 6.  There is no question that the

2005 and 2010 Exchange debt issued by Argentina meets the FAA's definition of

External Indebtedness.  Cohen Decl. Ex. 1, at ¶ 16.  Hence, in refusing to pay Plaintiff

while paying the Exchange Bondholders, Argentina violated the Pari Passu Clause

each time it made a payment on the Exchange Bonds.

> **2.    Argentina Indisputably Has Enacted Laws And Formal
> Decrees Lowering the Rank of Argentina's Payment
> Obligations Under Plaintiff's Bonds In Violation Of The Pari
> Passu Clause**

In addition to prohibiting payments on External Indebtedness without making

payments to Plaintiff, the Pari Passu Clause prohibits Argentina from subordinating

the payment obligations under Plaintiff's bonds to a rank lower than its payment

obligations under the Exchange Bonds.  However, Argentina has done just that, in

direct violation of the Pari Passu Clause.

First, in 2005, Argentina lowered the rank of its payment obligations to Plaintiff relative to its payment obligations to other creditors.  *See* Cohen Decl. Ex. 6. In the prospectus for its 2005 Exchange Offer, Argentina declared that it would pay on the Exchange Bonds but had "no intention" of paying on the FAA Bonds.  Cohen Decl. Ex. 7, at 18.  Codifying its determination to consign its obligations under Plaintiff's bonds to a non-paying class, Argentina passed the Lock Law.  Cohen Decl. Ex. 6.  Article 3 of the Lock Law prohibits Argentina from conducting any type of settlement in relation to non-tendered bonds.  *Id*.  Article 4 orders the removal of non-tendering bonds from listing on all domestic and foreign securities markets and exchanges.  *Id*.  Thus the Lock Law, by its very terms, subordinated the rank of Argentina's payment obligations under Plaintiff's bonds by ensuring that Plaintiff would never receive payment while Argentina pays the Exchange Bondholders.  *See NML I*, 699 F.3d at 260.  The Lock Law relegated the FAA Bonds to the "peripheral garbage circuit"—in other words, highly subordinated debt—as Argentine legislators explained.  Cohen Decl. Ex. 6.

Second, Argentina compounded its violation of the Pari Passu Clause in 2009 when it enacted Law 26,547, which, as discussed above, *see supra* page 8, suspended the Lock Law's prohibition on reopening the exchange in order to create additional preferred payment obligations.  Law 26,547 reaffirmed that Argentina would make no payments to creditors who did not participate in the exchange offers, and imposed a prohibition on payments to bondholders that were also judgment creditors.  Cohen Decl. Ex. 10, at art. 5.  Like the Lock Law, Law 26,547 firmly set the rank of

Argentina's payment obligations to Plaintiff beneath the rank of its payment obligations to the participating bondholders, in violation of the Pari Passu Clause.  *Id.*

Third, Argentina has, since the Second Circuit's 2013 decision in *NML II*, enacted two statutes further confirming the lowered rank of its payment obligations under Plaintiff's bonds.  In September 2013, Argentina passed Law No. 26,886, discussed above, *supra* page 12, which forbids the Argentine government from "offer[ing] to holders of government-issued debt who have filed court [actions] . . . treatment more favorable than that given to those who have not done so"—meaning that, under this law, Argentina prohibited itself from honoring its obligations to Plaintiff.  Cohen Decl. Ex. 18.  And in September 2014, Argentina passed Law 26,984, which purported to change the trustee for Exchange Bonds from BNY to Nación Fideicomisos, and the location of payment on Exchange Bonds to Buenos Aires, explicitly to evade the "illegitimate and illegal obstruction" created by "judicial orders issued by the Southern District Court of the City of New York."  Cohen Decl. Ex. 35, at art. 2.

Argentina's highest court has recognized that Argentina's debt legislation—in combination with Argentina's annually renewed repayment moratoriums—bars recognition in Argentine courts of U.S. judgments on defaulted Argentine bonds. *E.g.*, Cohen Decl. Ex. 4, *Claren Corp. c/ E.N.*, C. 462, XLVII (Mar. 6, 2014).  Indeed, as one Argentine appellate court noted, these laws constitute Argentine "public policy" never to recognize Argentina's payment obligations on defaulted Argentine bonds.  Cohen Decl. Ex. 46, *Claren Corp. c/ Estadio Nacional*, CFed, sala X, 2010.

24

> ### 3. Argentina Indisputably Has Lowered The Rank Of Its Payment Obligations Under Plaintiff's Bonds Through A Series Of Official Pronouncements Confirming That It Subordinated Those Obligations To A Non-Paying Class

In addition to violating the Pari Passu Clause through particular legislative enactments, Argentina has violated the provision through its entire course of conduct from 2005 to the present.  Argentina declared in the prospectuses for both the 2005 Exchange and the 2010 Exchange that it "has no intention of resuming payment on any bonds eligible to participate in an exchange offer . . . that are not tendered." Cohen Decl. Ex. 7, at 18; Ex. 5.  It further stated in SEC filings that it had "classified [the FAA Bonds] as a separate category from its regular debt" and is "not in a legal . . . position to pay" them.  Cohen Decl. Ex. 47, at 2 (Form 18-K 9/30/2011).  In response to the Court's Orders granting Plaintiff injunctive relief, Economy Minister Kicillof declared that Argentina "would never make a payment" to the holders of FAA Bonds. Cohen Decl. Ex. 48 (3/6/2012 Página 12).

Argentina continued to brazenly violate and evade the Court's Orders long after the close of the 2010 Exchange and through the present day.  Just days after the Second Circuit affirmed the Court's Amended February 23 Orders requiring Argentina to specifically perform its Pari Passu obligations and enjoining Argentina from evading its obligations under the Orders, President Kirchner gave a televised address criticizing the Court's and the Second Circuit's rulings and announcing a new plan under which New York law-governed bonds would be replaced with bonds

governed by local law.  Cohen Decl. Ex. 17.  Then, on September 11, 2013, Argentina

enacted Law 26,886, making it illegal to honor the nation's obligations to Plaintiff.

SOF ¶¶ 40, 41; Cohen Decl. Ex. 18 art. 4.  After the Supreme Court denied

Argentina's request for certiorari on June 16, 2014, President Kirchner gave another

televised addressed declaring that Argentina would not "be subjected to such

extortion."  Cohen Decl. Ex. 22, at 21.  The following day, Economy Minister Kicillof

announced yet another plan to evade the Amended February 23 Orders by exchanging

the bonds governed by New York law for bonds new bonds payable in Argentina

under Argentine law.  Cohen Decl. Ex. 23.  Although the Court ruled unambiguously

that Argentina's proposed evasion plans were illegal, Argentina nevertheless

attempted to make payments due on the Exchange Bonds without making a Ratable

Payment as required by the Court's Amended February 23 Orders.  *See* Cohen Decl.

Ex. 27.  These repeated and continuing attempts to evade the rulings of United States

courts evidence Argentina's staunch refusal to fulfill its obligations under the Pari

Passu Clause.

      The Second Circuit has made clear that "the combination of Argentina's

executive declarations and legislative enactments have ensured that plaintiffs'

beneficial interests do *not* remain direct, unconditional, unsecured and unsubordinated

obligations of the Republic and that any claims that may arise from the Republic's

restructured debt *do* have priority in Argentinian courts over claims arising out of the

Republic's unstructured debt."  *NML I*, 699 F.3d at 260.  This Court thus should

follow the Second Circuit's approach, and "simply" conclude "that Argentina's

course of conduct here did" breach the Pari Passu Clause.  *Id.* at 264 n.16.

* * *

By virtue of these indisputable violations of the Pari Passu Clause by

Argentina, Plaintiff is entitled to partial summary judgment.

## II.

### ARGENTINA CANNOT EVADE ITS OBLIGATION TO ABIDE BY THE PARI PASSU CLAUSE BY INVOKING THE DOCTRINE OF *RES JUDICATA* OR MERGER

Based on Argentina's Answer to Plaintiff's complaint,[7] Plaintiff anticipates

that Argentina will argue that Plaintiff's claim for relief based on the Pari Passu

Clause is barred by the doctrine of *res judicata* and merger.  Such arguments, if made

here, would be unavailing.  Indeed, in a recent case with facts and issues similar to

those here, and premised in large part on prior *pari passu* proceedings in the

Argentina litigation, the late Judge Harold Baer held that a claim for injunctive relief

to remedy breaches of the *pari passu* provision and negative covenants in loan

agreements was <u>not</u> barred under either doctrine by a prior judgment for principal and

interest on the same agreements.  *Export-Import Bank of the Republic of China v.

Grenada*, Case No. 13 Civ. 1450 (HB), 2013 WL 4414875, at *3 (S.D.N.Y. Aug. 19,

2013) (the "*Grenada* litigation").  Both the holding and the logic of Judge Baer's

opinion apply squarely here.

---

[7]        *See* Answer at ¶¶ 112, 113, *NML Capital, Ltd v. The Republic of Argentina*, No. 14 Civ. 8601 (S.D.N.Y.)(TPG)(ECF No. 5).

A.     *Res Judicata* **Does Not Bar Plaintiff's Pari Passu Claim**

The doctrine of claim preclusion "applies to preclude later litigation if the earlier decision was (1) a final judgment on the merits, (2) by a court of competent jurisdiction, (3) in a case involving the same parties or their privies, and (4) involving the same cause of action." *In re Teltronics Services, Inc.*, 762 F.2d 185, 190 (2d Cir. 1985). Two key requirements must both be satisfied in order for *res judicata* to preclude a later-filed claim: First, the claim in the subsequent case must be the "same cause of action," such that the subsequent case involves "the same transaction, evidence, and factual issues." *Sure-Snap Corp. v. State Street Bank & Trust Co.*, 948 F.2d 869, 874 (2d Cir. 1991). Second, it must be shown that the claim in the subsequent action "*could not have been* brought in the prior action." *Bank of N.Y. v. First Millennium, Inc.*, 607 F.3d 905, 919 (2d Cir. 2010)( emphasis in original). Argentina's *res judicata* contentions would fail both tests.

**Different Causes of Actions**: First, Plaintiff's claim for breach of the Pari Passu Clause is not the "same cause of action" as its claim for repayment of principal and interest. In the *Grenada* litigation, Judge Baer explained that analyzing the "same cause of action" prong of *res judicata* requires the court to look to three "concepts":

> "(1) whether the underlying facts are related in time, space, origin, or motivation; (2) whether the underlying facts form a convenient trial unit; and (3) whether their treatment as a unit conforms to the parties' expectations."

2013 WL 4414875, at *2 (quoting *Channer v. Dep't of Homeland Sec.*, 527 F.3d 275, 280 (2d Cir. 2008)) (internal quotation marks and citations omitted). Applying the

analysis, Judge Baer held that the two claims against Grenada, indistinguishable from Plaintiff's two claims, were legally distinct from one another.

In the *Grenada* litigation, the Republic of Grenada ("Grenada") had defaulted on its loan agreements (agreements that included *pari passu* provisions) and subsequently restructured its debt. The Export-Import Bank ("Ex-Im Bank") obtained a judgment for principal and interest after the default. Six years later, after unsuccessfully attempting to collect on its judgment, Ex-Im Bank filed a second complaint, this time alleging Grenada's breach of the *pari passu* provisions in the loan agreements by making interest payments on its restructured debt while refusing to pay Ex-Im Bank—precisely the situation at issue here.

Grenada (represented by Cleary Gottlieb) sought dismissal of Ex-Im's second action on the basis of *res judicata* and merger. The court rejected Grenada's arguments. The court found that Grenada's alleged breaches of the *pari passu* clause, which occurred years after its default, were not related to the wrongs addressed in the original default litigation. As Judge Baer reasoned, "[i]t is difficult to characterize the latter set of wrongs, which takes place years after Grenada's default, as 'related in time, space or origin to the wrongs litigated' in the first action." *Id*. at *2 (citing *Interoceanica Corp. v. Sound Pilots, Inc.*, 107 F.3d 86, 91 (2d Cir. 1997)).

As in the *Grenada* litigation, Plaintiff's previous complaints for money damages were based on a different "set of wrongs" and different provisions of the FAA than those at issue here. In Plaintiff's prior complaints, the relevant facts related solely to Argentina's failure to make payments on principal and interest, which

29

occurred in 2001.  The present complaint, however, claims that Argentina has

breached the Pari Passu Clause throughout its course of conduct from 2005 through

and including today, which includes the 2005 and 2010 Exchange Offers; the laws

implemented by Argentina in 2005, 2009, 2013 and 2014 respectively; the annual

extension of the payment moratorium in the national budget; and Argentina's nine

year history of payments and attempted payments to the Exchange Bondholders

without making any payment to Plaintiff, the latest of which occurred as recently as

January 2, 2015.  All of this conduct is far removed from Argentina's 2001 default.

As in the *Grenada* litigation, "the latter set of wrongs," which took place years after

Argentina's default, and are continuing after Plaintiff filed its complaints for money

damages, are not "related in time, space, or origin to the wrongs litigated" in

Plaintiff's prior suits for money damages.

  Nor would the treatment of these different claims as a single unit "conform[] to

the parties' expectations."  *Id.* at *2.  To the contrary, throughout this litigation the

Court and the parties have treated violations of the Pari Passu Clause as an

independent claim, separate and apart from the breach of contract claims that resulted

in Plaintiff's judgments.

  This Court has said as much.  Most directly, and as referred to above, in the

December 7, 2011 Order, the Court ruled that the Pari Passu Clause applies to post-

judgment creditors:

> It is DECLARED, ADJUDGED, and DECREED that the
> Republic's payment obligations on the bonds include its payment
> obligations to bondholders who have brought actions to recover

30

> on their defaulted bonds, and **on judgments** entered pursuant to
> judicial action brought by bondholders.

Cohen Decl. Ex. 2, at 4 ¶ 3 (emphasis added).  That Order confirms that Plaintiff and the other post-judgment creditors could avail themselves of the protections of the Pari Passu Clause, and that the proper way for them to do so is through a new action.[8]

**Claims That Could Not Have Been Asserted**:  *Res judicata* "has no effect on claims that *could not have been* brought in the prior action" including claims "that arise after the commencement of the prior action." *Bank of N.Y. v. First Millennium, Inc.*, 607 F.3d 905, 919 (2d Cir. 2010) (emphasis in original); *see also TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 501 (2d Cir. 2014) (holding that claim preclusion does not bar a suit "based upon legally significant acts occurring *after* the filing of a prior suit that was itself based upon earlier acts" (quoting *Waldman v. Village of Kiryas Joel*, 207 F.3d 105, 113 (2d Cir. 2000) (emphasis in original)).  The relevant measuring point here is not the date on which the Court *awarded* money judgments but, rather, the date on which Plaintiff "commence[d]…the prior action," *Bank of N.Y.*, 607 F.3d at 919, because a plaintiff has no obligation to amend a complaint to

---

[8]      From the earliest stages of this litigation, the Court and the parties have treated violations of the Pari Passu Clause as an independent claim, separate and apart from the breach of contract claims that resulted in the judgments.  For example, in Plaintiff's action 03 Civ. 8845, the Court granted Argentina's request for the entry of a partial judgment pursuant to Fed. R. Civ. P. 54(b) that expressly recognized the separateness of the two issues—Argentina's default and its violation of the Pari Passu Clause—so as not to invoke the claim preclusion doctrine.  *See NML Capital, Ltd v. The Republic of Argentina*, No. 03 Civ. 8845 (S.D.N.Y. Apr. 5, 2004); Tr. at 9:5–8, *NML Capital, Ltd v. The Republic of Argentina*, No. 03 Civ. 8845 (S.D.N.Y. Apr. 2, 2004).  Similarly, the Court's denial of Plaintiff's motion to dismiss Argentina's Pari Passu counterclaim in Plaintiff's action 05 Civ. 2434, on the basis that the motion was not ripe, in a decision issued in 2008, *i.e.*, long after Argentina began violating the Pari Passu Clause (*NML Capital, Ltd v. The Republic of Argentina*, No. 05 Civ. 2434 (S.D.N.Y. Mar. 31, 2008) (ECF No. 65)), further demonstrates that the Court and the parties understood that the Pari Passu issue was still alive and subject to being decided in the future should the post-judgment creditors raise it.

assert claims that arise after the filing of the complaint.  *SEC v. First Jersey Securities, Inc.*, 101 F.3d 1450, 1464 (2d Cir. 1996) (SEC action begun in 1979 did not bar charges for similar transactions occurring in 1982-1985).

Plaintiff's Pari Passu claims arise out of Argentina's ongoing course of conduct, as identified by the Second Circuit.  Indeed, Argentina has continued to make discriminatory payments as recently as January 2, 2015, and that payment constituted a new and independent breach of the Pari Passu Clause.  Plaintiff could not have asserted the same theories of breach when it first filed suit and was not required to seek an injunction prohibiting Argentina from engaging in the full pattern of conduct *before* Argentina had done so.  *See TechnoMarine SA*, 758 F.3d at 504 n.9 (plaintiffs "may also elect not to seek an injunction because he reasonably assumes the defendant will comply with the law going forward.").  Thus, Plaintiff could not have asserted the same Pari Passu claims when it filed suit in the post-judgment actions and *res judicata* does not prohibit it from asserting them now.

Because Plaintiff's Pari Passu claims do not involve the same facts and circumstances as its prior suits for money judgment, and because Plaintiff could not have asserted the same Pari Passu claims when it brought its actions seeking money judgments, Argentina's *res judicata* contentions cannot bar this action.

## B.   The Doctrine Of Merger By Judgment Does Not Bar Plaintiff's Pari Passu Claims

The so-called "merger" doctrine would not bar Plaintiff from seeking relief for Argentina's breach of the Pari Passu Clause.  The merger doctrine is synonymous

32

with *res judicata* (or "claim preclusion"), rather than an independent defense.  *See*

*Taylor v. Sturgell*, 553 U.S. 880, 892 n.5 (2008) ("claim preclusion describes the rules

formerly known as 'merger' and 'bar'").  As Judge Baer noted in the *Grenada*

litigation, litigants cannot rely on the merger doctrine to "bypass the standard res

judicata analysis."  *Export-Import Bank*, 2013 WL 4414875, at *3.  In fact, the

Supreme Court and Second Circuit both have suggested that federal courts have

"retired" the terminology of "merger" and replaced it with the language of claim

preclusion.  *Taylor*, 553 U.S. at 892 n.5 (describing "claim preclusion" as having

"replaced" the "more confusing lexicon" of "merger" and "bar"); *NML Capital Ltd v.*

*Banco Central de la Republica Argentina*, 652 F.3d 172, 185 (2d Cir. 2011)

(describing merger as "the terminology of the common law that federal courts have

supposedly retired").  Argentina's merger arguments, therefore, fail for the same

reasons that its *res judicata* arguments fail, because "merger" is nothing more than

another word for *res judicata*.  *See supra* § II.A.

Even if it could be viewed as a distinct defense, the merger doctrine would be

unavailing to Argentina.  The purpose of the merger doctrine is to "prevent successive

actions on the same cause."  *Jay's Stores, Inc. v. Ann Lewis Shops, Inc.*, 256 N.Y.S.2d

600, 603 (1965); 17 David D. Siegel, New York Practice § 450, at 758 ("The

merger doctrine merely seeks to prevent suit from being duplicated on the claim . . .");

*Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 77 n.1 (1984) ("Claim

preclusion . . . encompasses the law of merger and bar.").  The doctrine "is intended

to serve the aims of fairness and efficient judicial administration" and "need not be

applied mechanically." *La Societe Anonyme des Parfums le Galion v. Jean Patou, Inc.*, 495 F.2d 1265, 1276 (2d Cir. 1974).  Thus, as recognized by the New York Court of Appeals, the merger doctrine does not automatically extinguish all provisions of a contract that is the subject of a judgment.  Rather:

> [M]erger by judgment does not destroy all of the identifying characteristics or relationships of the cause of action which the judgment determines; and it seems rather clear that the doctrine was not designed to weaken rights or destroy identities which the prevailing party had in his original cause and which he succeeded in establishing by judgment in his favor.

*Jay's Stores*, 256 N.Y.S.2d at 604; *accord* 17 DAVID D. SIEGEL, NEW YORK PRACTICE § 450, at 758 ("If there is anything about the underlying claim that offers the plaintiff some advantage . . . it should retain its identity and peer right through the judgment to make itself felt. . . . New York subscribes to the healthy view that the merger doctrine will not be allowed to undermine benefits inhering in the claim merely because it has gone to judgment.").

Applying merger to bar Plaintiff's claims here would contravene these important rights.  The critical components of the Pari Passu Clause are that it (1) "prohibits Argentina, as bond *issuer*, from formally subordinating the bonds by issuing superior debt" and (2) "prohibits Argentina, as bond *payor*, from paying on other bonds without paying on the FAA Bonds."   *NML I*, 699 F.3d at 259.  If these advantages disappeared through the application of the merger doctrine, and could not be enforced, there is no doubt that Plaintiff would be in a worse position than if it had not obtained a judgment.

34

(Indeed, the Court has already ruled in the Pre-Judgment Cases that the Pari Passu Clause

operates post-judgment.  Cohen Decl. Ex. 2, at 4 ¶ 3.

Under circumstances almost identical to this case, the *Export-Import Bank*

court found that the doctrine of merger did not bar the plaintiff's second suit for

breach of a *pari passu* provision:

> Although Grenada acknowledged during the oral argument that
> "merger is not an independent, totally distinct doctrine" but "a
> subspecies of res judicata," it nonetheless urged the Court to
> apply the "concept of extinguishment, of a contract being
> extinguished and merging into a judgment" and adopt the
> position that no provisions of the loan instruments survive
> judgment absent explicit contrary language.  Oral Arg. Tr. 7:6-9,
> 8:1-2 May 29, 2013.  Similar efforts to bypass the standard res
> judicata analysis have been rejected by the courts in this Circuit.
> *See Counsel Fin. Servs., LLC v. Leibowitz*, No. 09-CV-1025S,
> 2012 WL 1057311, at *4 (W.D.N.Y. Mar. 27, 2012) (holding
> that the doctrine of merger "does not serve to limit a plaintiff to
> one suit based on one 'instrument,' but instead limits a plaintiff
> to one suit based on one event or series of events"); *see also
> Orix*, 965 F. Supp. at 485.

*Export-Import Bank*, 2013 WL 4414875, at *3 (emphasis added).  This Court should

adopt Judge Baer's reasoning and conclude that, if *res judicata* does not bar Plaintiff's

claims, then neither does the merger doctrine.

* * *

In sum, neither claim preclusion nor merger principles could bar Plaintiff's

present claims that Argentina repeatedly and flagrantly breached the Pari Passu

Clause.  These new claims seek relief for Argentina's stand-alone violations of a

different contract provision, at different times than Argentina's 2001 default on its

payment obligations, repudiating an entirely different right owed to Plaintiff—the

35

right to hold a specified position relative to other creditors in the very event of default. Any attempt by Argentina to immunize itself from liability for breaching one vital contractual obligation by defaulting on another years earlier should be squarely rejected.

## CONCLUSION

For the foregoing reasons, the Court should grant Plaintiff's motion for partial summary judgment as to Argentina's violations of the Pari Passu Clause.  The remedy for Argentina's violations should be determined in subsequent proceedings.

Respectfully submitted,

**DECHERT LLP**

New York, New York
February 3, 2015

By:  /s/Robert A. Cohen
    Robert A. Cohen
    robert.cohen@dechert.com
    Dennis H. Hranitzky
    dennis.hranitzky@dechert.com
    1095 Avenue of the Americas
    New York, NY 10036
    (212) 698-3500

    *Attorneys for Plaintiff NML Capital, Ltd.*