UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- X

NML CAPITAL, LTD.,

                        Plaintiff,

             - against -

THE REPUBLIC OF ARGENTINA,

                       Defendant.

: 14 Civ. 8601 (TPG)

------------------------------------------------------------- X

NML CAPITAL, LTD.,

                        Plaintiff,

             - against -

THE REPUBLIC OF ARGENTINA,

                       Defendant.

: 14 Civ. 8988 (TPG)

------------------------------------------------------------- X

## MEMORANDUM OF LAW IN SUPPORT OF THE
## MOTION BY NML CAPITAL, LTD. FOR SPECIFIC PERFORMANCE

**DECHERT LLP**
Robert A. Cohen
Dennis H. Hranitzky
Mariel R. Bronen
1095 Avenue of the Americas
New York, NY 10036
(212) 698-3500

*Attorneys for Plaintiff*
*NML Capital, Ltd.*

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................... 1

BACKGROUND ................................................................................................... 3

    A.    Argentina Issues Bonds Containing The Pari Passu Clause. ...................................3

    B.    Argentina Defaults On Its Sovereign Debt In 2001 ...............................................4

    C.    Argentina Reduces The Rank Of Its Payment Obligations Under Plaintiff's Bonds in 2005. ...........................................................................................5

    D.    Argentina Again Reduces The Rank of Its Payment Obligations Under Plaintiff's Bonds In 2010. ..........................................................................................6

    E.    In the Pre-Judgment Cases, the Court Orders Argentina To Remedy Its Violations Of The Equal Treatment Provision And Enjoins Any Further Violations. ...........................................................................................................7

    F.    Argentina Continues, Brazenly And Repeatedly, To Violate The Equal Treatment Provision And The Court's Orders. ........................................................9

    G.    The Court Finds That Argentina Has Violated The Pari Passu Clause In The Present Actions. ............................................................................................12

ARGUMENT ..................................................................................................... 12

I.    PLAINTIFF IS ENTITLED TO SPECIFIC PERFORMANCE OF THE EQUAL TREATMENT PROVISION ............................................................. 13

    A.    Argentina's Violations Of The Equal Treatment Provision Are Causing Plaintiff Irreparable Injury For Which There Is No Adequate Remedy At Law. ..................................................................................................................13

    B.    The Balance Of Equities Strongly Favors Specific Performance. ........................14

    C.    The Public Interest In Enforcing Contracts And Maintaining Confidence In Debt Markets Supports The Grant Of Injunctive Relief....................................16

    D.    Plaintiff Is Entitled To Ratable Payment. ............................................................18

CONCLUSION................................................................................................... 19

# <u>TABLE OF AUTHORITIES</u>

## CASES

*Capital Ventures Int'l v. Republic of Argentina*,
  443 F.3d 214 (2d Cir. 2006)................................................................5

*Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*,
  511 U.S. 164 (1994)...........................................................................17

*Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*,
  511 F.3d 535 (6th Cir. 2007) ..............................................................16

*eBay Inc. v. MercExchange, L.L.C.*,
  547 U.S. 388 (2006)...........................................................................13

*EM Ltd. v. Republic of Argentina*,
  473 F.3d 463 (2d Cir. 2007)...........................................................4, 15

*Guinness-Harp Corp. v. Jos. Schlitz Brewing Co.*,
  613 F.2d 468 (2d Cir. 1980)...............................................................13

*In re Bd. of Dirs. of Multicanal S.A.*,
  307 B.R. 384 (Bankr. S.D.N.Y. 2004)................................................17

*Nemer Jeep-Eagle, Inc. v. Jeep-Eagle Sales Corp.*,
  992 F.2d 430 (2d Cir. 1993)...............................................................13

*NML Capital, Ltd. v. Republic of Argentina*,
  2015 WL 3542535 (S.D.N.Y. June 5, 2015) ................................ passim

*NML Capital, Ltd. v. Republic of Argentina*,
  699 F.3d 246 (2d Cir. 2012), *cert. denied*, 134 S. Ct. 201 (2013) ("*NML I*") ................ passim

*NML Capital, Ltd. v. Republic of Argentina*,
  727 F.3d 230 (2d Cir. 2013), *cert. denied*, 134 S. Ct. 2819 (2014) ("*NML II*").............. passim

*NML Capital, Ltd v. The Republic of Argentina*,
  No. 12-105(L) (2d Cir. June 18, 2014) .................................................9

*Republic of Argentina v. NML Capital, Ltd., et al.*,
  No. 12-1494 (S. Ct. Oct. 7, 2013).........................................................8

*Republic of Argentina v. NML Capital, Ltd., et al.*,
  No. 13-990 (S. Ct. June 16, 2014) ....................................................9, 10

**RULES AND STATUTES**

Federal Rule of Civil Procedure 65(d)......................................................................................1, 16

Uniform Commercial Code §§ 4A-104(b), 4A-503. ................................................................16

Pursuant to Federal Rule of Civil Procedure 65(d), NML Capital, Ltd. ("NML" or "Plaintiff") respectfully moves for equitable relief in the form of an order of specific performance requiring Argentina to make ratable payments to Plaintiff any time that it makes, or attempts to make, payments on the Exchange Bonds (defined herein).

## INTRODUCTION

For more than a decade, Plaintiff and other similarly situated bondholders have litigated before the Court to obtain judgments and enforce those judgments on billions of dollars of defaulted Argentine bonds.  In cases where bondholders obtained money judgments, Argentina has steadfastly refused to honor them.  Instead of respecting the authority of the Court, Argentina has taken extraordinary measures to evade repayment—including, but not limited to, enacting laws that proclaim that it will ***never*** satisfy the judgments entered by the Court.  Bondholders that acquiesced in Argentina's coercive "exchange offers," and accepted new instruments worth pennies on the dollar (the "Exchange Bonds") in return for releasing multi-billion dollar holdings were, until recently, paid on their Exchange Bonds.  On the other hand, Plaintiff and others who elected to hold Argentina to its contractual obligations and thus rejected Argentina's take-it-or-leave-it offers have received nothing, despite the judgments entered by the Court.

Separately, Plaintiff and other similarly situated bondholders have sought relief in this Court under a provision of the bond documents that states:

> The Securities will constitute . . . direct, unconditional, unsecured and unsubordinated obligations of the Republic and shall at all times rank *pari passu* and without any preference among themselves.  The payment obligations of the Republic under the Securities shall at all times rank at least equally with all its other present and future unsecured and unsubordinated External Indebtedness . . .

Declaration of Robert A. Cohen in Support of the Motion By NML Capital, Ltd. for Specific Performance, dated August 14, 2015 ("Cohen Decl."), Ex. 1, at ¶ 1(c) (FAA) (hereinafter, the "Pari Passu Clause").  And the Court has twice held that Argentina violates that Clause by

lowering the rank of its obligations under Plaintiff's bonds and by refusing to pay Plaintiff while paying or attempting to pay other creditors—both in the initial thirteen cases in which bondholders sought relief under the Pari Passu Clause, (the "Pre-Judgment Cases"), Cohen Decl. Ex. 2 (Amended February 23 Order); [1] and in the more recent "me-too" cases. [2] *NML Capital, Ltd. v. Republic of Argentina,* 2015 WL 3542535, at *1 (S.D.N.Y. June 5, 2015).

In the Pre-Judgment Cases, the Court held that Argentina's violations of the Pari Passu Clause warranted equitable relief, and accordingly ordered Argentina to specifically perform its obligations under the second sentence of the Pari Passu Clause (the "Equal Treatment

---

[1]   *NML Capital, Ltd v. The Republic of Argentina*, Nos. 08 Civ. 6978 (TPG), 09 Civ. 1707 (TPG), 09 Civ. 1708 (TPG) (S.D.N.Y.); *Aurelius Capital Master, Ltd. and ACP Master, Ltd. v. The Republic of Argentina*, Nos. 09 Civ. 8757 (TPG), 09 Civ. 10620 (TPG); *Aurelius Opportunities Fund II, LLC and Aurelius Capital Master, Ltd. v. The Republic of Argentina*, Nos. 10 Civ. 1602 (TPG), 10 Civ. 3507 (TPG); *Aurelius Capital Master, Ltd. and Aurelius Opportunities Fund II, LLC v. The Republic of Argentina*, Nos. 10 Civ. 3970 (TPG), 10 Civ. 8339 (TPG); *Blue Angel Capital I LLC v. The Republic of Argentina*, Nos. 10 Civ. 4101 (TPG), 10 Civ. 4782 (TPG); *Olifant Fund, Ltd. v. The Republic of Argentina*, No. 10 Civ. 9587 (TPG); *Pablo Alberto Varela, et al. v. The Republic of Argentina*, No. 10 Civ. 5338 (TPG).

[2]   *FFI Fund, Ltd. v. The Republic of Argentina*, 14 Civ. 8630 (TPG) (S.D.N.Y.); *Perez v. The Republic of Argentina*, 14 Civ. 8242 (TPG); *Aurelius Capital Partners, LP v. The Republic of Argentina*, Nos. 14 Civ. 8242 (TPG), No. 14 Civ. 8946 (TPG); *Blue Angel Capital I LLC v. The Republic of Argentina*, No. 14 Civ. 8947 (TPG); *EM Ltd. v. The Republic of Argentina*, No. 14 Civ. 8303 (TPG); *Lightwater Corp., Ltd. v. The Republic of Argentina*, No. 14 Civ. 4092 (TPG); *Old Castle Holdings, Ltd. v. The Republic of Argentina*, No. 14 Civ. 4091 (TPG); *Settin v. The Republic of Argentina*, No. 14 Civ. 8739 (TPG); *Capital Ventures Int'l v. The Republic of Argentina*, No. 14 Civ. 7258 (TPG); *Adami v. The Republic of Argentina*, No. 14 Civ. 7739 (TPG); *Capital Mkts. Fin. Serv. v. The Republic of Argentina*, No. 15 Civ. 0710 (TPG); *Foglia v. The Republic of Argentina*, No. 14 Civ. 8243 (TPG); *Pons v. The Republic of Argentina*, No. 13 Civ. 8887 (TPG); *Guibelalde v. The Republic of Argentina*, No. 11 Civ. 4908 (TPG); *Dorra v. The Republic of Argentina*, No. 14 Civ. 10141 (TPG); *Beloqui v. The Republic of Argentina*, No. 14 Civ. 5963 (TPG); *Tortus Capital Master Fund, LP v. The Republic of Argentina*, Nos. 14 Civ. 1109 (TPG) , 14 Civ. 3127 (TPG); *Trinity Investments Ltd. v. The Republic of Argentina*, No. 14 Civ. 10016 (TPG); *Montreux Partners, L.P. v. The Republic of Argentina*, No. 14 Civ. 7171 (TPG); *Los Angeles Capital v. The Republic of Argentina*, No. 14 Civ. 7169 (TPG); *Cordoba Capital v. The Republic of Argentina*, No. 14 Civ. 7164 (TPG); *Wilton Capital v. The Republic of Argentina*, No. 14 Civ. 7166 (TPG); *MCHA Holdings, LLC v. The Republic of Argentina*, Nos. 14 Civ. 7637 (TPG), 14 Civ. 10064 (TPG); *Andrarex Ltd. v. The Republic of Argentina*, No. 14 Civ. 9093 (TPG); *Claridae v. The Republic of Argentina*, No. 14 Civ. 10201 (TPG); *Arag-A Ltd. v. The Republic of Argentina*, No. 14 Civ. 9855 (TPG); *Attestor Master Value Fund LP v. The Republic of Argentina*, No. 14 Civ. 5849 (TPG); *Angulo v. The Republic of Argentina*, No. 15 Civ. 1470 (TPG); *Lambertini v. The Republic of Argentina*, No. 15 Civ. 1471 (TPG); *Honero Fund I, LLC v. The Republic of Argentina*, No. 15 Civ. 01553 (TPG); *Trinity Investments Ltd. v. The Republic of Argentina*, No. 15 Civ. 1588 (TPG); *Banca Arner S.A. v. The Republic of Argentina*, No. 15 Civ. 1508 (TPG).

Provision"), which "prohibits Argentina, as bond payor, from paying on other bonds without paying on the FAA Bonds." *NML Capital, Ltd. v. Republic of Argentina*, 699 F.3d 246, 259 (2d Cir. 2012), *cert. denied*, 134 S. Ct. 201 (2013) ("*NML I*"); Cohen Decl. Ex. 2. The Second Circuit affirmed the Orders, and Argentina's petition for certiorari to the Supreme Court was denied. *NML Capital, Ltd. v. Republic of Argentina*, 727 F.3d 230, 248 (2d Cir. 2013), *cert. denied*, 134 S. Ct. 2819 (2014) ("*NML II*").

Plaintiff is entitled to the same relief here. Argentina has continued the same course of illegal conduct (as described in Background section F, *infra*) during the two and a half years since the Amended February 23 Order was issued. As the Court found in the Pre-Judgment Cases: (1) Plaintiff has experienced irreparable harm as a result of Argentina's flagrant efforts to frustrate its contractually guaranteed status; (2) "[t]here is no adequate remedy at law for the Republic's ongoing violations of [the Equal Treatment Provision] because the Republic has made clear . . . its intention to defy any money judgment issued by this court;" (3) the balance of the equities tips decidedly in favor of the Plaintiff where Argentina "has engaged in an unprecedented, systematic scheme of making payments on other external indebtedness, after repudiating its payment obligations to [Plaintiff];" and (4) "[t]he public interest of enforcing contracts and upholding the rule of law will be served" by the issuance of an order of specific performance. Cohen Decl. Ex. 2 at 2-3 ¶¶ 1(b)-(d).

Therefore, as in the Pre-Judgment Cases, the Court should grant Plaintiff's motion for specific performance of the Equal Treatment Provision of the Pari Passu Clause.

## **BACKGROUND**

### **A.     Argentina Issues Bonds Containing The Pari Passu Clause.**

The bonds held by Plaintiff were issued by Argentina pursuant to the 1994 Fiscal Agency Agreement (the "FAA").  Cohen Decl. Ex. 1.  Investors' memories of the history of Argentina's past defaults were fresh when they purchased the FAA bonds.  *See EM Ltd. v. Republic of Argentina*, 473 F.3d 463, 466 n.2 (2d Cir. 2007) (cataloging Argentina's numerous defaults since the early nineteenth century).

The Pari Passu Clause offered reassurance to investors that Argentina would rank its obligations to FAA bondholders equally with other holders of its unsubordinated debt and the potential for an enhanced enforcement tool in the event of another Argentina default.  Because the Equal Treatment Provision requires that the "payment obligations" under the bonds will "rank at least equally" with other External Indebtedness,[3] the provision guarantees that the right to payment of a holder of a bond issued pursuant to the FAA may not be subordinated to that of a holder of External Indebtedness and that no holder of External Indebtedness can be given priority in terms of when or how it will be paid.  *See NML I,* 699 F.3d at 259.

## B.    Argentina Defaults On Its Sovereign Debt In 2001

In December 2001, Argentina announced a moratorium on the payment of outstanding public debt, including payment on bonds issued pursuant to the FAA, and in January 2002 enacted Law 25,561, which granted expansive powers to the executive to restructure that debt. Cohen Decl. Ex. 3 (Law 25,561); Cohen Decl. Ex. 4 (*Claren Corp. c/ E.N.*, C. 462, XLVII (Mar.

---

[3]    As relevant here, the FAA defines the term "External Indebtedness" to mean "obligations (other than the Securities [governed by the FAA]) for borrowed money or evidenced by securities, debentures, notes or other similar instruments denominated or payable . . . in a currency other than the lawful currency of the Republic . . . ."  Cohen Decl. Ex. 1 ¶ 11.  The Court has granted the motions for leave to amend filed in Plaintiff's  Pre-Judgment Cases, (*NML Capital, Ltd v. The Republic of Argentina*, Nos. 08 Civ. 6978 (TPG), 09 Civ. 1707 (TPG), 09 Civ. 1708 (TPG), 14 Civ. 8988 (TPG) (S.D.N.Y.).   *See* Case No. 08 Civ. 6978 (TPG), Dkt. 803.

6, 2014)).  "Each year since 2002, the Republic has passed legislation prohibiting payment on the FAA bonds."  *NML Capital, Ltd. v. Republic of Argentina,* 2015 WL 3542535, at *1.

C.    **Argentina Reduces The Rank Of Its Payment Obligations Under Plaintiff's Bonds in 2005.**

In 2005, Argentina that offered creditors the opportunity to exchange their defaulted bonds for newly issued bonds of substantially lower value, but that would be paid (the "2005 Exchange Offer").  *See Capital Ventures Int'l v. Republic of Argentina*, 443 F.3d 214, 217 (2d Cir. 2006).  The 2005 Exchange Offer required that participants accept a discount of approximately 71-75%.  Cohen Decl. Ex. 5 (8/26/14 Bloomberg).

Recognizing that these terms were not attractive, Argentina attempted to coerce creditors to accept the offer by making clear that it intended never to pay those bondholders who did not participate in the 2005 Exchange Offer.   The Prospectus for the 2005 Exchange Offer announced that Argentina "ha[d] no intention of resuming payment on any bonds eligible to participate in [the] exchange offer . . . that are not tendered or otherwise restructured as part of such transaction."  NML I, 699 F.3d at 252.  In February 2005, "the Republic enacted Law 26,017 (the "Lock Law"), prohibiting settlement with those who declined the exchange."  *NML Capital, Ltd. v. Republic of Argentina,* 2015 WL 3542535*, at *1* (*citing* Law 26,017 art. 4).

 As Argentine legislators explained, the Lock Law relegated the FAA Bonds to the "peripheral garbage circuit" "at the end of the line" of Argentina's obligations.  Cohen Decl. Ex. 6 (Meeting Tr. 2/9/20/05), at 9; Ex. 7, at 28; (Meeting Tr. 2/3/05).  In the end, holders of approximately 76% of the bonds on which Argentina had defaulted accepted the 2005 Exchange Offer.  Cohen Decl. Ex. 8, at xiv (2010 Exchange Prospectus).  Holders of the remaining 24% of the bonds rejected the unilateral offer.  Those non-tendered bonds, including those held by Plaintiff, were lowered in rank to non-paying status.  Argentina made all payments due under the

5

2005 Exchange Bonds until it attempted to make the payment due in June 30, 2014, and has

purported to make payments since then.  Cohen Decl. Ex. 9 (8/6/14 Order).

> **D.     Argentina Again Reduces The Rank of Its Payment Obligations Under Plaintiff's Bonds In 2010.**

In 2010, Argentina conducted another exchange offer in an effort to induce the remaining

holders of defaulted debt to accept the steeply discounted exchange (the "2010 Exchange

Offer").  As with the 2005 Exchange Offer, as part of this new exchange offer, Argentina told

bondholders that they could swap their defaulted bonds for newly issued bonds of significantly

lower value but on which Argentina would make full and timely payments.  Cohen Decl. Ex. 8;

Ex. 10 (Law 26,547).

> In order to conduct the 2010 Exchange, the Republic enacted Law 26,547, temporarily suspending the Lock Law.  *See* Law 26,547 art. 1.  Law 26,547 made it illegal for the Republic to offer to new exchangers equal or better terms than what was offered in 2005.  *Id*. art. 3.  Moreover, Law 26,547 prohibited the Executive from offering holdouts who had sued the Republic terms more favorable than those who did not sue the Republic.  *Id*. art. 5.

*NML Capital, Ltd. v. Republic of Argentina,* 2015 WL 3542535, at *1.  Thus, Law 26,547 not

only created a second set of preferred bondholders, but it also again legislatively prohibited

compliance with the Court's money judgments for Argentina's defaults—many of which had

been entered by the time the law went into effect.

Those who accepted the 2010 Exchange Offer began receiving timely semi-annual

interest payments after the exchange was completed in September 2010.  Cohen Decl. Ex. 11

(9/27/10 Notice).  But, consistent with its offering memorandum and Law 26,547, holders of

bonds who did not participate in either the 2005 or 2010 Exchange Offers, like Plaintiff,

continued to receive nothing.

**E.      In the Pre-Judgment Cases, the Court Orders Argentina To Remedy Its Violations Of The Equal Treatment Provision And Enjoins Any Further Violations.**

In October 2010, Plaintiff and others sought enforcement of the Equal Treatment Provision in the Pre-Judgment Cases.  On December 7, 2011, the Court held that Argentina violated the  Equal Treatment Provision when, among other things, it (i) lowered the rank of bonds issued under the FAA by enacting the Lock Law and Law 26,547, (ii) lowered the rank of bonds issued under the FAA by relegating those bonds to a non-paying class, and (iii) made payments due under the 2005 and 2010 Exchange Bonds, while refusing to satisfy its payment obligations to Plaintiff and others.  Cohen Decl. Ex. 12, at 4-5 ¶¶ 4-7 (12/7/11 Order).

On February 23, 2012, the Court further ruled that equitable relief to remedy Argentina's ongoing violations of the Equal Treatment Provision was appropriate, stating that "[Plaintiff] is irreparably harmed by and has no adequate remedy at law for the Republic's ongoing violations of [the Equal Treatment Provision], and that the equities and public interest strongly support issuance of equitable relief to prevent the Republic from further violating [the Equal Treatment Provision]."  Cohen Decl. Ex. 13, at 2 ¶ 1 (the "February 23 Order").  On October 26, 2012, the Second Circuit affirmed, but remanded the case to the Court to clarify who would be bound by the injunction and how the ratable payment formula would be applied.  *NML I*, 699 F.3d at 250-51.  With respect to "Argentina's argument that the balance of equities and the public interest tilt in its favor," the Second Circuit saw "no abuse of discretion in the district court's conclusion to the contrary.  The FAA bondholders contend with good reasons that Argentina's disregard of its legal obligations exceeds any affront to its sovereign powers resulting from the Injunctions."  *Id.* at 263.  With respect to the relief granted, the Second Circuit held that "[o]nce the district court determined that Argentina had breached the FAA and that injunctive relief was warranted, the

court had considerable latitude in fashioning the relief." *NML I*, 699 F.3d at 261.  Argentina's petition for certiorari to the Supreme Court was denied on October 7, 2013.  Cohen Decl. Ex. 14, *Republic of Argentina v. NML Capital, Ltd., et al.*, No. 12-1494 (S. Ct. Oct. 7, 2013).

On November 21, 2012, in accordance with the remand order, the Court amended the February 23 Order to specify the mechanism by which Argentina is required to perform its obligations under the Order (the "Amended February 23 Order").  Cohen Decl. Ex. 2.  Like the February 23 Order, the Amended February 23 Order holds that:

> a.  Absent equitable relief, [Plaintiff] would suffer irreparable harm because the Republic's payment obligations to [Plaintiff] would remain debased of their contractually-guaranteed status, and [Plaintiff] would never be restored to the position it was promised that it would hold relative to other creditors in the event of default.
>
> b.  There is no adequate remedy at law for the Republic's ongoing violations of [the Equal Treatment Provision] because the Republic has made clear— indeed, it has codified in Law 26,017 and Law 26,547—its intention to defy any money judgment issued by this court.

*Id*. at 2-3.  In addition, the Amended February 23 Order requires Argentina to make a "Ratable Payment" to the plaintiffs in the Pre-Judgment Cases whenever it pays any amount due under the Exchange Bonds, and enjoins Argentina from making any payment on the Exchange Bonds without making a Ratable Payment to those plaintiffs.  *Id*. at 4 ¶ 2.  The Court defined "Ratable Payment" as "an amount equal to the 'Payment Percentage' . . . multiplied by the total amount currently due to [Plaintiff] in respect of the bonds at issue in these cases (08 Civ. 6978, 09 Civ. 1707, and 09 Civ. 1708), including pre-judgment interest," and the "Payment Percentage" as "the fraction calculated by dividing the amount actually paid or which the Republic intends to pay under the terms of the Exchange Bonds by the total amount then due under the terms of the Exchange Bonds."  The Amended February 23 Order also expressly prohibits Argentina from taking steps to evade them.  *See Id*. at 7 ¶ 4.

8

On August 23, 2013, the Second Circuit affirmed the Amended February 23 Order, concluded that the relief granted was appropriate, but stayed enforcement of the injunction pending Argentina's petition for a writ of certiorari to the Supreme Court. *NML Capital, Ltd. v. Republic of Argentina*, 727 F.3d 230, 248 (2d Cir. 2013), *cert. denied*, 134 S. Ct. 2819 (2014) ("*NML II*"). On June 16, 2014, the Supreme Court denied Argentina's petition. Cohen Decl. Ex. 15, *Republic of Argentina v. NML Capital, Ltd., et al.*, No. 13-990 (S. Ct. June 16, 2014). The Second Circuit lifted the stay two days later. Cohen Decl. Ex. 16, *NML Capital, Ltd v. The Republic of Argentina*, No. 12-105(L) (2d Cir. June 18, 2014).

### F.   Argentina Continues, Brazenly And Repeatedly, To Violate The Equal Treatment Provision And The Court's Orders.

Although the Court's Orders could not be clearer in their requirements and prohibitions, Argentina has repeatedly defied them. Indeed, at oral argument before the Second Circuit on February 27, 2013, "counsel for Argentina told the panel that it 'would not voluntarily obey' the district court's injunctions, even if those injunctions were upheld . . . ." *NML II*, 727 F.3d at 238.

Sure enough, just days after the Second Circuit affirmed the Amended February 23 Order, *NML II*, 727 F.3d at 243-44, Argentina launched its campaign to violate and evade the Court's Orders. On August 26, 2013, Argentine President Cristina Fernández de Kirchner gave a televised address criticizing the rulings of the Court and the Second Circuit and announcing an evasion plan, pursuant to which Exchange Bondholders would be permitted to exchange their bonds for bonds payable in Argentina, in an attempt to place payments on those bonds outside of the Court's jurisdiction. Cohen Decl. Ex. 17 (Tr. of 8/26/13 Address). On September 11, 2013,

> the Republic passed Law 26,886, reopening the exchanges but again prohibiting those who wished to participate from receiving terms more favorable than had already been offered. *See* Law 26,886 art. 2. Moreover, the Republic continued to forbid settlement with the holdouts who had filed lawsuits unless those holdouts accepted the same terms given in 2005 and 2010. *Id*. art 4.

9

*NML Capital, Ltd. v. Republic of Argentina,* 2015 WL 3542535, at *3.  The Court responded

firmly and unambiguously:  in an Order dated October 3, 2013, the Court again ordered

Argentina not to take any steps to evade the Court's orders and held that the evasion scheme

announced by President Kirchner was illegal.  Cohen Decl. Ex. 18 (10/3/13 Order).

In a hollow attempt to procure Supreme Court review, Argentina seemingly changed its

tune and falsely represented that it would comply with the Amended February 23 Order if they

were not overturned.  Cohen Decl. Ex. 19, at 13 (5/27/14 Reply Br.); Ex. 20, at 5:5-10 (5/30/14

Tr.).  Yet, as soon as the Supreme Court denied certiorari on June 16, 2014, Cohen Decl. Ex. 15,

*Republic of Argentina v. NML Capital, Ltd., et al.*, No. 13-990 (S. Ct. June 16, 2014), Argentina

immediately set out once again to evade the Court's Orders.

> The day after the Supreme Court denied the Republic's petition for a writ of
> certiorari, the Republic announced a plan to pay on the Exchange Bonds without
> making a payment to the FAA bondholders.  *See* Statement of the Minister of the
> Economy at 4 (June 17, 2014) ("We are initiating steps to initiate a debt exchange
> that would permit us to pay in Argentina under Argentine law.").  Six days later,
> the Republic attempted to make a payment of $832 million on the Exchange
> Bonds without making a ratable payment to the [] Plaintiffs.  Cohen Decl. ¶ 29.  It
> has attempted to make two additional payments since then.  *Id.* ¶¶ 41-42.
>
> On September 11, 2014, the Republic enacted legislation with the stated purpose
> of paying on the Exchange Bonds without observing this court's judgments in the
> [Plaintiff's] Cases.  *See* Law 26,984 art. 2. The legislation purports to appoint an
> Argentine entity as trustee of the Exchange Bonds, *id.* art 3, and to establish a
> process for Exchange Bondholders to swap their Exchange Bonds for securities
> governed by French Law.  *Id.* art. 7.  Law 26,984 also declares this court's orders
> as "illegitimate and illegal obstruction" of the payment process on the Exchange
> Bonds.  *Id.* art 2.

*NML Capital, Ltd. v. Republic of Argentina,* 2015 WL 3542535, at *3.

In response to Argentina's course of illegal actions, on September 29, 2014 the Court

held Argentina in contempt of court.  Cohen Decl. Ex. 21 (9/29/14 Order, Amended 10/3/14).  In

defiance of the Court's contempt citation, *the very next day*, Argentina purported to make another illegal payment on the Exchange Bonds.  Cohen Decl. Ex. 22 (10/2/14 Bloomberg).

This illegal course of conduct is ongoing; indeed, Argentina reportedly attempted yet another Exchange Bond interest payment on March 31, 2015, Cohen Decl. Ex. 23 (3/31/15 Reuters), and has continued to take retaliatory action against third parties attempting to comply with the Court's orders.  On March 12, 2015, the Court issued an Opinion and Order holding that certain U.S. dollar denominated Argentine law Exchange Bonds were covered by the Amended February 23 Orders and refusing to permit Citibank or any downstream parties to process illegal payments that Argentina might make on those bonds (the "March 12 Order").  Cohen Decl. Ex. 24 (March 12 Order).  Following that Order, on March 20, 2015, a Stipulation and Order was entered whereby Citibank expressed its intent to withdraw from the securities custody business in Argentina and agreed to forgo its right to appeal from the March 12 Order or seek further stays of the injunctions, in exchange for the plaintiffs' consent to its processing any payment on the U.S. Dollar Argentine law bonds made by Argentina on March 31, 2015.  Cohen Decl. Ex. 25 (3/20/15 Stipulation and Order).  Economy Minister Axel Kicillof characterized the Stipulation and Order as "a scam," claimed that it was in violation of Argentine law, called the plaintiffs "vultures," and criticized the Court.  Cohen Decl. Ex. 26-27 (3/25/15 Associated Press; 8/4/15 Buenos Aires Herald).  Argentina has since retaliated against Citibank for entering into the Stipulation and Order by, among other things, suspending the CEO of Citibank Argentina, sending inspectors to its Argentine headquarters, and even suing Citibank in Argentine court. Cohen Decl. Exs. 26 (3/25/15 Associated Press), 28-29 (4/6/15 Associated Press; 4/8/15 Reuters).  Most recently, in June 2015, Argentina paid funds on the Exchange Bonds to Nación

Fideicomisos, SA, the Buenos Aires-based entity that purportedly replaced BNY as the trustee for some of the Exchange Bonds.  Cohen Decl. Ex. 30 (6/30/15 DiarioBae).

> **G.      The Court Finds That Argentina Has Violated The Pari Passu Clause In The Present Actions.**

In February 2015, Plaintiff, and other similarly situated FAA bondholders, filed motions for partial summary judgment based on Argentina's violations of the Pari Passu Clause with respect to additional FAA bonds.  On June 5, 2015, the Court granted these motions finding:

> [Argentina's] long course of conduct makes clear that the Republic no longer considers the FAA bonds "direct, unconditional, unsecured and unsubordinated obligations of the Republic."  FAA ¶ 1(c).  By issuing the Exchange Bonds and passing legislation prohibiting payment on the FAA bonds, the Republic has created a superior class of debt to that held by plaintiffs.  By making payments on this superior class of debt, the Republic has violated its promise to rank plaintiffs' bonds equally with its later-issued external indebtedness.  Thus, the court holds, in light of the Republic's entire and continuing course of conduct, that it has breached the pari passu clause of the FAA.

*NML Capital, Ltd. v. Republic of Argentina,* 2015 WL 3542535, at *9.  No specific remedy was granted at that time.

Plaintiff now seeks an order consistent with the Amended February 23 Order granting specific performance of the Equal Treatment Provision of the Pari Passu Clause that would require Argentina to make ratable payments to Plaintiff with respect to the bonds at issue in these actions any time that Argentina pays any amount due under terms of the bonds or other obligations issued pursuant to Argentina's 2005 or 2010 Exchange Offers, or any subsequent exchange of, or substitution for, the 2005 and 2010 Exchange Offers that may occur in the future.

<u>**ARGUMENT**</u>

**I.**

**PLAINTIFF IS ENTITLED TO SPECIFIC PERFORMANCE**

**OF THE EQUAL TREATMENT PROVISION**

"New York follows the general rule that specific performance is available where there is no adequate monetary remedy." *Guinness-Harp Corp. v. Jos. Schlitz Brewing Co.*, 613 F.2d 468, 473 (2d Cir. 1980). Accordingly, specific performance of a contractual provision is available where: (1) "there is no adequate monetary remedy" for the contractual breach; (2) the balance of the equities favors specific enforcement of the provision; and (3) the public interest favors the remedy. *See id.*; *Nemer Jeep-Eagle, Inc. v. Jeep-Eagle Sales Corp.*, 992 F.2d 430, 433 (2d Cir. 1993); *see also eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006) (stating similar test for permanent injunctive relief).[4] Each of these considerations decisively supports Plaintiff's request for specific performance.

**A.     Argentina's Violations Of The Equal Treatment Provision Are Causing Plaintiff Irreparable Injury For Which There Is No Adequate Remedy At Law.**

The Equal Treatment Provision provides bondholders with protection beyond the right to receive payments of principal and interest due under the bonds; they are entitled to those payments regardless of the Equal Treatment Provision. What the Equal Treatment Provision adds is the guarantee that if Argentina fails to fulfill its obligations to pay principal or interest under the FAA bonds, there can be no higher-ranked class of "External Indebtedness" as to which Argentina satisfies its obligations. In other words, the Equal Treatment Provision guarantees that the FAA bonds will be ranked and treated at least as well as Argentina's External Indebtedness.

---

[4]     In order to be eligible for specific performance of a contractual provision, a party also needs to show that "(1) a valid contract exists between the parties, (2) the plaintiff has substantially performed its part of the contract, and (3) plaintiff and defendant are each able to continue performing their parts of the agreement." *Nemer Jeep-Eagle*, 992 F.2d at 433. There is no dispute that these factors are satisfied here.

Argentina has unquestionably deprived Plaintiff of this important protection.  Argentina has failed to pay principal and interest on the bonds owned by Plaintiff while devoting substantial resources to paying other creditors.  Despite Plaintiff's extraordinary efforts to obtain the satisfaction of its money judgments, Argentina has shown continual disregard for their judgments.  The Court's issuance of money judgments has thus proven inadequate to remedy the harm suffered by Plaintiff.  *NML I*, 699 F.3d at 262 ("Even if damages are adequate in other respects, they will be inadequate if they cannot be collected by judgment and execution.") (quoting Restatement (Second) of Contracts § 360 cmt. d).  The harm to Plaintiff, absent an order of specific performance, would be irreparable, as Plaintiff has no other available means to enforce its rights under the Equal Treatment Provision.

Under these same circumstances, the Court previously found in the Pre-Judgment Cases that "[Plaintiff] is irreparably harmed by and has no adequate remedy at law for the Republic's ongoing violations of [the Equal Treatment Provision]" because "the Republic's payment obligations to [Plaintiff] would remain debased of their contractually-guaranteed status" and "the Republic has made clear—indeed, it has codified in Law 26,017 and Law 26,547—its intention to defy any money judgment issued by this court."  Cohen Decl. Ex. 2.  In affirming these Orders, the Second Circuit expressly recognized: "it is clear to us that monetary damages are an ineffective remedy for the harm plaintiffs have suffered as a result of Argentina's breach."  *NML I*, 699 F.3d at 262.

No different result is warranted here.  As in the Pre-Judgment Cases, Argentina's breach of the Equal Treatment Provision is causing Plaintiff irreparable injury for which there is no adequate remedy at law.

**B.      The Balance Of Equities Strongly Favors Specific Performance.**

The balance of the equities also strongly favors holding Argentina to its promise to abide by the Equal Treatment Provision.  Cohen Decl. Ex. 2 at 3 ¶ 1(c).  Absent equitable relief, Argentina's payment obligations to Plaintiff will remain "debased of their contractually-guaranteed [equal] status", as Argentina continues its deliberate efforts to make payments to on External Indebtedness while not paying Plaintiff.  Doing "nothing" to remedy this violation, while leaving Plaintiff with "mere scraps of paper" in the form of duplicative, unpaid judgments (*EM Ltd.*, 720 F. Supp. 2d 273, 301 (S.D.N.Y. 2010), *vacated on other grounds*, 652 F.3d 172 (2d Cir. 2011)), is the very definition of inequity. Cohen Decl. Ex. 31 at 28:2 (September 28, 2011 Transcript).

Indeed, on a record that did not reflect Argentina's recent evasive tactics, the Court granted specific performance under the Equal Treatment Provision in its Amended February 23 Order, finding that the balance of equities "strongly supports" an award of specific performance. As the Court then stated:

> The balance of the equities strongly supports this Order in light of the clear text of [the Equal Treatment Provision] and the Republic's repeated failures to make required payments to [Plaintiff].  In the absence of the equitable relief provided by this Order, the Republic will continue to violate [the Equal Treatment Provision] with impunity, thus subjecting [Plaintiff] to harm.  On the other hand, the Order requires of the Republic only that which it promised [Plaintiff] and similarly situated creditors to induce those creditors to purchase the Republic's bonds.

Cohen Decl. Ex. 2 at 3 ¶ 1(c).

> The Court went on to stress:

> Indeed, equitable relief is particularly appropriate here, given that the Republic has engaged in an unprecedented, systematic scheme of making payments on other external indebtedness, after repudiating its payment obligations to [Plaintiff], in direct violation of its contractual commitment set forth in [the Equal Treatment Provision].

*Id*.  Argentina has done nothing in recent years to alleviate the Court's concerns.  Instead, it has escalated its systematic scheme of attempting to make payments on the Exchange Bonds while

refusing to make any payment on the FAA bonds.  Argentina's misconduct thus hardly warrants any equitable accommodation.

Nor does the relief sought here implicate the rights of the Exchange Bondholders or other third parties.  The proposed Order (like the Amended February 23 Order) is directed exclusively at Argentina, and, in accordance with Rule 65(d), properly enjoins only Argentina, its "officers, agents, servants, employees, and attorneys," and other persons in active concert or participation with Argentina's violation of the Injunction.  Fed. R. Civ. P. 65(d)(2)(B).  And, the proposed order (again, like the Amended February 23 Order), does not affect the Exchange Bondholders' contractual right to be paid by Argentina, and Argentina's threat not to pay the Exchange Bondholders "does not make an otherwise lawful injunction 'inequitable.'"  *See NML II*, 727 F.3d at 242.[5]

Thus, once again, the balance of equities is overwhelmingly in favor of granting Plaintiff's motion for equitable relief.

## C.    The Public Interest In Enforcing Contracts And Maintaining Confidence In Debt Markets Supports The Grant Of Injunctive Relief.

Granting Plaintiff's request for specific performance also will serve the vital public interests of enforcing contracts and upholding the rule of law.  It is well settled that the "[e]nforcement of contractual duties is in the public interest."  *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 551 (6th Cir. 2007).  It is in the public interest that creditors know that they can rely upon U.S. courts to enforce promises made by debtors that all of their payment obligations will be treated equally.  This is particularly true with

---

[5]    Moreover, consistent with the Amended February 23 Order, the proposed order explicitly provides that "intermediary banks," as defined by Section 4A of New York's Uniform Commercial Code, N.Y. U.C.C. §§ 4A-104(b), 4A-503, shall not have any obligations under the proposed order merely for processing payments in their role as intermediary banks.

respect to creditors of foreign sovereigns that consent to the jurisdiction of U.S. courts, since bankruptcy laws have no application to sovereign debtors and creditors of sovereigns need to know they can rely on the enforcement of promises like the Pari Passu Clause in the forum the debtor selected.  *See In re Bd. of Dirs. of Multicanal S.A.*, 307 B.R. 384, 392–93 (Bankr. S.D.N.Y. 2004) (finding bankruptcy proceedings unavailable in the sovereign debt context). Creditors who enter this trillion dollar sovereign-debt market must have confidence that their contractual rights will be enforced.  *See Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 188 (1994) (noting the importance of adopting rules that foster "certainty and predictability" in the credit markets (internal quotation marks omitted)).

Thus, in affirming the Amended February 23 Order, the Second Circuit held that "the interest—one widely shared in the financial community—in maintaining New York's status as one of the foremost commercial centers is advanced by requiring debtors, including foreign debtors, to pay their debts."  *NML II*, 727 F.3d at 248.

Nor will Plaintiff's requested relief undermine the purported public interest in allowing sovereign debt restructurings in the future.  *See id.* at 247-48.  Argentina's scheme to lower the rank of (indeed, legally eliminate) its payment obligations to some creditors, while making full payments to other creditors for ten years—after drafting and agreeing to the Equal Treatment Provision—is unique in the annals of sovereign default.  The proper equitable remedy in a case involving a different sovereign debtor, different bonds, different contractual provisions, and different facts may well be different.  In any event, many sovereign nations can, and commonly have, chosen to include provisions, such as collective action clauses ("CACs") and exit consents, that reduce the risk of holdouts in the event of a restructuring.  Cohen Decl. Ex. 32 (4/10/13 Moody's); Cohen Decl. Ex. 33 (3/24/15 *El Cronista*).  The inclusion of a CAC puts creditors on

17

notice that, if they choose to purchase sovereign bonds, then they do so with the understanding that a majority of other creditors have the power to agree to a restructuring that would bind all creditors to the restructuring's terms.  But Argentina did not include a CAC in the FAA.  Instead, it promised that its payment obligations to FAA bondholders would rank at least equally with its obligations to a defined set of unsecured external creditors.  In such circumstances, equity and the public interest require Argentina to uphold its contractual obligations.

In the Pre-Judgment Cases, the Court found that the foregoing interests supported specific performance of the Pari Passu Clause:

> The public interest of enforcing contracts and upholding the rule of law will be served by the issuance of this Order, particularly here, where creditors of the Republic have no recourse to bankruptcy regimes to protect their interests and must rely upon courts to enforce contractual promises.  No less than any other entity entering into a commercial transaction, there is a strong public interest in holding the Republic to its contractual obligations.

Cohen Decl. Ex. 2 at 3-4 ¶ 1(d).  This same reasoning applies fully in the present case.

## D.    Plaintiff Is Entitled To Ratable Payment.

To effectuate Argentina's performance under the Equal Treatment Provision, the Court should enter an Order holding that if and when Argentina makes payments on the Exchange Bonds, Argentina must make ratable payments to Plaintiff.  In the Amended February 23 Order, the Court held that the "Ratable Payment" is the "Payment Percentage" multiplied by the total amount currently due to Plaintiff in respect of the bonds at issue, and that the "Payment Percentage" is the amount paid, or that Argentina intends to pay, to Exchange Bondholders, divided by the total amount due to them.  Cohen Decl. Ex. 2 at 4.  In other words, if Argentina pays 100% of the amount due on the Exchange Bonds at the time of payment, it will have to pay 100% of the amount due to Plaintiff under its FAA Bonds.  *Id.*

This same ratable payment formula is appropriate here.  Plaintiff's Proposed Order, just like the Amended February 23 Order, "does no more than hold Argentina to its contractual obligation of equal treatment."  *See NML II*, 727 F.3d at 241.

## CONCLUSION

For the foregoing reasons, the Court should specifically enforce the Equal Treatment Provision by entering the Proposed Order, which is attached to the Notice of Motion, requiring Argentina to pay Plaintiff ratably if and when it makes payment on the Exchange Bonds.

Respectfully submitted,

DECHERT LLP

August 14, 2015

By:    /s/ Robert A. Cohen   
Robert A. Cohen
robert.cohen@dechert.com
Dennis H. Hranitzky
dennis.hranitzky@dechert.com
Mariel R. Bronen
mariel.bronen@dechert.com
1095 Avenue of the Americas
New York, NY 10036
(212) 698-3500

*Attorneys for Plaintiff NML Capital, Ltd.*

19