# EXHIBIT 4

>C. 462. XLVII
>R.O. [Resolution and Order]
>Claren Corporation vs. the Nation — art. 517/518, CPCC [Code of Civil and Commercial Procedure] *Exequatur* on various matters.

[signature]
***Supreme Court of Justice of the Nation***

Buenos Aires, *March 6, 2014*.

Having reviewed the court proceedings in "Claren Corporation v. the Nation –— arts. 517–518 of the CCPC, *exequatur* on various matters."

Whereas:

1) The plaintiff filed these proceedings for the purpose of obtaining the *exequatur* of the judgment issued on December 12, 2007, by Judge Thomas Griesa of the Southern District of New York, United States of America, in which the Republic of Argentina was ordered to pay the plaintiff corporation the sum of US$ 7,507,089 in capital and interest in arrears on the External Global Bonds it holds as owner for the period 1997–2017.

2) The judge of the court of first instance rejected the claim (see ff. 195–199). In reaching that decision, he stated that the case heard in the District of New York in which the aforementioned judgment was issued ignored the sovereign immunity of the Argentine State which, in his view, implies non-compliance with the provisions established in paragraph 4 of art. 517 of the Code of Civil and Commercial Procedure of the Nation which prohibits any judgment from affecting the principles of public order under Argentine law.

3) Chamber V of the National Court of Appeals Pertaining to Federal Administrative Litigation rejected the appeal filed by Claren Corporation and confirmed the decision of the previous court (ff. 330–342). In essence, a majority of judges considered that successive

laws ordering the deferral of payment of the bonds constitute part of public order under Argentine law and the case in question therefore fails to satisfy the aforementioned requirement in art. 517, para. 4 of the Code of Civil and Commercial Procedure of the Nation.

    4) Countering that ruling, and with relevance to the present case, the plaintiff decided to file an ordinary appeal (ff. 345–345v) which was granted; see ff. 387–387v. The list of grievances is contained on ff. 393–415 and the Nation's reply is contained on ff. 418–433. The aforementioned appeal is formally legal since it has been used in an action to which the Nation is a party and the ultimate amount under debate exceeds the legal minimum established in art. 24, para. 6, section a) of executive order 1285/58, pursuant to Law 21,708 and resolution 1360/91 of this Court.

    5) While Law 24,946 makes no provision requiring the Attorney General of the Nation to provide an opinion on cases that are heard and adjudicated by this Court via the aforementioned ordinary appeal, the Court granted a hearing in the present proceeding bearing in mind the nature of the matters debated (see resolution of February 7, 2012). Folios 435–445 contain the opinion of the Attorney General in which she highlights "the institutional relevance of the matters being debated" (f. 438 *in fine*).

    6) The aforementioned opinion indicates that art. 517 of the Code of Civil and Commercial Procedure of the Nation makes recognition of the enforceability of a foreign judgment subject

>C. 462. XLVII
>R.O.
>Claren Corporation vs. the Nation — art. 517/518, CPCC
>*Exequatur* on various matters.

[signature]
***Supreme Court of Justice of the Nation***

to it "not affecting the principles of public order under Argentine law," and it highlights the fact that said control is provided in an overwhelming number of international and bilateral agreements signed by our country, in accordance with the vast majority of domestic legislation that makes the recognition and execution of foreign decisions subject to the condition that they do not affect public order or the fundamental public policies of the respective countries. On this basis, she correctly stated that acceptance of an extension of jurisdiction by the Nation does not prevent acknowledgment that the enforceability of a foreign judgment in the Argentine Republic is subject to the safeguarding of domestic public order under the terms of para. 4 of the aforementioned art. 517 which, as has been seen, reflects a widely accepted principle in international treaties and comparative law.

In addition, it was specified that the aforementioned control of the possible effect on the principles of public order must be carried out in the *exequatur* proceeding, without it being possible for this to be relegated to subsequent execution of the foreign judgment. In this respect, the opinion states that the regulations governing the applicable procedure require evaluation of the possibility of that effect serving as a prior condition for recognizing the enforceability of the same and thereby depriving the process of executing the judgments of any subsequent possibility for settling or reviewing this matter.

This appreciation is adequately founded in the procedural regulations cited therein (art. 517, 518 final paragraph and 519 of the Code of Civil and Commercial Procedure of the Nation), and it is

sufficient to dismiss the plaintiff's argument insofar as it proposes that it would only be relevant to evaluate the possible effect on the principles of public order in the event of a cause of action to effectively execute the judgment of the New York judge, which the plaintiff is trying to distinguish from acknowledgment of enforceability of that ruling.

      7) This being the case, it was established in the aforementioned opinion that the bonds owned by the plaintiff (External Global Bonds for 1997–2017) are included in the measures implemented by the government as of 2001 as a consequence of the impossibility of making payment to service the public debt under the agreed conditions and to address the effects of an extremely serious crisis which unfolded during the final days of that year, the extent and depth of which was highlighted in various opinions from the Attorney General's Office and in well-known precedents issued by this Court (Judgments 327:4495; 328:690; 329:5913 and 330:855). A detailed review of those measures was subsequently carried out following formal acknowledgment of the default on December 24, 2001, including a congressional declaration of emergency regarding the social, economic, administrative, financial and foreign exchange situation (Law 25,561), instructions to the Executive Branch to initiate efforts to restructure public debt and bring debt servicing in line with the Nation's repayment ability (Law 25,565), deferring the servicing of the debt provided in various regulations, including successive budgetary laws, together with the implementation of two securities exchange operations, the payment of which

4

C. 462. XLVII  
R.O.  
Claren Corporation vs. the Nation — art. 517/518, CPCC  
*Exequatur* on various matters.

*Supreme Court of Justice of the Nation*

had been deferred: the first in 2004 and the second in 2010 (see Decrees 1735/04 and 563/10 and Laws 26,017 and 26,547). In so doing, they were able to obtain agreement from creditors representing in excess of 90% of the debt.

8) In this context and based on the foundations of the case shared by and incorporated into this Court, the Attorney General's aforementioned opinion concludes that the *exequatur* requested by Claren Corporation does not satisfy the requirement provided in para. 4 of art. 517 of the National Code of Civil and Commercial Procedure, since to admit the plaintiff's cause of action would imply acceptance of the latter's ability to circumvent the public debt restructuring process provided for by the Argentine State via emergency regulations issued by competent authorities in accordance with the National Constitution by filing a separate action before a foreign court.

9) In this regard, it is worth emphasizing that the argument developed in the aforementioned opinion is supported by and in accordance with the jurisprudence of this Court to the extent that it points out that adequate appreciation of the "Galli" precedent (Judgments: 328:690) leads to the conclusion that in said case the Court "did not restrict itself to deciding on the payment currency modification provided for in decree 471/02 with respect to bonds governed by Argentine legislation, but established a wide-ranging doctrine, supported by one of the principles of the law of nations, the existence of which has already been confirmed by the Court in the "Bruniccardi" precedent" (Judgments: 319:2886)

regarding the power of the Nation to limit, suspend or restructure debt payments and adjust the servicing of debt to the actual capabilities of public finances, and to provide essential services and basic government functions that cannot be ignored in periods of severe economic crisis (see Rabolini, Germán Adolfo vs. the Nation, Ministry of Finance," Judgments: 333:855, among others).

From that perspective, it can therefore be stated that the rules issued by constitutionally empowered bodies, and through which the Nation exercises such powers, are part of the public order under Argentine law. The *exequator* cannot therefore be granted to the judgment by a foreign court which clearly runs counter to these provisions.

For this reason, and in accordance with the opinion of the Attorney General, the appealed judgment is upheld. Costs are to be paid by the losing party. Let it be notified and returned.

[signature]
[stamp:]
ELENA I. HIGHTON de NOLASCO

[signature]
[stamp:]
JUAN CARLOS MAQUEDA

[signature]
[stamp:]
E. RAÚL ZAFFARONI

[signature]
[stamp:]
CARMEN M. ARGIBAY

C. 462. XLVII
R.O.
Claren Corporation vs. the Nation — art. 517/518, CPCC *Exequatur* on various matters.

*Supreme Court of Justice of the Nation*

Ordinary appeal filed by **Claren Corporation**, represented by **Dr. Carlos Liendo, in his capacity as legal representative**, with legal counsel from **Dr. Horacio Tomás Liendo**.

Transfer answered by the **Nation, Ministry of the Economy and Finance**, represented by **Dr. Sergio Acevedo.**

Court of origin: **National Court of Appeals Pertaining to Federal Administrative Litigation, Chamber V.**

Previously intervening courts: **Juzgado Nacional de Primera Instancia en lo Contencioso Administrativo Federal [National Court of First Instance Pertaining to Federal Administrative Litigation], no. 9.**

7

[blank]

To access the opinion of the Attorney General's Office visit:
http://www.mpf.gov.ar/Dictamenes/2013/AGilsCarbo/abril/Claren_Corporation_C_462_L_XLVII.pdf



January 29, 2015

I hereby certify that I am a professional translator, that I abide by the Code of Ethics and Professional Practice of the *American Translators Association*, that I am fluent in Spanish and English, that I have employed a team of professional translators, and that we have translated, to the best of our knowledge, the attached document entitled

**Exequatur**

From Spanish into English

Signed,

Cathleen Waters

Member, New World Medium LLC

Translator of French, Spanish, Italian, Portuguese and English

American Translator's Association Membership no. 257918

C. 462. XLVII.
R.O.
Claren Corporation c/ E.N - arts. 517/518 CPCC exequátur s/ varios.

*Corte Suprema de Justicia de la Nación*

Buenos Aires, 6 de marzo de 2014.

Vistos los autos: "Claren Corporation c/ E.N - arts. 517/518 CPCC exequátur s/ varios".

Considerando:

1°) Que la actora promovió las presentes actuaciones a fin de obtener el exequátur de la sentencia dictada el 12 de diciembre de 2007 por el juez Thomas Griesa del Distrito Sur de Nueva York, Estados Unidos de América, por la cual se condenó a la República Argentina a pagar a la sociedad actora la suma de U$S 7.507.089 en concepto de capital e intereses vencidos de los títulos Bonos Externos Globales 1997/2017 de los que aquélla es titular.

2°) Que el juez de primera instancia rechazó la demanda (conf. fs. 195/199). Para así decidir, entendió que el proceso llevado a cabo en el Distrito de Nueva York, en el que se dictó la aludida sentencia, desconoció el principio de inmunidad soberana del Estado Argentino, lo cual, en su criterio, implica el incumplimiento del recaudo establecido por el inciso 4 del art. 517 del Código Procesal Civil y Comercial de la Nación, que requiere que la sentencia no afecte los principios de orden público del derecho argentino.

3°) Que la Sala V de la Cámara Nacional de Apelaciones en lo Contencioso Administrativo Federal rechazó el recurso de apelación deducido por Claren Corporation y confirmó lo decidido en la anterior instancia (fs. 330/342). En lo sustancial, los jueces que conformaron la mayoría, consideraron que las su-

cesivas leyes que ordenaron el diferimiento del pago de los títulos de la deuda forman parte del orden público del derecho argentino y, por ello, en el caso en examen no se satisface el mencionado recaudo del art. 517, inciso 4°, del Código Procesal Civil y Comercial de la Nación.

4°) Que contra tal pronunciamiento la actora dedujo —en lo que al caso interesa— recurso ordinario de apelación (fs. 345/345 vta.), que fue concedido a fs. 387/387 vta. El memorial de agravios obra a fs. 393/415 y su contestación por el Estado Nacional a fs. 418/433. El mencionado recurso es formalmente procedente pues ha sido deducido en una causa en la que la Nación reviste el carácter de parte y el monto debatido en último término supera el mínimo legal establecido por el art. 24, inc. 6°, apartado a, del decreto - ley 1285/58, según la ley 21.708 y la resolución 1360/91 de esta Corte.

5°) Que si bien la ley 24.946 no prevé que la Procuración General de la Nación deba dictaminar en las causas que llegan a conocimiento y decisión de esta Corte por la vía del referido recurso ordinario, el Tribunal le confirió vista en las presentes actuaciones teniendo en consideración la índole de las cuestiones debatidas (conf. resolución del 7 de febrero de 2012). A fs. 435/445 obra el dictamen de la señora Procuradora General en el que se puso de relieve "la relevancia institucional de las cuestiones en debate" (fs. 438 in fine).

6°) Que el aludido dictamen señala que el art. 517 del Código Procesal Civil y Comercial de la Nación sujeta el reconocimiento de la fuerza ejecutoria de una sentencia extranjera

```
                                    C. 462. XLVII.
                                    R.O.
                                    Claren Corporation c/ E.N - arts. 517/518 CPCC
                                    exequátur s/ varios.
```

*Corte Suprema de Justicia de la Nación*

a que ésta "no afecte los principios de orden público del derecho argentino"; y destaca que tal control está previsto en una abrumadora cantidad de convenios bilaterales e internacionales suscriptos por nuestro país, en concordancia con la gran mayoría de las legislaciones internas que supeditan el reconocimiento y la ejecución de las decisiones foráneas a la condición de que no afecten el orden público o las políticas públicas fundamentales de los respectivos países. Sobre esa base afirmó, con acierto, que la aceptación de la prórroga de jurisdicción por parte del Estado Nacional no impide que el reconocimiento de la fuerza ejecutoria de la sentencia foránea en la República Argentina esté condicionado al debido resguardo del orden público local en los términos del inciso 4 del citado art. 517 que, como se vio, recibe un principio ampliamente aceptado en los tratados internacionales y en el derecho comparado.

Asimismo puntualizó que el referido control de la posible afectación de los principios de orden público debe hacerse en el procedimiento de exequátur, sin que pueda ser relegado a la ulterior ejecución de la sentencia extranjera. Al respecto el dictamen afirma que las normas que regulan el procedimiento aplicable obligan a evaluar la posibilidad de esa afectación como condición previa al reconocimiento de fuerza ejecutoria y privan al proceso de ejecución de sentencias de toda posibilidad ulterior de decidir o revisar esa cuestión.

Tal apreciación encuentra adecuado fundamento en las normas procesales allí citadas (arts. 517, 518 —último párrafo— y 519 del Código Procesal Civil y Comercial de la Nación), y es

bastante para desestimar el argumento de la actora en cuanto postula que sOlo ante la pretensión de ejecutar efectivamente la sentencia del juez de Nueva York —que el accionante intenta distinguir del reconocimiento de la fuerza ejecutoria de ese fallo— sería pertinente evaluar la posible afectación de los principios de orden público.

7°) Que, sentado lo que antecede, en el referido dictamen, se dejó establecido que los títulos de propiedad de la accionante (Bonos Externos Globales o *Global Bonds* 1997 - 2017) están comprendidos en las medidas dispuestas por el gobierno nacional a partir del año 2001 como consecuencia de la imposibilidad de afrontar el pago de los servicios de la deuda pública en las condiciones pactadas y a los efectos de conjurar los efectos de la gravísima crisis que hizo eclosión en los últimos días de aquel año, cuya extensión y profundidad fue puesta de relieve en diversos dictámenes de la Procuración General y en conocidos precedentes de esta Corte (Fallos: 327:4495; 328:690; 329:5913 y 330:855). Luego se efectuó una detallada reseña de tales medidas que, tras el reconocimiento formal del default el 24 de diciembre de 2001, incluyeron la declaración por parte del Congreso de la emergencia en materia social, económica, administrativa, financiera y cambiaria (ley 25.561), instrucciones dirigidas al Poder Ejecutivo para que iniciara las gestiones tendientes a reestructurar la deuda pública y ajustar sus servicios a la capacidad de pago del Gobierno Nacional (ley 25.565), el diferimiento de los servicios de esa deuda dispuesto por numerosas normas —entre ellas, las sucesivas leyes de presupuesto— y la instrumentación de dos operaciones de canje de los títulos cuyo pago

C. 462. XLVII.
R.O.
Claren Corporation c/ E.N - arts. 517/518 CPCC exequátur s/ varios.

*Corte Suprema de Justicia de la Nación*

había sido diferido: la primera en el año 2004 y la segunda en el año 2010 (confr. decretos 1735/04 y 563/10 y leyes 26.017 y 26.547), que lograron la adhesión de los acreedores por un monto superior al 90% de la deuda.

8°) Que en ese contexto, y sobre la base de fundamentos que esta Corte comparte y hace suyos, en el referido dictamen de la señora Procuradora General se llega a la conclusión de que el exequátur pretendido por Claren Corporation no satisface el requisito previsto en el inciso 4 del art. 517 del Código Procesal Civil y Comercial de la Nación, en tanto admitir la pretensión del accionante implicaría convalidar que éste, a través de una acción individual promovida ante un tribunal extranjero, eluda el proceso de reestructuración de la deuda pública dispuesto por el Estado Argentino mediante las normas de emergencia dictadas por las autoridades competentes de acuerdo con lo establecido por la Constitución Nacional.

9°) Que al respecto, cabe poner de relieve que el desarrollo que se efectúa en el aludido dictamen tiene sustento y es concorde con la jurisprudencia de esta Corte, en cuanto señaló que una adecuada inteligencia del precedente "Galli" (Fallos: 328:690) permite afirmar que en esa causa el Tribunal "no se limitó a resolver lo relativo a la modificación de la moneda de pago —dispuesta por el decreto 471/02 respecto de los bonos regidos por la legislación argentina— sino que estableció una doctrina de amplios alcances —con respaldo en un principio de derecho de gentes cuya existencia ya había sido afirmada por el Tribunal en el precedente "Bruniccardi" (Fallos: 319:2886)— en

-5-

lo concerniente a las facultades del Estado Nacional respecto de la posibilidad de que en épocas de graves crisis económicas limite, suspenda o reestructure los pagos de la deuda para adecuar sus servicios a las reales posibilidades de las finanzas públicas, a la prestación de los servicios esenciales y al cumplimiento de las funciones estatales básicas que no pueden ser desatendidas (conf. "Rabolini, Germán Adolfo c/ Estado Nacional M° de Economía", Fallos: 333:855, entre otros).

En efecto, desde tal perspectiva, cabe afirmar que las normas dictadas por los órganos constitucionalmente habilitados, y mediante las cuales el Estado Nacional ejerce tales facultades, integran el orden público del derecho argentino, por lo cual no puede concederse el exequátur a la sentencia de un tribunal extranjero que es claramente opuesta a esas disposiciones.

Por ello, y lo concordemente dictaminado por la señora Procuradora General, se confirma la sentencia apelada. Con costas de esta instancia a la vencida (art. 68 del Código Procesal Civil y Comercial de la Nación). Notifíquese y devuélvase.

ELENA I. HIGHTON de NOLASCO

JUAN CARLOS MAQUEDA

E. RAUL ZAFFARONI

CARMEN M. ARGIBAY

-6-

C. 462. XLVII.
R.O.
Claren Corporation c/ E.N - arts. 517/518 CPCC exequátur s/ varios.

*Corte Suprema de Justicia de la Nación*

Recurso ordinario interpuesto por **Claren Corporation**, representada por el **Dr. Gustavo Carlos Liendo, en su condición de apoderado judicial**, con el patrocinio letrado del **Dr. Horacio Tomás Liendo**.

Traslado contestado por el **Estado Nacional-Ministerio de Economía y Finanzas**, representado por el **Dr. Sergio Acevedo**.

Tribunal de origen: **Cámara Nacional de Apelaciones en lo Contencioso Administrativo Federal, Sala V**.

Tribunales que intervinieron con anterioridad: **Juzgado Nacional de Primera Instancia en lo Contencioso Administrativo Federal n° 9**.

Para acceder al dictamen de la Procuración General de la Nación ingrese a:

http://www.mpf.gov.ar/Dictamenes/2013/AGilsCarbo/abril/Claren_Corporation_C_462_L_XLVII.pdf