UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------------- X
NML CAPITAL, LTD.,                                    :
                                                      :
                          Plaintiff,                  :
                                                      :
              - against -                             :     14 Civ. 8601 (TPG)
                                                      :
THE REPUBLIC OF ARGENTINA,                            :
                                                      :
                          Defendant.                  :
----------------------------------------------------------------------- X
FFI FUND, LTD., and FYI, LTD.,                        :
                                                      :
                          Plaintiffs,                 :
                                                      :
              - against -                             :     14 Civ. 8630 (TPG)
                                                      :
THE REPUBLIC OF ARGENTINA,                            :
                                                      :
                          Defendant.                  :
----------------------------------------------------------------------- X
EM LTD.,                                              :
                                                      :
                          Plaintiff,                  :
                                                      :
              - against -                             :     14 Civ. 8303 (TPG)
                                                      :
THE REPUBLIC OF ARGENTINA,                            :
                                                      :
                          Defendant.                  :
----------------------------------------------------------------------X  *(captions continue on following page)*


**MEMORANDUM OF LAW OF THE REPUBLIC OF ARGENTINA IN OPPOSITION
TO MOTIONS IN 45 ACTIONS SEEKING SPECIFIC PERFORMANCE**

```
------------------------------------------------------------X
PEREZ, et al.,                              :
                                            :
                    Plaintiffs,             :
                                            :
          - against -                       :   14 Civ. 8242 (TPG)
                                            :
THE REPUBLIC OF ARGENTINA,                  :
                                            :
                    Defendant.              :
                                            :
------------------------------------------------------------X
NML CAPITAL, LTD.,                          :
                                            :
                    Plaintiff,              :
                                            :
          - against -                       :   14 Civ. 8988 (TPG)
                                            :
THE REPUBLIC OF ARGENTINA,                  :
                                            :
                    Defendant.              :
------------------------------------------------------------X
AURELIUS CAPITAL PARTNERS, LP, et al.,      :
                                            :
                    Plaintiffs,             :
                                            :
          - against -                       :   14 Civ. 8946 (TPG)
                                            :
THE REPUBLIC OF ARGENTINA,                  :
                                            :
                    Defendant.              :
------------------------------------------------------------X
BLUE ANGEL CAPITAL I LLC,                   :
                                            :
                    Plaintiff,              :
                                            :
          - against -                       :   14 Civ. 8947 (TPG)
                                            :
THE REPUBLIC OF ARGENTINA,                  :
                                            :
                    Defendant.              :
------------------------------------------------------------X
```

```
-------------------------------------------------------------------X
LIGHTWATER CORP. LTD.,                       :
                                             :
                          Plaintiff,         :
                                             :
                  - against -                :    14 Civ. 4092 (TPG)
                                             :
THE REPUBLIC OF ARGENTINA,                   :
                                             :
                          Defendant.         :
-------------------------------------------------------------------X
OLD CASTLE HOLDINGS, LTD.,                   :
                                             :
                          Plaintiff,         :
                                             :
                  - against -                :    14 Civ. 4091 (TPG)
                                             :
THE REPUBLIC OF ARGENTINA,                   :
                                             :
                          Defendant.         :
-------------------------------------------------------------------X
SETTIN,                                      :
                                             :
                          Plaintiff,         :
                                             :
                  - against -                :    14 Civ. 8739 (TPG)
                                             :
THE REPUBLIC OF ARGENTINA,                   :
                                             :
                          Defendant.         :
-------------------------------------------------------------------X
CAPITAL VENTURES INTERNATIONAL,              :
                                             :
                          Plaintiff,         :
                                             :
                  - against -                :    14 Civ. 7258 (TPG)
                                             :
THE REPUBLIC OF ARGENTINA,                   :
                                             :
                          Defendant.         :
-------------------------------------------------------------------X
```

```
-----------------------------------------------------------------X
ADAMI, et al.,                                   :
                                                 :
                        Plaintiffs,              :
                                                 :
                  - against -                    :    14 Civ. 7739 (TPG)
                                                 :
THE REPUBLIC OF ARGENTINA,                       :
                                                 :
                        Defendant.               :
-----------------------------------------------------------------X
CAPITAL MARKETS FINANCIAL SERVICES, et al.,      :
                                                 :
                        Plaintiffs,              :
                                                 :
                  - against -                    :    15 Civ. 0710 (TPG)
                                                 :
THE REPUBLIC OF ARGENTINA,                       :
                                                 :
                        Defendant.               :
-----------------------------------------------------------------X
FOGLIA, et al.,                                  :
                                                 :
                        Plaintiffs,              :
                                                 :
                  - against -                    :    14 Civ. 8243 (TPG)
                                                 :
THE REPUBLIC OF ARGENTINA,                       :
                                                 :
                        Defendant.               :
-----------------------------------------------------------------X
PONS, et al.,                                    :
                                                 :
                        Plaintiffs,              :
                                                 :
                  - against -                    :    13 Civ. 8887 (TPG)
                                                 :
THE REPUBLIC OF ARGENTINA,                       :
                                                 :
                        Defendant.               :
-----------------------------------------------------------------X
```

```
-------------------------------------------------------------------X
GUIBELALDE, et al.,                          :
                                             :
                         Plaintiffs,         :
                                             :
                 - against -                 :   11 Civ. 4908 (TPG)
                                             :
THE REPUBLIC OF ARGENTINA,                   :
                                             :
                         Defendant.          :
-------------------------------------------------------------------X
DORRA, et al.,                               :
                                             :
                         Plaintiffs,         :
                                             :
                 - against -                 :   14 Civ. 10141 (TPG)
                                             :
THE REPUBLIC OF ARGENTINA,                   :
                                             :
                         Defendant.          :
-------------------------------------------------------------------X
BELOQUI, et al.,                             :
                                             :
                         Plaintiffs,         :
                                             :
                 - against -                 :   14 Civ. 5963 (TPG)
                                             :
THE REPUBLIC OF ARGENTINA,                   :
                                             :
                         Defendant.          :
-------------------------------------------------------------------X
TORTUS CAPITAL MASTER FUND, LP,              :
                                             :
                         Plaintiff,          :
                                             :
                 - against -                 :   14 Civ. 1109 (TPG)
                                             :
THE REPUBLIC OF ARGENTINA,                   :
                                             :
                         Defendant.          :
-------------------------------------------------------------------X
```

```
-------------------------------------------------------------------X
TORTUS CAPITAL MASTER FUND, LP,                 :
                                                :
                        Plaintiff,              :
                                                :
             - against -                        :    14 Civ. 3127 (TPG)
                                                :
THE REPUBLIC OF ARGENTINA,                      :
                                                :
                        Defendant.              :
-------------------------------------------------------------------X
TRINITY INVESTMENTS LIMITED,                    :
                                                :
                        Plaintiff,              :
                                                :
             - against -                        :    14 Civ. 10016 (TPG)
                                                :
THE REPUBLIC OF ARGENTINA,                      :
                                                :
                        Defendant.              :
-------------------------------------------------------------------X
MONTREUX PARTNERS, L.P.,                        :
                                                :
                        Plaintiff,              :
                                                :
             - against -                        :    14 Civ. 7171 (TPG)
                                                :
THE REPUBLIC OF ARGENTINA,                      :
                                                :
                        Defendant.              :
-------------------------------------------------------------------X
LOS ANGELES CAPITAL,                            :
                                                :
                        Plaintiff,              :
                                                :
             - against -                        :    14 Civ. 7169 (TPG)
                                                :
THE REPUBLIC OF ARGENTINA,                      :
                                                :
                        Defendant.              :
-------------------------------------------------------------------X
```

```
------------------------------------------------------------------X
CORDOBA CAPITAL,                                :
                                                :
                              Plaintiff,         :
                                                :
                  - against -                    :        14 Civ. 7164 (TPG)
                                                :
THE REPUBLIC OF ARGENTINA,                       :
                                                :
                              Defendant.         :
------------------------------------------------------------------X
WILTON CAPITAL,                                  :
                                                :
                              Plaintiff,         :
                                                :
                  - against -                    :        14 Civ. 7166 (TPG)
                                                :
THE REPUBLIC OF ARGENTINA,                       :
                                                :
                              Defendant.         :
------------------------------------------------------------------X
MCHA HOLDINGS, LLC,                              :
                                                :
                              Plaintiff,         :
                                                :
                  - against -                    :        14 Civ. 7637 (TPG)
                                                :
THE REPUBLIC OF ARGENTINA,                       :
                                                :
                              Defendant.         :
------------------------------------------------------------------X
MCHA HOLDINGS, LLC,                              :
                                                :
                              Plaintiff,         :
                                                :
                  - against -                    :        14 Civ. 10064 (TPG)
                                                :
THE REPUBLIC OF ARGENTINA,                       :
                                                :
                              Defendant.         :
------------------------------------------------------------------X
```

```
-------------------------------------------------------------------X
ANDRAREX LTD.,                                :
                                              :
                          Plaintiff,          :
                                              :
                  - against -                 :     14 Civ. 9093 (TPG)
                                              :
THE REPUBLIC OF ARGENTINA,                    :
                                              :
                          Defendant.          :
-------------------------------------------------------------------X
CLARIDAE, et al.,                             :
                                              :
                          Plaintiffs,         :
                                              :
                  - against -                 :     14 Civ. 10201 (TPG)
                                              :
THE REPUBLIC OF ARGENTINA,                    :
                                              :
                          Defendant.          :
-------------------------------------------------------------------X
ARAG-A LIMITED, et al.,                       :
                                              :
                          Plaintiffs,         :
                                              :
                  - against -                 :     14 Civ. 9855 (TPG)
                                              :
THE REPUBLIC OF ARGENTINA,                    :
                                              :
                          Defendant.          :
-------------------------------------------------------------------X
ATTESTOR MASTER VALUE FUND LP,                :
                                              :
                          Plaintiff,          :
                                              :
                  - against -                 :     14 Civ. 5849 (TPG)
                                              :
THE REPUBLIC OF ARGENTINA,                    :
                                              :
                          Defendant.          :
-------------------------------------------------------------------X
```

```
-------------------------------------------------------------------X
ANGULO, et al.,                                    :
                                                   :
                           Plaintiffs,             :
                                                   :
                  - against -                      :   15 Civ. 1470 (TPG)
                                                   :
THE REPUBLIC OF ARGENTINA,                         :
                                                   :
                           Defendant.              :
-------------------------------------------------------------------X
LAMBERTINI, et al.,                                :
                                                   :
                           Plaintiffs,             :
                                                   :
                  - against -                      :   15 Civ. 1471 (TPG)
                                                   :
THE REPUBLIC OF ARGENTINA,                         :
                                                   :
                           Defendant.              :
-------------------------------------------------------------------X
BANCA ARNER S.A., et al.,                          :
                                                   :
                           Plaintiffs,             :
                                                   :
                  - against -                      :   15 Civ. 1508 (TPG)
                                                   :
THE REPUBLIC OF ARGENTINA,                         :
                                                   :
                           Defendant.              :
-------------------------------------------------------------------X
TRINITY INVESTMENTS LIMITED,                       :
                                                   :
                           Plaintiff,              :
                                                   :
                  - against -                      :
                                                   :   15 Civ. 1588 (TPG)
THE REPUBLIC OF ARGENTINA,                         :
                                                   :
                           Defendant.              :
-------------------------------------------------------------------X
```

```
------------------------------------------------------------------X
TRINITY INVESTMENTS LIMITED,                   :
                                               :
                              Plaintiff,       :
                                               :
                     - against -               :      15 Civ. 2611 (TPG)
                                               :
THE REPUBLIC OF ARGENTINA,                     :
                                               :
                              Defendant.       :
------------------------------------------------------------------X
TRINITY INVESTMENTS LIMITED,                   :
                                               :
                              Plaintiff,       :
                                               :
                     - against -               :
                                               :      15 Civ. 5886 (TPG)
THE REPUBLIC OF ARGENTINA,                     :
                                               :
                              Defendant.       :
------------------------------------------------------------------X
MCHA HOLDINGS, LLC,                            :
                                               :
                              Plaintiff,       :
                                               :
                     - against -               :
                                               :      15 Civ. 2577 (TPG)
THE REPUBLIC OF ARGENTINA,                     :
                                               :
                              Defendant.       :
------------------------------------------------------------------X
MCHA HOLDINGS, LLC,                            :
                                               :
                              Plaintiff,       :
                                               :
                     - against -               :
                                               :      15 Civ. 5190 (TPG)
THE REPUBLIC OF ARGENTINA,                     :
                                               :
                              Defendant.       :
------------------------------------------------------------------X
```

```
------------------------------------------------------------X
ERCOLANI, et al.,                                           :
                                                            :
                                Plaintiffs,                 :
                                                            :
                        - against -                         :    15 Civ. 4654 (TPG)
                                                            :
THE REPUBLIC OF ARGENTINA,                                  :
                                                            :
                                Defendant.                  :
------------------------------------------------------------X
FAZZOLARI, et al.,                                          :
                                                            :
                                Plaintiffs,                 :
                                                            :
                        - against -                         :    15 Civ. 3523 (TPG)
                                                            :
THE REPUBLIC OF ARGENTINA,                                  :
                                                            :
                                Defendant.                  :
------------------------------------------------------------X
STONEHILL INSTITUTIONAL PARTNERS, L.P.                      :
and STONEHILL MASTER FUND LTD.,                             :
                                                            :
                                Plaintiffs,                 :
                                                            :
                        - against -                         :    15 Civ. 3523 (TPG)
                                                            :
THE REPUBLIC OF ARGENTINA,                                  :
                                                            :
                                Defendant.                  :
------------------------------------------------------------X
WHITE HAWTHORNE, LLC,                                       :
                                                            :
                                Plaintiff,                  :
                                                            :
                        - against -                         :    15 Civ. 4767 (TPG)
                                                            :
THE REPUBLIC OF ARGENTINA,                                  :
                                                            :
                                Defendant.                  :
------------------------------------------------------------X
```

```
------------------------------------------------------------------X
VR GLOBAL PARTNERS, LP,                         :
                                                :
                            Plaintiff,          :
                                                :
                - against -                     :   11 Civ. 8817 (TPG)
                                                :
THE REPUBLIC OF ARGENTINA,                      :
                                                :
                            Defendant.          :
------------------------------------------------------------------X
PROCELLA HOLDINGS, L.P.,                        :
                                                :
                            Plaintiff,          :
                                                :
                - against -                     :   15 Civ. 3932 (TPG)
THE REPUBLIC OF ARGENTINA,                      :
                                                :
                            Defendant.          :
------------------------------------------------------------------X
```

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................................... ii

PRELIMINARY STATEMENT ................................................................................ 1

BACKGROUND ...................................................................................................... 3

    A.    The *Pari Passu* Clause in Republic-Issued Debt and The Republic's Restructurings . 3

    B.    The Court Grants *Pari Passu* Relief in Pre-Judgment Cases ...................................... 5

    C.    The 530 Plaintiffs' Post-Judgment and Pre-Judgment Motions Here ......................... 7

ARGUMENT ............................................................................................................ 9

  I.    The Post-Judgment Plaintiffs' Requests for Injunctive Relief Are Barred By the FSIA. 9

  II.    The Injunctions Must Be Denied Because Compliance Is Impossible ......................... 12

  III.    The Requested Injunctions Are Contrary To The Public Interest ................................. 18

CONCLUSION .......................................................................................................... 24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aurelius Capital Partners, LP v. Republic of Argentina*,
No. 07 Civ. 2715 (TPG), 2010 WL 2925072 (S.D.N.Y. July 23, 2010) ........................... 9

*Autotech Techs. LP v. Integral Research & Dev. Corp.*,
499 F.3d 737 (7th Cir. 2007) .................................................................................. 9

*Banque Compafina v. Banco de Guatemala*,
583 F. Supp. 320 (S.D.N.Y. 1984) ....................................................................... 15

*Beal v. Stern*,
184 F.3d 117 (2d Cir. 1999)................................................................................... 18

*City of New York v. Venkataram*,
No. 06 Civ. 6578 (NRB), 2011 WL 2899092 (S.D.N.Y. July 13, 2011)........................... 10

*Edge Group WAICCS LLC v. Sapir Group LLC*,
705 F. Supp. 2d 304 (S.D.N.Y. 2010).................................................................... 12

*EM Ltd. v. Banco Central de la República Argentina*,
No. 13 Civ. 3819 (L), 2015 WL 5090694 (2d Cir. Aug. 31, 2015).................................. 15

*EM Ltd. v. Republic of Argentina*,
473 F.3d 463 (2d Cir. 2007)................................................................................... 16

*FG Hemisphere Assocs, LLC v. Republicque du Congo*,
455 F.3d 575 (5th Cir. 2006) ................................................................................. 9

*Harrison v. Republic of Sudan*,
No. 14 Civ. 121, slip op. (2d Cir. Sept. 23, 2015) .............................................. 11

*In re Tamoxifen Citrate Antitrust Litig.*,
466 F.3d 187 (2d Cir. 2006)................................................................................... 19

*Joneil Fifth Ave. Ltd. v. Ebeling & Reuss Co.*,
458 F. Supp. 1197, *aff'd*, 811 F.2d 127 2d Cir. 1987 ...................................... 12

*Kothe v. Smith*,
771 F.2d 667 (2d Cir. 1985)................................................................................... 13

*Lightwater Corp. v. Republic of Argentina*,
No. 02 Civ. 3804 (TPG), 2003 WL 1878420 (S.D.N.Y. Apr. 14, 2003)........................... 4

*Litwin v. OceanFreight, Inc.*,
865 F. Supp. 2d 385 (S.D.N.Y. 2011)..................................................................... 13

Page(s)

*Marblegate Asset Mgmt. v. Educ. Mgmt. Corp.*,
75 F. Supp. 3d 592 (S.D.N.Y. 2014) ...................................................................... 13

*Minpeco, S.A. v. Hunt*,
686 F. Supp. 427 (S.D.N.Y. 1988) ......................................................................... 15

*Monteverde, McAlee, Fitzpatrick, Tanker, & Hurd, P.C. v. Selnick*,
223 B.R. 755 (D. Nev. 1998) .................................................................................. 10

*Newman v. Resnick*,
38 Misc. 2d 94, 238 N.Y.S.2d 119 (Sup. Ct. 1963) ........................................... 12-13

*NML Capital, Ltd. v. Banco Central de la República Argentina*,
652 F.3d 172 (2d Cir. 2011) ........................................................................ 9, 16, 17

*NML Capital, Ltd. v. Republic of Argentina*,
699 F.3d 246 (2d Cir. 2012) ("*NML I*") ......................................................... *passim*

*NML Capital, Ltd. v. Republic of Argentina*,
727 F.3d 230 (2d Cir. 2013) ("*NML II*") ................................................................. 6

*NML Capital, Ltd. v. Republic of Argentina*,
No. 08 Civ. 06978 (TPG), 2011 WL 9522565 (S.D.N.Y. Dec. 7, 2011) ................ 5

*NML Capital v. Republic of Argentina*,
No. 08 Civ. 6978, 2012 WL 5895786 (S.D.N.Y. Nov. 21, 2012) ..................... 17, 18

*Olympic Chartering, S.A. v. Ministry of Indus. & Trade of Jordan*,
134 F. Supp. 2d 528 (S.D.N.Y. 2001) .................................................................... 15

*Peterson v. Islamic Republic of Iran*,
627 F.3d 1117 (9th Cir. 2010) ................................................................................. 9

*Pine Top Receivables of Illinois, LLC v. Banco de Seguros del Estado*,
771 F.3d 980 (7th Cir. 2014), *cert. denied*, 135 S. Ct. 2891 (2015) .................... 11

*Slaughter v. La Compagnie Francaises Des Cables Telegraphiques*,
119 F. 588 (2d Cir. 1902) ....................................................................................... 10

*Strategic Value Master Fund, Ltd. v. Cargill Fin. Servs., Corp.*,
421 F. Supp. 2d 741 (S.D.N.Y. 2006) .................................................................... 12

*Texas Trading & Mill. Corp. v. Fed. Republic of Nigeria*,
647 F.2d 300 (2d Cir. 1981), *overruled on other grounds by Frontera Res. Azerbaijan
Corp. v. State Oil Co. of Azerbaijan Republic*, 582 F.3d 393 (2d Cir. 2009) .................... 15

Page(s)

*Tiffany (NJ) LLC v. QI Andrew,*
No. 10 Civ. 9471 (KPF), 2015 WL 3701602 (S.D.N.Y. June 15, 2015)........................... 10, 12

*Walters v. Indus. & Comm'l Bank of China, Ltd.*, 651 F.3d 280 (2d Cir. 2011) ............... 12

*Wasserman Media Grp., LLC v. Bender,*
No. 10 Civ. 8783 (SAS), 2012 WL 1506181 (S.D.N.Y. Apr. 26, 2012)........................... 12

*Winter v. Natural Res. Def. Council, Inc.,*
555 U.S. 7 (2008)................................................................................................. 18

**Rules and Statutes**

28 U.S.C. § 1611(b) ............................................................................................ 16

**Other Authorities**

Ernest T. Patrikis, *Foreign Central Bank Property: Immunity from Attachment
in the United States*, 1982 U. Ill. L. Rev. 265 (1982) ......................................... 16

G.A. Res. 68/304, U.N. Doc. A/RES/68/304.................................................... 22

H.R. No. 94–1487 (1976) ................................................................................ 11

Hans Aufricht, *Comparative Survey of Central Bank Law* 14 (1965).............. 14

IMF, *Strengthening the Contractual Framework to Address Collective Action
Problems in Sovereign Debt Restructuring* 12 (Oct. 1, 2014)........................... 20

John Singleton, *Central Banking in the Twentieth Century* 7 (2011).............. 14

Kit Dawnay, *A History of Sterling*, Daily Telegraph (Oct. 8, 2001) ............... 14

Louis Charbonneau, *U.N. nations approve principles for sovereign
debt restructuring*, Reuters (Sept. 10, 2015)................................................... 22

M. H. De Kock, *Central Banking* 58 (4th ed. 1974)........................................ 14

Mark Weidemaier, et al. *Origin Myths, Contracts, and the Hunt for Pari Passu,*
38 Law & Soc. Inquiry 72 (2013)...................................................................... 3

Natalie Wong, *Note*, 53 Colum. J. Transnat'l L. 396 (2015)............................ 19

Paul L. Lee, *Central Banks and Sovereign Immunity*, 41 Colum. J.
Transnat'l L. 327 (2003).................................................................................... 15

**Page(s)**

Philip R. Wood, *Pari Passu Clauses – What Do They Mean?*, Butterworths J.
of Int'l Banking and Fin. L. 371 (2003)................................................................ 3

Republic of Argentina, Annual Report (Form 18-K) (Oct. 1, 2010),
http://www.sec.gov/Archives/edgar/data/914021/000090342310000550/roa-
18k_0927.htm .............................................................................................................. 5

Robert Solow, et al., *Economists Call on Congress to Mitigate Fallout
from Ruling on Argentine Debt*, Center for Economic and Policy Research
(July 31, 2014) .......................................................................................................20, 22, 24

Ross P. Buckley, *The Bankruptcy of Nations: An Idea Whose Time Has
Come*, 43 Int'l Law. 1189 (2009)........................................................................... 5

Tiago Stichelmans, *Why a United Nations sovereign debt restructuring
framework is key to implementing the post-2015 sustainable development
agenda*, European Network on Debt and Development 9 (May 2015) ............................ 21

U.N. Conference on Trade and Dev., S*overeign Debt Workouts: Going Forward,
United Nations Conference on Trade and Development* 13 (April 2015) ........................ 21-22

U.N. G.A., *South Africa: Draft Resolution on Basic Principles on Sovereign
Debt Restructuring Processes*, U.N. Doc. A/69/L.84, at 2 (July 29, 2015)...................... 23

Defendant the Republic of Argentina (the "Republic") submits this memorandum of law in opposition to plaintiffs' motions for specific performance, dated August 14, 2015 through September 14, 2015, seeking injunctions purportedly enforcing the *pari passu* clause on behalf of 530 plaintiffs holding more than $6.15 billion in additional money judgments or claims.[1]

## PRELIMINARY STATEMENT

For over a year, the existing *pari passu* injunctions, which seek to coerce an approximately $1.76 billion payment to a subset of holdout creditors, have interfered with contractually owed interest payments on $28 billion of restructured Republic indebtedness. Those holdout creditors had assured the Court that this unprecedented interference with the rights of the other completely legitimate creditors – the third-party Exchange Bondholders – would give them the leverage they needed to "end the litigation."  But this alleged panacea proved to be the opposite of effective and the injunctions have not ended the litigation – to the contrary, they have made it even *more* difficult for the parties to reach a resolution in these disputes, while at the same time causing undeserved harm to the Exchange Bondholders.  The existing injunctions have therefore done only harm and no good – the exact opposite of what an "equitable" order should accomplish.

---

[1] Per the consented-to scheduling letter so-ordered by the Court on September 1, 2015, the Republic opposes here all motions for specific performance filed between August 14, 2015 and September 14, 2015 that rely in whole or in part on NML Capital, Ltd.'s ("NML") memorandum of law filed in the above-captioned action on August 14 ("Pls. Br.").  *See NML Capital, Ltd. v. Republic of Argentina*, No. 14 Civ. 8601 (S.D.N.Y. Sept. 3, 2015), ECF No. 29.  As to motions for similar relief filed outside of the timeframe imposed by the Court, the Republic will respond in due course.  *See, e.g., Honero Fund I, LLC v. Republic of Argentina*, No. 15 Civ. 1553 (TPG) (S.D.N.Y. Sept. 22, 2015), ECF No. 20; *Honero Fund I, LLC v. Republic of Argentina*, No. 15 Civ. 6702 (TPG) (S.D.N.Y. Sept. 22, 2015), ECF No. 13; *Bybrook Capital Master Fund LP v. Argentina*, No. 15 Civ. 2369 (TPG) (S.D.N.Y. Sept. 23, 2015), ECF No. 12; *Bybrook Capital Master Fund LP v. Argentina*, No. 15 Civ. 7367 (TPG) (S.D.N.Y. Sept. 23, 2015), ECF No. 13.

Now, as the Republic had warned all along, hundreds of additional holdout creditors holding billions of dollars more of defaulted debt have come to Court to ask for the same counterproductive relief.  Specifically, *530* creditors now demand identical injunctions seeking to compel the Republic to make a lump sum "ratable payment" to them of over *$6.15 billion*, on top of the $1.76 billion already subject to the existing injunctions.  Plaintiffs thus ask the Court to compound the grossly inequitable result of the existing injunctions by conditioning the Republic's service of its restructured debt (which comprised more than 92% of the originally defaulted debt, a percentage comparable to most other voluntary sovereign debt restructurings) on an immediate reduction of assets by a staggering amount of approximately $8 billion – a figure that does not even account for the billions of dollars of *additional* non-performing debt not subject to these motions or the existing injunctions.  The Court should reject plaintiffs' meritless request to exacerbate the situation further by entering the damaging orders requested here.

*First*, unlike the actions in which the Court previously entered injunctions, the vast majority of plaintiffs here have already obtained judgments on their claims against the Republic.  Accordingly, those plaintiffs' requested injunctions would be in "aid of execution" of their judgments and thus subject to the execution immunity afforded to sovereign property under the Foreign Sovereign Immunities Act (the "FSIA").  And as this Court and every other court to have addressed the issue has held, that immunity shields from execution all sovereign property located outside the United States – the undisputed location of the relevant property here.

*Second*, separate and apart from the barriers to relief faced by the post-judgment plaintiffs, *all* plaintiffs' motions here must be denied because, under black letter law, specific performance may *not* be ordered where, as here, compliance would be impossible.  There is no exception to this rule that permits the entry of impossible orders to give a party settlement

"leverage."  As plaintiffs cannot contest, no sovereign, including the Republic, could afford to reduce its Central Bank reserves by the amount of the Republic's outstanding defaulted debt, as the requested injunctions would mandate.  Those reserves are vital to maintaining the healthy functioning of the Republic's economy, and the requested orders would subject the Republic to an unacceptable degree of catastrophic risk.

Plaintiffs' motions must be denied.

## BACKGROUND

A.     **The *Pari Passu* Clause in Republic-Issued Debt and The Republic's Restructurings**

The October 19, 1994 Fiscal Agency Agreement ("1994 FAA") governing the series of bonds in which plaintiffs hold (or purport to hold) interests contains a standard clause found in sovereign (and non-sovereign) indebtedness known as the *pari passu* clause.  *See* 1994 FAA ¶ 1(c) (Ex. V);[2] *see also* Philip R. Wood, *Pari Passu Clauses – What Do They Mean?*, Butterworths J. of Int'l Banking and Fin. L. 371 (2003) (*pari passu* clauses "are a standard feature of unsecured debt agreements").  That provision states:

> The Securities [issued under the 1994 FAA] will constitute . . . . direct, unconditional, unsecured and unsubordinated obligations of the Republic and shall at all times rank *pari passu* and without any preference among themselves.  The payment obligations of the Republic under the Securities shall at all times rank at least equally with all its other present and future unsecured and unsubordinated External Indebtedness (as defined in this Agreement).

FAA ¶ 1(c) (Ex. V).

This boilerplate provision appears in virtually all modern sovereign bonds, often with language that is materially identical to that here.  Mark Weidemaier, et al., *Origin Myths, Contracts, and the Hunt for Pari Passu*, 38 Law & Soc. Inquiry 72, 84, 101–02 (2013).  The first

---

[2] All exhibits are attached to the Declaration of Elizabeth M. Hanly, dated September 25, 2015.

sentence of the clause prohibits the Republic from discriminating "among" the bonds issued

pursuant to the 1994 FAA ("1994 FAA Bonds") "themselves" and, as NML has noted, "is not at

issue" in these proceedings.  Corrected Joint Resp. Br. of Pls.-Appellees, NML Capital, Ltd.,

Olifant Fund, Ltd., and Varela, et al. at 8, *NML Capital, Ltd. v. Republic of Argentina*, No. 12-

105 (L) (2d Cir. Apr. 23, 2012), ECF No. 308.  Financial markets have most commonly

understood the second sentence "to protect a lender against the risk of legal subordination in

favor of another creditor," such as by creating unsecured debt ranking senior in legal right of

payment.  Br. for the United States as *Amicus Curiae* in Supp. of Reversal at 11, *NML Capital,

Ltd.*, *v. Republic of Argentina*, No. 12 Civ. 105 (L) (2d Cir. Apr. 4, 2012) ("U.S. Br.") (Ex. N).

And markets have overwhelmingly agreed on what it does *not* mean: "a borrower does not

violate the *pari passu* clause by electing as a matter of practice to pay certain indebtedness in

preference to the obligations outstanding under the agreement in which this clause appears."  *Id.*

(citation omitted); *see also* Br. for the United States as *Amicus Curiae* in Supp. of the Republic

of Argentina's Pet. for Panel Reh'g and Reh'g *En Banc*, *NML Capital, Ltd. v. Republic of

Argentina*, No. 12-105 (L) (2d Cir. Dec. 28, 2012) (Ex. L).

       In 2001, the Republic was forced to defer interest and principal payments to its

bondholders as a result of an economic, financial and social crisis, in which it suffered a

cumulative fall in output almost *twice* that experienced by the United States during the Great

Depression.  *See Lightwater Corp. v. Republic of Argentina*, No. 02 Civ. 3804 (TPG), 2003 WL

1878420, at *2 (S.D.N.Y. Apr. 14, 2003).  This crisis made it impossible for the Republic to

service its overwhelming debt burden while maintaining basic governmental services necessary

for the health, welfare, and safety of the Argentine populace.[3]  In the wake of this crisis, the

---

[3] *See, e.g.*, Carlos G. Fernández Valdovinos, *Growth, Poverty, and Social Equity in Argentina*, World
Bank Newsletter, November 2005, No. 82,

Republic completed two global, voluntary exchange offers of new, performing bonds in exchange for its non-performing debt.  More than 92% of its creditors participated in these exchanges.  *See* Republic of Argentina, Annual Report (Form 18-K) (Oct. 1, 2010) at 17, http://www.sec.gov/Archives/edgar/data/914021/000090342310000550/roa-18k_0927.htm.

### B.    The Court Grants *Pari Passu* Relief in Pre-Judgment Cases

On October 20, 2010, NML moved for partial summary judgment and injunctive relief based on a novel reading of the *pari passu* clause – that a breach occurs when a sovereign services its restructured debt without paying its defaulted debt in full.  Strategically, NML moved for this relief only in its three *pre*-judgment cases, in order to avoid bars to the relief it sought in the post-judgment context.  *See* Hr'g Tr. 27:10-12, *NML Capital, Ltd. v. Republic of Argentina*, No. 03 Civ. 8845 (TPG) (S.D.N.Y. Feb. 23, 2012) (Ex. O) (counsel for NML: "there might be issues with respect to the interpretation of the *pari passu* clause with respect to cases where there have already been judgments").  To "remedy" the Republic's alleged breaches of the *pari passu* clause, NML asked the Court for an injunction ordering the Republic to make a "ratable payment" to NML comprised of 100% of the principal and interest due on NML's bonds when the Republic made a single interest payment on its defaulted debt, and restraining the Republic from making the latter payment unless it made the former.

The Court held on December 7, 2011 that the Republic violated the *pari passu* clause by, among other things, "persisting in its refusal to satisfy its payment obligations currently due under NML's Bonds."  *NML Capital, Ltd. v. Republic of Argentina*, No. 08 Civ. 06978 (TPG), 2011 WL 9522565, at *2 (S.D.N.Y. Dec. 7, 2011).  Two months later, after NML had renewed its motion for injunctive relief, the Court entered in both the three pre-judgment

---

http://siteresources.worldbank.org/INTENBREVE/Newsletters/20847679/82-NOV05-AR_Growth.pdf (last visited Sept. 25, 2015); Ross P. Buckley, *The Bankruptcy of Nations: An Idea Whose Time Has Come*, 43 Int'l Law. 1189, 1196 (2009).

NML actions as well as several pre-judgment "me too" actions – in which plaintiffs together purport to now hold over $1.76 billion in claims against the Republic – injunctions on the terms requested by NML.  Order, *NML Capital, Ltd. v. Republic of Argentina*, No. 08 Civ. 6978 (TPG) (S.D.N.Y. Feb. 23, 2012) (Ex. P).[4]  The Court reasoned that the balance of equities tipped in NML's favor because "the Republic ha[d] the financial wherewithal to meet its commitment of providing equal treatment to both NML (and similarly situated creditors) and [the Exchange Bondholders]." *Id.* at 3.  At that time, the Republic's reserves stood at over $40 billion, and, plaintiffs held just over $1 billion in defaulted debt.  *See NML Capital, Ltd. v. Republic of Argentina*, 699 F.3d 246, 263 (2d Cir. 2012) ("*NML I*").

In October 2012, the Second Circuit affirmed the Court's finding that the Republic had breached the *pari passu* clause.  *NML I*, 699 F.3d at 260.  On remand, the Court on November 21, 2012 entered amended injunctions clarifying that the amount that the Republic must pay plaintiffs when it services its restructured debt is 100% of the principal, contractual interest, and statutory interest outstanding on their bonds (the "Amended Injunctions"), and the Second Circuit affirmed.  *See* Amended February 23, 2012 Order ¶ 2, *NML Capital, Ltd. v. Republic of Argentina*, No. 08 Civ. 6978 (TPG) (S.D.N.Y. Nov. 21, 2012) (Ex. M); *NML Capital, Ltd. v. Republic of Argentina*, 727 F.3d 230, 248 (2d Cir. 2013) ("*NML II*").  As before, the Second Circuit cited as an important fact in weighing the balance of equities that the Republic had "the financial wherewithal to pay all of its obligations."  *NML II*, 727 F.3d at 242.

---

[4] *See also* Order, *Aurelius Capital Master, Ltd. v. Republic of Argentina*, No. 09 Civ. 8757 (TPG) (S.D.N.Y. Dec. 13, 2011), ECF No. 124; Order, *Varela v. Republic of Argentina*, No. 10 Civ. 5338 (TPG) (S.D.N.Y. Dec. 13, 2011), ECF No. 44; Order, *Olifant Fund, Ltd. v. Republic of Argentina*, No. 10 Civ. 9587 (TPG) (S.D.N.Y. Feb. 23, 2012), ECF No. 26.

Two days after the Supreme Court denied the Republic's petition for *certiorari*, the Second Circuit on June 18, 2014 lifted its stay, and the Amended Injunctions went into effect.

### C.      The 530 Plaintiffs' Post-Judgment and Pre-Judgment Motions Here

In the spring of 2015, plaintiffs in 35 of the actions at issue here moved for summary judgment, asking the Court for a finding that the Republic is in breach of the 1994 FAA *pari passu* clause.[5]  The Court granted those plaintiffs' motions for partial summary judgment on June 5, 2015.  Order, *NML Capital, Ltd. v. Republic of Argentina*, No. 14 Civ. 8601 (TPG) (S.D.N.Y. June 5, 2015) ("June 5 Order") (Ex. G).[6]  Since that date, plaintiffs in twelve additional actions have moved for partial summary judgment on the same issue.  Ten of those plaintiffs also seek specific performance here, notwithstanding that the Court has yet to rule on their motions for partial summary judgment.[7]  In total, 530 separate plaintiffs in 45 actions move here for specific performance.

---

[5] Plaintiffs in three additional actions had moved for partial summary judgment but subsequently withdrew their motions after the Republic pointed out that those plaintiffs did not, in fact, own 1994 FAA Bonds and therefore could not seek relief based on the 1994 FAA *pari passu* clause. *See GMO Emerging Country Debt L.P. v. Republic of Argentina*, No. 14 Civ. 8665 (TPG) (S.D.N.Y. Mar. 10, 2015), ECF No. 10; *GMO Emerging Country Debt Invest. Fund PLC v. Republic of Argentina*, No. 14 Civ. 8666 (TPG) (S.D.N.Y. Mar. 2, 2015), ECF No. 7; *GMO Emerging Country Debt Fund v. Republic of Argentina*, No. 14 Civ. 8667 (TPG) (S.D.N.Y. Mar. 2, 2015), ECF No. 7.

[6] Plaintiff in one action subject to the Court's June 5 Order moved for specific performance well after the Court's scheduled deadline for the 45 motions at issue here.  *See Honero Fund I, LLC v. Republic of Argentina*, No. 15 Civ. 1553 (TPG) (S.D.N.Y. Sept. 22, 2015), ECF No. 20.  The Republic will respond to that motion in the ordinary course.

[7] These ten actions are: *Trinity Inv. Limited v. Republic of Argentina*, No. 15 Civ. 2611 (TPG) (S.D.N.Y.); *Trinity Inv. Limited v. Republic of Argentina*, No. 15 Civ. 5886 (TPG) (S.D.N.Y.); *MCHA Holdings, LLC v. Republic of Argentina*, No. 15 Civ. 2577 (TPG) (S.D.N.Y.); *MCHA Holdings, LLC v. Republic of Argentina*, No. 15 Civ. 5190 (TPG) (S.D.N.Y.); *Stonehill Institutional Partners, L.P. v. Republic of Argentina*, No. 15 Civ. 4284 (TPG) (S.D.N.Y.); *White Hawthorne, LLC v. Republic of Argentina*, No. 15 Civ. 4767 (TPG) (S.D.N.Y.); *Ercolani v. Republic of Argentina*, No. 15 Civ. 4654 (TPG) (S.D.N.Y.); *Fazzolari  v. Republic of Argentina*, No. 15 Civ. 3523 (TPG) (S.D.N.Y.); *VR Global Partners, L.P. v. Republic of Argentina*, No. 11 Civ. 8817 (TPG) (S.D.N.Y.); and *Procella Holdings, L.P. v. Republic of*

The plaintiffs in those 45 actions are comprised of:

> (i) 498 individual plaintiffs who have already obtained final money judgments (or, with respect to three NML actions, have obtained summary judgment for past due principal and interest) (the "Post-Judgment Plaintiffs").  Together, the Post-Judgment Plaintiffs hold judgments totaling close to $5.3 billion; and

> (ii) 32 individual pre-judgment plaintiffs who have initiated actions against the Republic seeking both *pari passu* relief *and* final money judgments on their purported holdings of 1994 FAA Bonds in the principal amount of close to $293 million, along with more than $580 million of estimated interest on that amount (the "Pre-Judgment Plaintiffs").[8]

Plaintiffs ask the Court to enter injunctions akin to the Amended Injunctions in order to force the Republic to pay them over $6.15 billion in judgments or claims (on top of the approximately $1.76 billion in defaulted debt subject to the Amended Injunctions) as a condition to the Republic making an interest payment on its Exchange Bonds.  Notably, plaintiffs assert that the balance of equities tips in their favor, but omitted in their proposed orders critical language in the Amended Injunctions stating that the Republic is capable of paying plaintiffs and similarly situated creditors on top of the Republic's restructured debt obligations.  *See* Proposed Order ¶ 2(c), *NML Capital Ltd. v. Republic of Argentina*, Nos. 14 Civ. 8601 and 14 Civ. 8988 (TPG) (S.D.N.Y. Aug. 14, 2014) (Ex. E) ("Proposed Order").

---

*Argentina*, No. 15 Civ. 3932 (TPG) (S.D.N.Y.).  Plaintiffs in four of these actions – *Ercolani*, *Fazzolari*, *VR Global Partners*, and *Procella Holdings* – moved for partial summary judgment on the same day as moving for specific performance.  The Republic will oppose those four motions for partial summary judgment in the ordinary course.

[8] Two charts listing the moving plaintiffs and the judgments or debt that they purport to hold, the "Pre-Judgment Plaintiffs Chart" and "Post-Judgment Plaintiffs Chart," are attached as Exhibits A and B, respectively.  These charts are similar to the ones that the Republic appended to its brief in opposition to plaintiffs' motions for partial summary judgment, but have been updated to reflect plaintiffs that have since joined or withdrawn their motions.

**ARGUMENT**

**I.    The Post-Judgment Plaintiffs' Requests for Injunctive Relief Are Barred By the FSIA**

As this Court recognized in rejecting a turnover motion because it was directed at property located in Argentina, "[u]nder the FSIA, a judgment creditor of a foreign state may only execute against 'property *in the United States* of a foreign state . . . used for a commercial activity *in the United States*.'" *Aurelius Capital Partners, L.P. v. Republic of Argentina*, No. 07 Civ. 2715 (TPG), 2010 WL 2925072, at *2 (S.D.N.Y. July 23, 2010) (citing 28 U.S.C. 1610(a)) (emphasis added); *see also id.* at *4 ("It follows that, because the Trust Bonds are not property 'in the United States' of a foreign state, they are immune from attachment and execution under the terms of the FSIA."). The courts of appeals are in agreement and likewise read the text of FSIA Section 1610(a) to mean precisely what it says: that the only sovereign property subject to execution under the FSIA is that which is, *inter alia*, located in the United States. *See NML Capital, Ltd. v. Banco Central de la República Argentina*, 652 F.3d 172, 186–87 (2d Cir. 2011) ("Unless the property of a foreign state . . . is subject to one of the exceptions set forth in FSIA § 1610, it is immune from attachment, arrest, and execution pursuant to FSIA § 1609.").[9]

Here, the undisputed fact is that the Republic has no non-immune assets located in the United States, and that the injunctions plaintiffs demand could therefore compel the payment of the Post-Judgment Plaintiffs' judgments only with property located *outside* the United

---

[9] *See also Peterson v. Islamic Republic of Iran*, 627 F.3d 1117, 113–132 (9th Cir. 2010) (affirming denial of execution attempt as violative of Section 1610(a) because it targeted property located in France that was therefore "immune from execution"); *Autotech Techs. LP v. Integral Research & Dev. Corp.*, 499 F.3d 737, 750 (7th Cir. 2007) ("[T]he FSIA authorizes execution only against properties in the United States.") (citations omitted); *FG Hemisphere Assocs., LLC v. Republicque du Congo*, 455 F.3d 575, 596 (5th Cir. 2006) ("We hold that, prior to authorizing execution against the property of a foreign sovereign, the district court must make factual findings that support application of § 1610(a). We also hold that 1610(a) requires that the foreign sovereign's property be located in the United States when the district court determines whether the exception applies.").

States.  Plaintiffs have acknowledged as much, as the only property they have ever pointed to in these proceedings are the reserves of the Republic's Central Bank.  *NML I*, 699 F.3d at 262.  The only question is therefore whether the Rule 65 injunctions that plaintiffs demand constitute a form of "execution" under Rule 69.  The clear answer is: yes.

The Post-Judgment Plaintiffs have already obtained final money judgments, and there can be no doubt that the injunctions they seek are a means of executing on them.  A post-judgment order for specific performance that compels the payment of a contract debt reduced to judgment is plainly, on its face, a judgment enforcement mechanism.  *See City of New York v. Venkataram*, No. 06 Civ. 6578 (NRB), 2011 WL 2899092, at *6 n.8 (S.D.N.Y. July 13, 2011) (restraining order in post-judgment context is post-judgment enforcement mechanism governed by Rule 69); *Tiffany (NJ) LLC v. QI Andrew*, No. 10 Civ. 9471 (KPF), 2015 WL 3701602, at *12 (S.D.N.Y. June 15, 2015) (quoting *Motorola Credit Corp. v. Uzan*, 978 F. Supp. 2d 205, 207 n.2, 214 (S.D.N.Y. 2013)) (refusing to issue a Rule 65 injunction because "[a] plaintiff's ordinary recourse upon securing a money judgment is to look to post-judgment remedies provided by Fed. R. Civ. P. 69 and state law"); *Monteverde, McAlee, Fitzpatrick, Tanker, & Hurd, P.C. v. Selnick*, 223 B.R. 755, 756 (D. Nev. 1998) ("[A]s a general matter execution on a civil judgment must be by writ of execution rather than by injunction."); *Slaughter v. La Compagnie Francaises Des Cables Telegraphiques*, 119 F. 588, 589 (2d Cir. 1902) (where plaintiff "sues at law for a breach, he is entitled to recover the damages he has sustained by such breach" and even where plaintiff is only able to collect a small fraction of his total damages, he is thereafter barred from suing "in equity that defendant perform the contract.").[10]  Putting the lie to the Post-Judgment Plaintiffs' suggestion that this is anything other than judgment enforcement, they expressly define "Ratable

---

[10] *See also* Letter from K. Reed to Hon. Thomas P. Griesa, dated Jan. 14, 2004,  at 3 (Ex. S) (describing *pari passu* injunctions as "enhanced judgment enforcement mechanisms").

Payment" here to include *post-judgment interest* – a statutory remedy wholly unrelated to the

*pari passu* clause and available *only* to judgment holders.  Proposed Order at ¶ 2(c) (Ex. E).

Plaintiffs do not, because they cannot, point to anything in the *pari passu* clause (which speaks

of "securities" and not judgments) that would entitle them to those amounts, and their demand

for them here makes plain that they are trying to use Rule 65 to enforce their judgments.

Although the Second Circuit, in its prior rulings in this litigation, held that the

Amended Injunctions were not barred by the FSIA because they did not "attach, arrest, or

execute upon any property," it did so only in actions where no judgments had been entered.

*NML I*, 699 F.3d at 262.  Here, the requested injunctions clearly *are* a form of judgment

execution.  While, as courts have noted, the terms "attachment," "arrest," and "execution" are

not specifically defined in the FSIA, *Pine Top Receivables of Illinois, LLC v. Banco de Seguros

del Estado*, 771 F.3d 980, 983 (7th Cir. 2014), *cert. denied*, 135 S. Ct. 2891 (2015), the

legislative history expressly states that "[t]he term 'attachment in aid of execution' is intended to

include . . . *supplemental proceedings* available under applicable Federal or State law to obtain

satisfaction of a judgment."  H.R. No. 94–1487, at 28 (1976) (Ex. X) (citing Fed. R. Civ. P. 69)

(emphasis added); *see also Harrison v. Republic of Sudan*, No. 14 Civ. 121, slip op. at 12 (2d

Cir. Sept. 23, 2015) (to interpret the FSIA, courts must "look to the statutory language, cases that

have interpreted [the] statute, and the legislative history." (citing *United States v. Allen*, 788 F.3d

61, 66 (2d Cir. 2015)).

"[S]upplemental proceedings . . . to obtain satisfaction of a judgment" are

precisely what the Post-Judgment Plaintiffs have instituted here in seeking an injunction whose

"ratable payment" requirement aligns exactly with the amount due on their money judgments.

*See* Proposed Order ¶ 1(b) ("There is no adequate remedy at law for Argentina's ongoing

violations of Paragraph 1(c) of the FAA *because Argentina [has not paid the] money judgment issued by this Court.*") (emphasis added).  As counsel to NML recently stated to the Court in another proceeding, the function of *pari passu* injunctions is "to aid enforcement of a *judgment*." *See Tiffany (NJ) LLC, v. Qi Andrew*, No. 2010 Civ. 9471 (S.D.N.Y. June 22, 2015) (KPF), ECF No. 105 (emphasis added).  Plaintiffs' requests here accordingly cannot be viewed as anything but demands for execution devices in supplemental proceedings in aid of execution, which are barred where, as here, plaintiffs have failed to identify any non-immune property.[11]  *See, e.g.*, *Walters v. Indus. & Comm'l Bank of China, Ltd.*, 651 F.3d 280, 291 (2d Cir. 2011).

## II.    The Injunctions Must Be Denied Because Compliance Is Impossible

"[T]his Court cannot issue a decree for specific performance if effectuation of the performance sought is . . . impossible."  *Strategic Value Master Fund, Ltd. v. Cargill Fin. Servs. Corp.*, 421 F. Supp. 2d 741, 760 (S.D.N.Y. 2006); *see also Edge Group WAICCS LLC v. Sapir Group LLC*, 705 F. Supp. 2d 304, 319 (S.D.N.Y. 2010) ("As the New York Court of Appeals has made plain, a court should not order specific performance, or other equitable relief, unless the defendant is capable of complying: 'The court will not make what may prove to be a futile order.'" (quoting *S.E.S. Imps., Inc. v. Pappalardo*, 53 N.Y.2d 455, 464 (1981)); *Joneil Fifth Ave. Ltd. v. Ebeling & Reuss Co.*, 458 F. Supp. 1197, 1200 (S.D.N.Y. 1978) ("The rule is that '[s]pecific performance will not be decreed if the performance sought is impossible.'") (quoting Restatement of Contracts § 368), *aff'd*, 811 F.2d 127 (2d Cir. 1987); *Newman v. Resnick*, 38

---

[11] That plaintiffs have filed new actions to enforce their judgments does not alter this conclusion.  Judgments are enforced in distinct actions in a number of contexts, and in fact, in some instances separate actions are *required* to enforce a judgment.  *See, e.g.*, *Wasserman Media Grp., LLC v. Bender*, No. 10 Civ. 8783 (SAS), 2012 WL 1506181, at *1 (S.D.N.Y. Apr. 26, 2012) (denying motion for turnover order to enforce money judgment because plaintiff did not institute separate action).  Separate action or not, plaintiffs' demand here for an order to pay their judgments is thus plainly a judgment enforcement proceeding.

Misc. 2d 94, 96, 238 N.Y.S.2d 119 (Sup. Ct. 1963) ("The court is . . . without power to grant

plaintiffs specific performance of this contractual provision.  Specific performance may be

decreed only where it is possible for a defendant to perform, for the court will not grant a vain

judgment.").[12]

       The Court accordingly may not enter the "specific performance" injunctions that

plaintiffs demand here.  *See Marblegate Asset Mgmt. v. Educ. Mgmt. Corp.*, 75 F. Supp. 3d 592,

609 (S.D.N.Y. 2014) ("equities do not favor an injunction" that would put "risk the imperilment

of a painstakingly negotiated $1.5 billion debt restructuring, one which the overwhelming

majority of creditors support"); *Litwin v. OceanFreight, Inc.*, 865 F. Supp. 2d 385, 401-02

(S.D.N.Y. 2011) ("balance of equities . . . favors denial of plaintiff's motion [for injunctive

relief]" where "[o]n balance, the Court would 'do more harm by enjoining the transaction than

by letting it proceed.'") (citation omitted).  The Republic indisputably cannot comply with an

instruction to pay plaintiffs a staggering one-time payment that would include not only the

approximately $8 billion here (the $6.15 billion demanded by these plaintiffs plus the $1.76

billion already subject to existing *pari passu* injunctions) but also the billions of dollars more of

the Republic's other outstanding defaulted debt.

       The Central Bank of Argentina's reserves – which plaintiffs contemplate as the

source of this payment – currently stand at $33 billion.  *See* Estadísticas, Banco Central de la

República Argentina, http://www.bcra.gov.ar/Estadisticas/estprv010000.asp.  Those amounts are

currently committed to many uses vital to the economic health of Argentina and its citizens.  A

---

[12] This rule is absolute.  There is no exception that permits the entry of impossible orders so that one party may have settlement leverage over the other.  *See Kothe v. Smith*, 771 F.2d 667, 669 (2d Cir. 1985) ("the law . . . does not sanction efforts by trial judges to effect settlements through coercion") (citations omitted).

reduction of them in the amount of the Republic's non-performing debt would bring them well below the level required to properly sustain the Republic's economy and its citizens' welfare.

The critical functions of reserves have been widely recognized for decades as crucial to the healthy functioning of the economies of sovereign nations and the international community in general.  John Singleton, *Central Banking in the Twentieth Century* 7 (2011) (Ex. Q)  ("Central banks endeavor to preserve the integrity of the financial system, and in some circumstances act as an emergency lender of last resort and prudential supervisor of banks. Banking crises can be highly damaging to the economy: they may wipe out deposits and make it difficult for individuals and businesses to obtain new credit . . . . The central bank has a responsibility to uphold the overall stability of the banking system."); The Bank of International Settlements, *Issues in the Governance of Central Banks* 8, 107 (May 2009) http://www.bis.org/publ/othp04_1.pdf; http://www.bis.org/publ/othp04_6.pdf  (Ex. R) ("Financial stability is usually another main objective of central banks . . . . At a minimum, it involves managing banking system reserves with an eye to stability considerations and standing ready to provide emergency liquidity assistance." Also noting that "emerging markets tend to maintain higher proportional levels of foreign currency reserves."); M. H. De Kock, *Central Banking* 58 (4th ed. 1974) (Ex. Y) ("[W]hen bank reserves are pooled in one institution which is, moreover, charged with the responsibility of safeguarding the national economic interest, such reserves can be employed to the fullest extent possible and in the most effective manner during periods of seasonal strain and in financial crises or general emergencies."); Hans Aufricht, *Comparative Survey of Central Bank Law* 14 (1965) (Ex. Z) (central banks "pursue a monetary and banking policy directed to the greatest advantage of the people and act so as to contribute to the economic prosperity and welfare of the people or to prevent any inflationary, speculative, and

14

deflationary tendencies detrimental to the permanent interests of the nation." (citations and quotations omitted)); Kit Dawnay, *A History of Sterling*, Daily Telegraph, Oct. 8, 2001 (detailing attack on the British pound in 1992 when British monetary authorities lacked sufficient reserves to compete with speculators) (Ex. U).

Moreover, courts in this Circuit have likewise repeatedly recognized the paramount role central banks play in maintaining the stability of their nations' economies and have shielded them from disruptive creditor interference.  *See EM Ltd. v. Banco Central de la República Argentina*, No. 13 Civ. 3819 (L), 2015 WL 5090694, at *8 (2d Cir. Aug. 31, 2015) (noting that "BCRA's primary responsibility is to maintain the value of legal tender in Argentina."); *Texas Trading & Mill. Corp. v. Fed. Republic of Nigeria*, 647 F.2d 300, 304 (2d Cir. 1981) (primary function of the Bank of Nigeria is "to maintain external reserves to safeguard the international value of that currency, to promote monetary stability and a sound financial structure in Nigeria"), *overruled on other grounds by Frontera Res. Azerbaijan Corp. v. State Oil Co. of Azerbaijan Republic*, 582 F.3d 393 (2d Cir. 2009); *Olympic Chartering, S.A. v. Ministry of Indus. & Trade of Jordan*, 134 F. Supp. 2d 528, 534 (S.D.N.Y. 2001) (along with maintaining foreign exchange reserves, the Central Bank of Jordan "is responsible for maintaining monetary stability in Jordan."); *see generally Minpeco*, *S.A. v. Hunt*, 686 F. Supp. 427, 429 (S.D.N.Y. 1988) (discussing the crucial functions of the Banco Central de Reserva del Peru); *Banque Compafina v. Banco de Guatemala*, 583 F. Supp. 320, 321 (S.D.N.Y. 1984) (discussing the important functions of the Banco de Guatemala); *see also* Paul L. Lee, *Central Banks and Sovereign Immunity*, 41 Colum. J. Transnat'l L. 327 (2003) (Ex. T) (detailing the historical functions of central banks and federal courts' analysis of their significance).

15

Plaintiffs accordingly cannot contest that the reserves serve many vital functions for Argentina and its people, and that the relief they request here would improperly interfere with them.  Those critical functions include:

- supporting the Republic's currency and protecting it from speculative attacks;

- supporting the Republic's foreign exchange market;

- enabling the Central Bank to act as a lender of last resort to Argentine banks;

- enabling the Central Bank to perform general banking agency services for the Republic;

- settling clearance balances between banks;

- controlling credit in accordance with the needs of business and the economy generally;

- carrying out the Republic's broad monetary policy; and

- serving as an emergency cushion in the event of financial crises.

*See NML Capital, Ltd. v. Banco Central de la República Argentina*, 652 F.3d 172, 194–95 (2d Cir. 2011) (rejecting attempt to restrain central bank funds); Ernest T. Patrikis, *Foreign Central Bank Property: Immunity from Attachment in the United States*, 1982 U. Ill. L. Rev. 265, 274 n.37 (1982) (citing M. H. De Kock, *Central Banking* (4th ed. 1974)).

Such interference with these functions is exceedingly dangerous and is precisely why Congress enacted FSIA Section 1611, which expressly provides absolute immunity to reserves put to these uses.  28 U.S.C. § 1611(b) (central bank reserves held for bank's own account absolutely immune); *see also EM Ltd. v. Republic of Argentina*, 473 F.3d 463, 473 (2d Cir. 2007) ("Section 1611(b) appears to have been developed in order to avoid the potential difficulties that central banks would be faced with if their assets were [otherwise] subject to

16

execution.") (internal citation and marks omitted); H.R. No. 94–1487, at 31 (1976) (Ex. X)

("'[E]xecution against the reserves of foreign states could cause significant foreign relations

problems.'"); *NML Capital, Ltd.*, 652 F.3d at 190 (rejecting attempt to circumvent 1611(b) on

alter ego theory: "it makes no sense to assume that Congress would enact a statute designed to

prevent 'significant foreign relations problems' which failed to immunize a significant portion of

the central bank reserves in the United States").

   Notably, the Second Circuit's finding that the Amended Injunctions – which

sought to compel payment of, at that time, $1.3 billion to other plaintiffs – were "equitable"

relied explicitly on this Court's determination that "the Republic had sufficient funds, including

over $40 billion in foreign currency reserves, to pay plaintiffs the judgments they are due." *NML

I*, 699 F.3d at 263; *see also NML Capital v. Republic of Argentina*, 2012 WL 5895786, No. 08

Civ. 6978 (TPG) at *1 (S.D.N.Y. Nov. 21, 2012) ("It is of note that the Court of Appeals

affirmed the finding of the District Court that, although there had originally been a default of the

FAA Bonds because of a well-known financial crisis, currently Argentina is able to make the

payments on both the FAA Bonds owned by plaintiffs and the Exchange bonds.").  While the

Republic pointed out then that the $1.3 billion figure at issue in those several cases was only a

fraction of the billions of dollars more of "me too" debt that would follow, that "limitation" was

an essential element to the rulings of both this Court and the Court of Appeals.

   But as demonstrated above, despite their bare assertion that they are "entitled to

the same relief," Pls.' Br. at 3, plaintiffs plainly cannot make that same showing here, where the

total payment due to these plaintiffs alone would be approximately $8 billion, with creditors

holding billions of dollars more of Republic debt sure to follow, while the reserves stand at $33

billion.[13]  The amount of the "ratable payment" at issue has *increased six fold* – a figure that will only increase as more creditors come forward, making the "equitable" orders they demand undeniably dangerous and wholly unworkable.  Plaintiffs themselves appear to recognize the impossibility of their requests, as they have omitted from their proposed orders the language in the Amended Injunctions stating that the Republic "has the financial wherewithal" to pay all of its creditors everything it owes them at the same time.  *See* Comparison of Proposed Order ¶ 2(c) with Amended Injunction ¶ 2(c) (Ex. C).  The Republic clearly cannot pay that amount, and the law, therefore, bars the Court from ordering it to do so.[14]

## III.    The Requested Injunctions Are Contrary To The Public Interest

In fashioning injunctive relief, courts must conduct a careful balancing of the factors that weigh in favor of, or militate against, issuing an injunction.  *See Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) ("In exercising their sound discretion, courts of equity should pay particular regard [to] the public consequences in employing the extraordinary remedy of injunction"); *Beal v. Stern*, 184 F.3d 117, 123 n.2 (2d Cir. 1999) ("courts must sensitively assess all the equities of the situation, including the public interest." (quoting *Million Youth March, Inc. v. Safir*, 155 F.3d 124, 125 (2d Cir. 1998))).  Here, these factors decidedly

---

[13] Indeed, two creditors in four actions have already initiated additional proceedings seeking identical relief.  *See Honero Fund I, LLC v. Republic of Argentina*, No. 15 Civ. 1553 (TPG) (S.D.N.Y. Sept. 22, 2015), ECF No. 20; *Honero Fund I, LLC v. Republic of Argentina*, No. 15 Civ. 6702 (TPG) (S.D.N.Y. Sept. 22, 2015), ECF No. 13; *Bybrook Capital Master Fund LP v. Argentina*, No. 15 Civ. 2369 (TPG) (S.D.N.Y. Sept. 23, 2015), ECF No. 12;  *Bybrook Capital Master Fund LP v. Argentina*, No. 15 Civ. 7367 (TPG) (S.D.N.Y. Sept. 23, 2015), ECF No. 13.

[14] While plaintiffs argue that their 100% ratable payment demand is required by the *pari passu* clause, *see* Pls' Br. at 19, both this Court and the Second Circuit have held that the provision does *not* mandate such payments.  *See NML Capital, Ltd. v. Republic of Argentina*, No. 08 Civ. 6978, 2012 WL 5895786, at *3 (S.D.N.Y. Nov. 21, 2012) ("Of course, what is being done here is not literally to carry out the *Pari Passu* Clause, as would be done in a normal commercial situation, but to provide a remedy for Argentina's violation of the Clause."); *NML I*, 699 F.3d at 259 n.10 ("NML does not 'interpret . . . the *pari passu* clause as requiring 'ratable' payments' – it proposed ratable payments as a *remedy* for Argentina's breach of the Provision.").  There is accordingly no basis in the underlying contract or equity to enter the relief plaintiffs demand.

weigh against granting plaintiffs' request for *more* injunctions that would require the Republic to pay plaintiffs all of its non-performing debt if it services the Exchange Bonds.

       *First*, it is now clear that any additional *pari passu* injunctions entered – on top of those already in effect – will only further complicate the situation, rather than bring the parties closer to a resolution.  *See In re Tamoxifen Citrate Antitrust Litig.*, 466 F.3d 187, 202 (2d Cir. 2006) ("courts are bound to encourage the settlement of litigation") (citation omitted).  The Amended Injunctions have been in effect since June 2014 and have not resulted in the conclusion of this litigation, as NML had assured the Court they would when it originally asked for them. Rather, the Amended Injunctions have caused only interference with the rights of the innocent third-party Exchange Bondholders, who acted in accordance with U.S. policy and international norms when they participated in the Republic's restructurings.  Adding yet more disruptive *pari passu* injunctions to those already in place will thus only further interfere with the Exchange Bondholders' rights, while making it even more difficult for the parties to potentially resolve these disputes.

       *Second*, even the existing Amended Injunctions have been sharply criticized by Nobel laureate economists, the International Monetary Fund, the European Network on Debt and Development, the United Nations Conference on Trade and Development, and the United Nations General Assembly, among others, for imperiling future sovereign debt restructurings. *See generally* Natalie Wong, Note, 53 Colum. J. Transnat'l L. 396, 402 (2015) ("The broad 'ratable payment' interpretation was a radical departure from the restrained effect *pari passu* clauses were believed to have in sovereign bonds and sparked a slew of criticism from various academics.").  These authorities, who have no direct financial stake in this litigation, but a major stake in the well-being of the international financial system, have urged the U.S. government as

well as international bodies to take steps to ameliorate the impact of the Amended Injunctions in future restructuring efforts, recognizing that they reduce the incentive for creditors to participate in restructurings, thereby threatening the ability of a sovereign to emerge from financial crisis.

For example, in July 2014, over 100 economists, including several Nobel laureates, wrote to Congress asking that it take action to mitigate the harmful fallout from the Amended Injunctions.  *See* Robert Solow, et al., *Economists Call on Congress to Mitigate Fallout from Ruling on Argentine Debt*, Center for Economic and Policy Research (July 31, 2014) ("Economists' Letter") (Ex. K).  The letter "note[s] with concern the recent developments in the court case of *Argentina vs. NML Capital*, etc." and argues that this Court's decision "that Argentina cannot continue to pay the holders of the restructured bonds unless it first pays the plaintiffs means that any 'holdout' creditor can torpedo an existing agreement with those bondholders who chose to negotiate."  *Id.*

In an October 2014 report focusing on the market's concern about the Amended Injunctions, the IMF likewise observed that "[t]he general reaction to the New York Court Decisions demonstrates that a wide array of commentators and interested parties have concerns that these decisions may, in fact, have a broad impact on the restructuring process."  *See* IMF, *Strengthening the Contractual Framework to Address Collective Action Problems in Sovereign Debt Restructuring* 12 (Oct. 1, 2014).  The IMF explained:

> [S]ince the type of remedy provided to the holdout creditors in the New York Court Decisions enhances the leverage of holdouts, these decisions have increased the risk that holdouts will multiply, as they now have the ability to extract a preferential recovery outside of a debt exchange . . . . In addition, because the New York Court Decisions increase the risk that holdout creditors will be able to interrupt the flow of payments to [restructuring creditors], there would be an even greater disincentive for creditors to participate in the restructuring.

*Id.* at 11-12.

Similarly, in a May 2015 report, the European Network on Debt and Development warned that the Amended Injunctions "incentiviz[e] creditors to refuse to take part in debt restructuring initiatives in [the] future, as holdouts [could potentially] make more profits than the creditors that accept a financial haircut."  Tiago Stichelmans, *Why a United Nations sovereign debt restructuring framework is key to implementing the post-2015 sustainable development agenda*, European Network on Debt and Development 9 (May 2015) (Ex. H).  The report concluded that, "[w]ith the incentive for creditors to holdout, debt restructuring will be more complex and take more time, provoking longer debt crises, leading to more economic hardship and long-term harm." *Id.*  Creditors enter into voluntary restructurings because they know that if they hold out for full payment, the debtor state will likely never be able to pay them anything.  Even if they choose to pursue the legal alternatives of suit and judgment enforcement, these creditors are aware that they may well face obstacles to collection, not only from the debtor states' financial constraints, but also from the broad immunity afforded to sovereign property.  This creditor calculus drastically changes when creditors know that they can instead let others restructure, wait until their own defaulted debts purportedly becomes "de facto" subordinated by nonpayment, and then invoke a boilerplate *pari passu* clause to compel full payment by blocking and effectively seizing amounts due to those naïve enough to enter into the restructuring.

As the United Nations Conference on Trade and Development recently reported, in light of the "2014 US Court decisions in the litigation against Argentina,"

> [i]t is likely that more creditors will systematically buy distressed sovereign debt at a discount and engage in litigation in order to collect the full nominal value of the debt.  Consequently, sovereign debtors might find it increasingly difficult to convince their creditors to agree on a debt restructuring.  The costs will ultimately have to be shouldered by the taxpayers of the debtor state.

U.N. Conference on Trade and Dev., S*overeign Debt Workouts: Going Forward, United Nations Conference on Trade and Development* 13 (April 2015) (Ex. I); *see also id.* at 58 ("Where courts grant expansive injunctions to support the contractual claims of holdouts, a country might be effectively cut off from external financial dealings and suffer another economic crisis.  Going forward, creditors who might otherwise agree to reduce their claims in exchange for the certainty of receiving lower amounts face the prospect of never receiving such lower amounts, which would be blocked by holdouts. Moreover, if holdouts are able to recover disproportionate amounts, more creditors have incentives to hold out, which would stall restructurings.").  And as the economists who have urged Congressional action to overturn the Amended Injunctions noted, the Court's "ruling creates a moral hazard, by allowing investors to obtain full repayment, no matter how risky the initial investment."  Economists' Letter (Ex. K).

In leading to this result, further injunctions would directly "undermine[] the orderly consensual restructuring process the United States has been at pains to foster for the past several decades."  U.S. Br. at 18. (Ex. N).  Recognizing this real threat to future sovereign restructurings, the United Nations General Assembly has recently sought to limit the Amended Injunctions' impact and to reaffirm international practice.  In September 2014, the General Assembly passed a resolution, supported by 124 nations, aimed at preventing such orders from being entered again.  The express goal of the resolution was to "adopt through a process of intergovernmental negotiations . . . a multilateral legal framework for sovereign debt restructuring processes with a view . . . to increasing the efficiency, stability and predictability of the international financial system."  *See* G.A. Res. 68/304, U.N. Doc. A/RES/68/304, at 4 (Sept. 17, 2014) (Ex. J).

Most recently, on September 10, 2015, the General Assembly approved "'basic principles' for sovereign debt restructuring processes to improve the global financial system, an initiative that was inspired by Argentina's debt crisis" and was supported by 136 nations. Louis Charbonneau, *U.N. nations approve principles for sovereign debt restructuring*, Reuters (Sept. 10, 2015) (Ex. D). Recognizing the detrimental impact that the Amended Injunctions have had already and pose for future sovereign restructurings, the resolution includes the principle that "states should be immune from domestic court decisions related to sovereign debt restructuring" and that "exceptions should be limited." *Id.*; *see also* U.N. G.A., *South Africa: Draft Resolution on Basic Principles on Sovereign Debt Restructuring Processes*, U.N. Doc. A/69/L.84, at 2 (July 29, 2015) (Ex. F) (draft resolution on "Basic Principles on Sovereign Debt Restructuring Processes," providing that "[s]overeign immunity from jurisdiction and execution regarding sovereign debt restructurings is a right of States before foreign domestic courts and exceptions should be restrictively interpreted").

Against all of this, plaintiffs argue that their request for specific performance "will serve the vital public interest[] of enforcing contracts," Pls. Br. at 16, and that "[i]t is in the public interest that creditors know that they can rely upon U.S. courts to enforce promises made by debtors," *id.* But as the Second Circuit pointed out, the "remedy" demanded by plaintiffs is not "require[ed]" by the *pari passu* clause. *NML I*, 699 F.3d at 259. And as the commentators above have recognized, the interest in enforcing contracts — based on a novel contract interpretation, never contemplated by either the lender or the borrowers under the FAA — does not outweigh the serious, worldwide public interests that the injunctions threaten.

The Republic cannot comply with the 100% ratable payment order plaintiffs demand, and so the relief they seek would require the Republic not to perform its contractual

obligations to the more than 92% of creditors who agreed to restructure their debt precisely because they recognized that debt could not be repaid in the face of the Republic's financial crisis.  By contrast, the vast majority of the defaulted debt here was "[p]urchased . . . on the secondary market after default, often for less than 20 cents on the dollar. While these [buyers] could have accepted the restructuring and still made a very large profit, they instead have fought a decade-long legal battle, seeking exorbitant profits in excess of 1,000 percent and creating financial uncertainty along the way."  Economists' Letter (Ex. K).  The Amended Injunctions and any further injunctions put the interests of a few, most of whom purchased their debt after the Republic defaulted in a speculative gamble, over the many who agreed to a haircut, without which, no one could hope to receive anything.  Such a result would run exactly contrary to the public interest, which therefore precludes the entry of plaintiffs' requested relief.

## CONCLUSION

For the foregoing reasons, plaintiffs' motions should be denied.

Dated:  New York, New York
        September 25, 2015

                                Respectfully submitted,

                                CLEARY GOTTLIEB STEEN & HAMILTON LLP


                                By: _____/s/ Carmine Boccuzzi_____
                                    Jonathan I. Blackman (jblackman@cgsh.com)
                                    Carmine D. Boccuzzi (cboccuzzi@cgsh.com)
                                One Liberty Plaza
                                New York, New York 10006
                                (212) 225-2000
                                Attorneys for the Republic of Argentina

Of Counsel:

Michael M. Brennan
Elizabeth C. Block
Elizabeth M. Hanly
Natasha N. Bronn

24